# EXHIBIT 1

Atkinson Baker, Inc.
www.depo.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL GRECCO PRODUCTIONS, )
INC.,                        )
                             )      **CERTIFIED COPY**
              Plaintiff,     )
                             )
        vs.                  )      Case No.
                             )      2:20-cv-00151-DSF-PJW
LIVINGLY MEDIA, INC., ET AL,)
                             )
              Defendants.    )
                             )

DEPOSITION OF

AREEBA ABID

VIA VIDEOCONFERENCE

HAYWARD, CALIFORNIA

OCTOBER 20, 2020

ATKINSON-BAKER, INC.
(800) 288-3376
www.depo.com

REPORTED BY:  DIANE DEARMORE, CSR NO. 12736

FILE NO.:     AE07354

Atkinson Baker, Inc.
www.depo.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL GRECCO PRODUCTIONS, )
INC.,                        )
                             )
            Plaintiff,       )
                             )
      vs.                    )     Case No.
                             )     2:20-cv-00151-DSF-PJW
LIVINGLY MEDIA, INC., ET AL,)
                             )
            Defendants.      )
                             )

      Deposition of AREEBA ABID, taken on behalf of

Plaintiff, held remotely and via videoconference,

commencing at 11:00 a.m., Tuesday, October 20, 2020,

before Diane Dearmore, CSR No. 12736.

Atkinson Baker, Inc.
www.depo.com

A P P E A R A N C E S:


FOR PLAINTIFF:

DONIGER BURROUGHS
BY:   STEPHEN M. DONIGER, Esq.
      FRANK GREGORY CASELLA, Esq.
603 Rose Avenue
Venice, California  90291
(310) 590-1820
stephen@donigerlawfirm.com
fcasella@donigerlawfirm.com
VIA VIDEOCONFERENCE


FOR DEFENDANTS:

LAW OFFICE OF JOSHUA KOLTUN
BY:   JOSHUA KOLTUN, Esq.
One Sansome Street
Suite 2450, Number 500
San Francisco, California   94104
(415) 680-3410
joshua@koltunattorney.com
VIA VIDEOCONFERENCE

Atkinson Baker, Inc.
www.depo.com

```
                           I N D E X


WITNESS:  Areeba Abid

EXAMINATION                                          PAGE

          By Mr. Doniger                           6, 95

          By Mr. Koltun                               92




                     E X H I B I T S

NUMBER                   DESCRIPTION                 PAGE

   1    Zimbio articles                               13

   2    Guidelines                                    55

   3    Looker information                            86
```

Atkinson Baker, Inc.
www.depo.com

HAYWARD, CA; TUESDAY, OCTOBER 20, 2020; 11:00 a.m.

THE REPORTER:  This is Diane Dearmore, Certified Shorthand Reporter for the State of California.  The witness and reporter are not in the same room, and the witness will be sworn remotely.

AREEBA ABID,
having first been duly sworn, was examined and testified as follows:

MR. KOLTUN:  I just want to say something.  As I've already communicated to you guys, there is (inaudible), and I may need to take a break a little bit more ordinarily than I might ordinarily do.  I'm just putting that on the record.  So maybe every half hour, and obviously not during the course of questioning.

MR. DONIGER:  Because of not being able to hear you, I missed the first part as to the reasoning; but if you need to take a break, that's fine.

In fact, one of the first things that I was going to tell Ms. Abid is thank you for being here.  I know you didn't have a ton of choice, but I just want to assure you that there is nothing about this process that

Atkinson Baker, Inc.
www.depo.com

is designed to be difficult, and I'm not going to be some mean person.  It's just that you have some information that I may need for the case just to figure out the facts.

And if you need to take a break, if you need to use the rest room, stretch your legs, for any reason, just let us know.  I'm not going to -- none of the questions I'm going to ask you are designed to be tricky.  I'm going to be pretty straightforward, get what we need and get you out of here.  Okay?

THE WITNESS:  All right.

EXAMINATION

BY MR. DONIGER:

Q.   All right.  Have you ever had your deposition taken before?

A.   No.

Q.   All right.  So I don't know if -- I imagine you've had an opportunity to speak with Mr. Koltun.  You're well-represented.  I'm not going to go through the whole rigmarole of a deposition, but you understand you've taken an oath to tell the truth, correct?

A.   Yes.

Q.   And you're going to have an opportunity to review the transcript from this and just make sure that the court reporter got everything accurately that you

Atkinson Baker, Inc.
www.depo.com

what you would be doing would be on creative pieces, some would be done on marketing pieces?

A. It was something I was told.

Q. Were there guidelines you were given for the creation of marketing pieces?

A. That has evolved over time based on like company goals and whatever conversations that people have in marketing. I'm not privy to all of that information. It's just something that has -- it evolves over time, so it has changed over time pretty much.

Q. So I'm going to have some more questions about that, but I guess we'll pause that for right now.

I assume you're familiar with the post that's at issue in this case, or at least the one that you're responsible for?

A. Yes. I've been made aware of it.

Q. Okay. Is that a post that you believe to be a creative piece or a marketing piece?

A. I believe that is a marketing piece.

Q. It's a marketing piece. Okay. And what about that post makes it a marketing piece? We'll take a look at it. I'm not trying to do a memory test, but just from what you can tell me right now.

A. From what I remember, it's the length of a piece of how many slides there are, the type of copy you

Atkinson Baker, Inc.
www.depo.com

would write for each slide.  Yeah, those are the only things I remember exactly for that at the time.

Q.    How about the use of photographs or images in the piece?

MR. KOLTUN:  Objection.  Vague.

Q.    (By Mr. Doniger)  So I didn't explain this in the beginning of the deposition.  Again, Mr. Koltun may have.  But if we were in a court of law right now, Mr. Koltun may make objections to my questions, and the court would either say that's not a proper question, overruled; or the court would say it's a valid objection, it's sustained.  Because there's no judge here, the objections are specifically just for the record unless you're specifically instructed not to answer.

So I know it can be disrupting, and I'm not suggesting Mr. Koltun's objections have no merit; but for our purposes of the question and answer, don't let that disrupt the flow of our discussion.  Okay?

A.    Okay.  Could you repeat the question?

Q.    Yeah.  So the question was, we were talking about the elements that go into the marketing pieces, what would make something a marketing piece.  And you talked about the length of the piece and the type of the copy.  And I asked you about the photograph in the

Atkinson Baker, Inc.
www.depo.com

we scroll down to the first page of Exhibit 1, there is a Zimbio page that says, Movies and TV Shows To Watch If You're Obsessed With Netflix's Stranger Things.  Do you see that?

A.   Yes.

Q.   First of all, what is Zimbio?

A.   Zimbio is the web site I write for.  It is owned by Livingly Media.

Q.   Okay.  And are you familiar with this piece, Movies and TV Shows to Watch If You're Obsessed With Netflix's Stranger Things?

A.   Yes.

Q.   How are you familiar with this piece?

A.   I wrote it.

Q.   Did you also choose the images that went into this piece?

A.   Yes.

Q.   And there's an image here.  Number 17, The X-Files, there's an image next to that of David Duchovny and Gillian Anderson.  Do you see that?

A.   Yes.

Q.   And did you choose that image -- well, did you put that image into this article?

A.   Yes, I did.

Q.   Where did you get the image from?

Atkinson Baker, Inc.
www.depo.com

As part of your normal practice working for Livingly, when you do searches for images, do you make notes or keep track as a general rule of where you find images that you then submit for use in your articles?

A.   I write a lot of content for Livingly, so I don't keep notes of like every single image that I've done or any images really because I'm producing so much content on a daily basis.  It would virtually be impossible to do that.

Q.   Okay.  Is there a reason -- so when you wrote this article, did you know that The X-Files was a Fox television show?

A.   Yes.

Q.   Is there a reason that you did a Google search instead of going to Fox to see whether it had promotional X-Files images that were available for you to use?

A.   So I do have press access to Fox; however, it leads with the access that I have shows that are no longer on air, such as The X-Files.  Their promotional images and press kits are removed, and I don't know what the reason for that is.

Q.   But you could always send an email to Fox's PR or someone else somewhere at Fox asking for promotional images of X-Files, right?  It's something you could do?

Atkinson Baker, Inc.
www.depo.com

board regardless of network.  So you can see the actors on set, the actors are dressed up as their characters, and the settings are -- it very much looks like a setting within the show.  So those properties are all owned by the networks and are very used.

Q.  So you were told to look up promotional images on Google for any photographs that you want, and then look at the images that come up in that search for what you think are the hallmarks of a promotional photo to confirm that they are promotional photos.  Is that a fair characterization?

A.  Sure.

Q.  Okay.  How do you know that Fox did not have a press kit publicly available for The X-Files show when you selected this photograph of Gillian Anderson and David Duchovny that's at issue in this case?

A.  I believe at the time -- I don't remember exactly, but I must have looked it up.  I mean, in 2017, from what I recall, I don't believe The X-Files was on air even with the revival.  So that would mean that the press kits available on Fox's web site would have been removed or the promotional photos on the web site itself.

Q.  Okay.  So, again, how do you know that?

A.  I have a log-in, like a verified like account

Atkinson Baker, Inc.
www.depo.com

as an entertainment journalist for networks, so I have access. I don't know if they have different access that they provide to people, you know, based on their positions or what they work for. But based on the access that I have been given to Fox, I can look up shows to see whatever images are available and shows that are off air. Their press stuff is removed from the sites, in my experience.

Q. Okay. So I guess what I'm asking is, as you sit here right now, do you have a recollection that you, in fact, tried to see if there is an available press kit from Fox for The X-Files at the time you selected this image; or are you just telling me that from other past experience, it's your experience that it wouldn't -- I want to get clear on what you're telling me.

MR. KOLTUN: Objection. Compound.

THE WITNESS: I'm sorry. Could you clarify the question?

Q. (By Mr. Doniger) Yeah. So from your prior answers, I'm not clear on whether you're saying that you actually went to the Fox site to see if there was a press kit at the time that you were looking for a photograph for this article on Shows To Watch If You're Obsessed With Netflix's Stranger Things; or if you're telling me that as of the date you wrote this article,

Atkinson Baker, Inc.
www.depo.com

Q.   Okay.  So if you were involved in this article -- writing this article, would you have also been the one to choose the photographs that went along with it?

A.   If I wrote it, I would be, yes.

Q.   And if I asked you the questions of how you obtained this photograph -- assuming that you did, in fact, obtain this photograph -- would your answers be the same as what we discussed before?

A.   Yes, they would be.

Q.   Okay.  When you request press access, is that something that you need to get permission from Livingly to do, or is it something that you do without having to check with anyone at Livingly?

A.   Press access for the specific networks you're asking?

Q.   Right, right.

A.   No, I can -- I can reach out to them myself.

Q.   Is there ever any kind of a fee that needs to be paid to get press access?

A.   Not in my experience.

Q.   Okay.  Can you tell from the page that we're looking at here about this, TV Shows All Stranger Things Fanatics Will Love, can you tell whether this is a creative piece or a marketing piece?

Atkinson Baker, Inc.
www.depo.com

A.    I would say it's a marketing piece.  In terms of like editorial guidelines, I just want to like specify, they're like pretty much the same.  You know, like it doesn't really matter what I would be doing for a creative piece, what I would be doing for a marketing piece.  It's -- you know.

Q.    What is it about this page, TV Shows All Stranger Things Fanatics Will Love, that tells you this is a marketing piece?

A.    If I were to assume this was a marketing piece, I would say because this is a slide show.  And as you can see, it's 30 slides, and usually our marketing pieces are longer.

Q.    I'm sorry.  Longer than 30 slides or longer like 30 slides?

A.    Yeah, like around 30 slides.

Q.    Okay.  So this is -- what makes that a marketing piece?  Is it just because people have to click through so there's more space for advertisements on the site or something, or do you know?

A.    I mean, that could be possible.  Marketing pieces are usually for a mainstream audience, whereas creative pieces can be for a niche audience.

Q.    I see.  Okay.  All right.  Let's go ahead to the next page of Exhibit 1, which is a screen shot of