Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs (SBN 235718)
scott@donigerlawfirm.com
Kelsey M. Schultz (SBN 328159)
kschultz@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MICHAEL GRECCO PRODUCTIONS, INC.,

Plaintiff,

v.

LIVINGLY MEDIA, INC.; *et al*.,

Defendants.

LIVINGLY MEDIA, INC.,

Counterclaimant,

v.

MICHAEL GRECCO PRODUCTIONS, INC.,

Counterclaim Defendant.

Case No: 2:20-cv-00151-DSF-PJW

*Hon. Dale S. Fischer Presiding*

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY ADJUDICATION**

Date:        April 5, 2021
Time:        1:30 p.m.
Courtroom: 7D – 1st Street

i

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY ADJUDICATION**

# TABLE OF CONTENTS

I.   INTRODUCTION………………………………………………………...1

II.  ARGUMENT…………………………………………………………...1

   A. Livingly's License Argument Fails Because There is No Evidence of a License Between Grecco and Livingly, a Written Sublicense Right to the Studios, or the Grant of a Sublicense Right to Livingly…...1

      1. It is irrelevant whether the Subject Photographs are derivative works……………………………………………………………2

      2. There is no evidence that the studios used the Subject Photographs promotionally or claim any rights in them………..3

      3. Grecco never expressly or impliedly licensed the Subject Photographs for use by the Studios or Defendant………………4

   B. Livingly's Use of the Subject Photographs was Not Fair……………….6

      1. Livingly's use of the Subject Photographs was commercial and nontransformative……………………………………………..6

      2. The Subject Photographs are creative works…………………...7

      3. Livingly impermissibly used the entirety of each Subject Photographs………………………………………………………..8

      4. Livingly's use gravely harms the marketability of the Subject Photographs……………………………………………………..9

   C. Grecco's Claims are not Barred by Statute of Limitations……………..9

   D. Livingly Willfulness and Grecco's Damages Are Questions for the Jury……………………………………………………………………..11

III. CONCLUSION……………………………………………………………12

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY ADJUDICATION**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Stallone*,
   1989 U.S. Dist. LEXIS 11109 (C.D. Cal. Apr. 25, 1989)........................................3

*APL Microscopic, LLC v. United States*,
   144 Fed. Cl. 489 (2019) .............................................................................................11

*Burrow-Giles*,
   111 U.S. .........................................................................................................................8

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) .................................................................................6, 7, 8, 9

*Cooley v. Penguin Grp. (USA), Inc.*,
   31 F. Supp. 3d 599 (S.D.N.Y. 2014).........................................................................3

*Delano v. Rowland Network Commc'ns LLC*,
   2020 WL 2308476 (D. Ariz. May 8, 2020)..............................................................10

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC* ("*Dr. Suess 2*"),
   983 F. 3d 443 ...............................................................................................7, 8, 9

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.* ("*Dr. Seuss 1*"),
   109 F.3d 1394 (9th Cir. 1997)....................................................................................7

*Effects Assocs. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990)..........................................................................4, 5, 6

*Ets-Hokin v. Skyy*,
   225 F.3d 1068 (9th Cir. 2000)....................................................................................2

*Gilliam v. ABC*,
   538 F.2d 14 (2d Cir. 1976)..........................................................................................3

*Harper & Row*,
   471 U.S..........................................................................................................................9

*Hustler Magazine, Inc. v. Moral Majority, Inc.*,
   796 F.2d 1148 (9th Cir. 1986).....................................................................................7

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
   617 F.3d 1146.................................................................................................................3

*Mackie v. Hipple*,
   2010 WL 3211952 (W.D. Wash. Aug. 9, 2010) .....................................................10

*Michael Grecco Productions, Inc. v. Ziff Davis, LLC*,
   830 Fed. Appx. 233 (Nov. 25, 2020) ........................................................................10

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. 663................................................................................................................10, 11

*Rogers v. Koons*,
   960 F.2d 301 (2d Cir.1992)..........................................................................................8

*Stewart v. Abend*,
   495 U.S. 207 (1990).......................................................................................................3

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY ADJUDICATION**

*Toho Co., Ltd. v. William Morrow & Co.*,
   33 F. Supp. 2d 1206 (C.D. Cal. 1998)..................................................................3, 7, 8

Statutes

17 U.S.C. § 103 ............................................................................................................2
17 U.S.C. § 203(b) ......................................................................................................2
17 U.S.C. § 204(a) ......................................................................................................4
17 U.S.C § 107 ............................................................................................................6
17 U.S.C. § 204 .......................................................................................................5, 6

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY ADJUDICATION**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Livingly's argument that it can freely use the Subject Photographs without anyone's permission in its "pop culture" listicle articles and quizzes because they are "promotional" is not only factually unsupportable, but also antithetical to fundamental tenants of copyright law.  Livingly has provided no evidence of any dealings with Grecco that could colorably have resulted in a license, and thus argues it has a sublicense based on the purported rights of the studios.  However, Livingly has failed to advance evidence that the studios had any rights in the Subject Photographs. Further, sublicenses must be in writing to be valid – there is no entertainment industry exception to excuse Livingly's infringement.  Nor can Livingly claim fair use because it added nothing new or transformative to the Subject Photographs, used them for its own commercial gain, and its use is exactly the kind which compromises the licensing market for the Subject Photographs.  Livingly's statute of limitations defense also fails because there is no evidence that Grecco reasonably could or should have discovered the claims at issue prior to 2019.  And finally, Livingly's willfulness and the appropriate amount of damages for its infringement are issues for the jury.  So owing, Summary adjudication to establish Livingly's liability for infringement is appropriate.

## II.   ARGUMENT

### A.    Livingly's License Argument Fails Because There is No Evidence of a License Between Grecco and Livingly, a Written Sublicense Right to the Studios, or the Grant of a Sublicense Right to Livingly.

Livingly bears the burden of presenting substantial evidence in support if its license defense to create a question of fact.  However, it makes no claims that Grecco had any interactions with it through which a license was expressly or impliedly given. Rather, Livingly alleges that Grecco licensed to the studios, which thereby gave it the right to use the Subject Photographs.  That, of course, is a sublicense which as a

1

matter of law must be in writing to be valid. No amount of evidence advanced by Livingly regarding Hollywood's "customs and practices" can usurp long standing copyright law.  And it is entirely irrelevant whether the Subject Photographs are derivative works because (1) derivative works are entitled to the same protections, and (2) there is no authority whatsoever allowing third parties, like Livingly, to freely use derivative works in the way they did here.

Because there is no evidence whatsoever of either a written right to sublicense the Subject Photographs, having been given to the studios, or of the studios granting that sublicense to Livingly, Livingly's license defense fails as a matter of law.

### 1. *It is irrelevant whether the Subject Photographs are derivative works*

The alleged derivative nature of the Subject Photographs is irrelevant because an authorized derivative work is afforded the same enumerated rights under Section 106 as the preexisting work on which it is based. 17 U.S.C. § 103; *Ets-Hokin v. Skyy*, 225 F.3d 1068 (9th Cir. 2000).  As discussed below, Livingly's contrary argument rests entirely on law which is inapplicable to the facts at hand because neither Fox nor NBCUniversal contest Grecco's rights in the Subject Photographs or claim any "promotional" rights in those works. Thus, the alleged derivative nature of the Subject Photographs has no bearing on Defendant's infringing uses.

Where the copyright owner grants another party the right to prepare a derivative work, a new copyright comes into existence upon the creation and fixation of the derivative work in a tangible medium. 17 U.S.C. § 103; *Ets-Hokin*, 225 F.3d at 1073.  Furthermore, "a derivative work prepared under authority of the grant [to prepare a derivative work] before its termination may continue to be utilized under the terms of the grant after its termination." 17 U.S.C. § 203(b).  This basic principle is further reaffirmed in Section 304(c)(6)(A) of the Copyright Act.  Here, Grecco's claim of infringement is not grounded in the use of the preexisting work's characters, but in Grecco's original expression in the photographs. *Ets-Hokin,* F.3d at 1107.

Livingly's suggestion that Grecco cannot exploit his copyrighted works if they

2

are derivative of studio characters is untethered to any on point authority. Rather, it rests on factually distinguishable cases, most of which are out of circuit and district court cases, addressing *unauthorized* derivative works. Opp., p. 11, ll. 16-17, n. 6 (citing *Anderson v. Stallone,* 1989 U.S. Dist. LEXIS 11109 (C.D. Cal. Apr. 25, 1989); *Toho Co., Ltd. v. William Morrow & Co.*, 33 F. Supp. 2d 1206 (C.D. Cal. 1998)). Here, Livingly admits that Grecco was authorized by Fox and MCA to create the Subject Photographs. SDF ¶ 24. After the photoshoots, Grecco presented his images to Fox and MCA who then selected the ones they wished to use, and the remaining images were returned to Grecco – the studios do not dispute Grecco's rights in the Subject Photographs, and Livingly thus lacks standing to assert such a challenge. SDF ¶¶ 5, 8, 10, 12; see *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 ("When there is no dispute between the copyright owner and transferee, 'it would be unusual and unwarranted to permit a third-party infringer to invoke § 204(a) to avoid suit for copyright infringement.'").

Livingly next cites another line of inapplicable cases to argue that Grecco's use of the Subject Photographs "is subject to the rights of the owner of the underlying work." Opp., p. 11-2, ll. 21-10 (citing *Stewart v. Abend*, 495 U.S. 207, 221-36 (1990); *Gilliam v. ABC*, 538 F.2d 14, 20-21 (2d Cir. 1976); *Cooley v. Penguin Grp. (USA), Inc.*, 31 F. Supp. 3d 599, 608 (S.D.N.Y. 2014)). But those cases address the distribution of derivative works beyond the scope of rights afforded by the copyright holder of the preexisting work. *Id.* Here, Grecco's use of the Subject Photographs is not at issue—neither Fox nor NBCUniversal contest Grecco's right to license the photographs at issue or have ever claimed that Grecco's business in some way "harms" the promotional purpose of the Subject Photographs. It is thus entirely irrelevant to this case whether Grecco's photographs are derivative works.

> 2. *There is no evidence that the studios used the Subject Photographs promotionally or claim any rights in them.*

There is no evidence that Fox claims any rights in Subject Photographs 1, 2,

3

and 3, or that they were ever included in a Fox press kit or otherwise distributed by Fox.  Indeed, throughout the entirety of this litigation Fox has unwaveringly held that *it never used those images promotionally or authorized anyone else to.*  SDF ¶ 5, 8, 10, 33-4.  Similarly, Subject Photograph 4 was procured by MCA for a one-time editorial publication (SDF ¶ 12) and there is no evidence that either NBCUniversal or its predecessor MCA licensed Subject Photograph 4 for promotional use.

In its opposition, Livingly identified similar but plainly different photographs from the same shoots as "evidence" that Fox distributed Subject Photographs 1, 2, and 3.  Opp., p. 3, n. 1.  But, upon review of that evidence, the Court will see that Livingly is wrong – the photographs are different. SDF ¶¶ 33-4.  Likewise, Defendant contends that MCA used Subject Image 4 on a DVD box set thereby evincing the promotional nature of the image.  SDF ¶ 35.  This too is incorrect, as these images are also different. SDF ¶ 36.

Similarly, the Subject Photographs were certainly not available on Fox's website when Defendant's employees mysteriously "found" them on the internet. SDF ¶¶, 14-5, 34.  Given the lack of evidence that the studios made the Subject Photographs available for promotional use, Livingly's arguments border on absurd.

*3.  Grecco never expressly or impliedly licensed the Subject Photographs for use by either the Studios or Defendant*

Defendant's understanding of the "custom and practice" of the entertainment industry is irrelevant to the extent it conflicts with copyright law, and it does. An assignment of copyrights <u>must be in writing</u>, as does a right to sublicense.  And here the writing is clear – neither Fox nor MCA had any such rights with respect to the Subject Photographs.  Thus, no express nor implied license excuses Defendant's infringement.

"While the copyright owner can sell or license his rights to someone else, section 204 of the Copyright Act invalidates a purported transfer of [rights] unless it is in writing." *Effects Assocs. v. Cohen,* 908 F.2d 555, 556 (9th Cir. 1990) (citing 17

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY ADJUDICATION**

U.S.C. § 204(a)). "Section 204 ensures that the creator of a work will not give away his copyright inadvertently and forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price." *Id.* at 557 (citation omitted).

In *Effects Assocs. v. Cohen*, this circuit rejected an eerily similar "industry custom and practice" argument, explaining that "Congress' paramount goal" when revising the Copyright Act in 1976 was to ensure "predictability and certainty of copyright ownership." *Id.* It thus concluded that "rather than look[ing] to the courts" to decide industry practice, Defendant "need only look to the writing that sets out [the parties'] respective rights." *Id.*

Here, the contract between Fox and Grecco (which Defendant relies on to a fault) concerns fourteen <u>other</u> images identified as the Gallery Photographs, for which Fox had a nonexclusive license to exploit and advertise. SDF ¶ 62. This contract <u>did not</u> include the Subject Photographs. *Id.* Thus, because the Gallery Photographs did not include Subject Photographs 2 and 3, Grecco had no reason to believe that "studios were distributing these photographs to the media." SDF ¶¶ 55, 60. There is thus no basis to suggest that Grecco knew of the promotional use of any images other than the Galley Photographs—and thus no basis to find an implied license.

With respect to Subject Photographs 1 and 4, Livingly's implied license argument is equally bizarre—the contracts for those photographs are solely for one-time editorial use to USA Weekend and MCA. SDF ¶¶ 36, 48, 51. Notably, neither USA Weekend, Fox, or MCA dispute the "one-time editorial use" limitation.

While a *nonexclusive* license need not be in writing, and may be granted either orally or impliedly from conduct, there must be facts to support the existence of the claimed license and here there are none. *Effects,* 908 F.2d at 558 (quotation omitted). There is no evidence that Fox ever came into possession of Subject Photographs 2 and 3, and it expressly denies that it ever had these images in its possession. SDF ¶¶

5

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY ADJUDICATION**

33-4.  So owing, an implied nonexclusive license cannot be found as a matter of law. *Effects,* 908 F. 2d at 558-9 (holding that implied license will only be found when a work is created at the request of another and turned over to that individual with the intent that they freely distribute the work).

Because Subject Photographs 2 and 3 were never given to Fox as part of the Gallery Photographs, and the contracts between the parties as to Subject Photographs 1 and 4 limited the licensing rights of USA Weekend and MCA to a one-time editorial use, there can be no finding of Grecco granting the license Livingly imagines.  17 U.S.C. § 204; *Effects* 908 F.2d at 557 ("[Defendant] suggests that we hold section 204's writing requirement inapplicable here because 'it [i]s customary in the motion picture industry . . . not to have written licenses.' [] To the extent that [Defendant's] argument amounts to a plea to exempt moviemakers from the normal operation of section 204 by making implied transfers of copyrights 'the rule, not the exception,' [], we reject his argument.").

**B.  Livingly's Use of the Subject Photographs was Not Fair.**

Livingly's use of the Subject Photographs was not for criticism, comment, news reporting, teaching, scholarship, or research (17 U.S.C § 107), but solely to attract eyeballs for its clickbait articles and quizzes. And that use is precisely the type that, if similar uses because widespread, would deprive photographers of the licensing revenues upon which their livelihood depends and harm the potential market for the Subject Photographs. Thus, there is no basis to find fair use.

      1. *Livingly's use of the Subject Photographs was commercial and nontransformative.*

Livingly cannot and does not dispute that its websites are commercial ventures designed to generate advertising dollars based on the number of views its "pop culture" listicle articles and quizzes receive.  This sort of commercial purpose, as opposed to nonprofit purpose, "tends to weigh against a finding of fair use." *Campbell v. Acuff-Rose Music, Inc.* 510 U.S. 569, 585 (1994).  Further, Defendant's

6

use of the Subject Photographs adds nothing new or transformative, "they are merely aesthetically pleasing to the reader." *Toho Co., Ltd. v. William Morrow & Co.*, 33 F. Supp. 2d 1206, 1217 (C.D. Cal. 1998).  Because commerciality "further cuts against the fair use defense" when there is "no effort to create a transformative work," Defendant's use was unfair.  *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.* ("*Dr. Seuss 1*"), 109 F.3d 1394, 1401 (9th Cir. 1997).

Defendant's citation to *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1153 (9th Cir. 1986) and *Campbell*, 510 U.S. at 594 are unavailing.  In *Hustler*, Jerry Falwell used a Hustler parody of himself to solicit contributions for his political campaign. 796 F.2d at 1149. The court found the use of the parody for a *profit-making purpose and, on that basis, deemed the use presumptively unfair*. The only exception was to the extent Falwell "also used the copies to rebut the personal attack upon [himself] and make a political comment about pornography." *Id*. at 1152-3.  Livingly has no colorable claim to any analogous use.  Similarly, in *Campbell* defendants had "transformed" or "add[ed] something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Campbell*, 510 U.S. at 579.  Livingly, in contrast, did nothing of the sort.  Its use "merely supersedes the objects of the original creation."  *Id.*  Thus, Livingly's use "[was] not transformative, and its indisputably commercial use of [the Subject Photographs] counsels against fair use." *Dr. Seuss Enterprises, L.P. v. ComicMix LLC* ("*Dr. Suess 2*")*,* 983 F. 3d 443, 451.

2.  *The Subject Photographs are creative works*

The second "fair use" factor strongly favors Grecco as well because his photography is a highly creative work entitled to significant copyright protection. Defendant's attempt to strip Grecco of copyright protection in the Subject Photographs because they depict "factual events" is ridiculous.

Firstly, as Defendant concedes, the *X-Files* and *Xena: Warrior Princess* series and its characters are not factual, but rather fictional.  SDF ¶¶ 7, 11.  Secondly, it is

7

well settled that portrait photographs like the Subject Photographs fall close to the core of copyright protection. *Burrow-Giles*, 111 U.S. at 54-55; *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir.1992) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved.").

Michael Grecco frequently constructed the sets, arranged the subjects and props, and instructed subjects on poses and facial positions. SDF ¶ 25. Indeed, his skill as a photographer is the reason he has been highly sought out within the entertainment industry for over 30 years and has been able to access celebrities for exclusive shoots like those at issue. Thus, the second factor weighs strongly in Grecco's favor.

3. *Livingly impermissibly used the entirety of each Subject Photographs*

The third fair use factor weighs strongly in Grecco's favor as well because Livingly used the entirety of each photograph, without credit or compensation to Grecco, and without transforming Grecco's Subject Photographs. *Dr. Seuss 2,* 983 F. 3d at 458 ("Given the absence of a parody or a transformative work…[t]he third factor weighs decisively against fair use"). The third factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." *Campbell*, 510 U.S. at 586. Courts consider "both 'the quantitative amount and qualitative value of the original work used in relation to the justification for that use.'" *Dr. Seuss 2,* 983 F. 3d at 458 (quotations omitted).

Here, Defendant used the Subject Photographs in their entirety without crediting Grecco, which is inherently "outside the bounds of fair use." *Toho Co., Ltd.,* 33 F. Supp. 2d at 1117. Livingly did not need to do so—for example, a quiz entitled "*Are you Mulder or Scully?*" could have just used the actors' images, not the entire set and shoot composed by Grecco. "Taking 'the "heart" of each individual copyrighted picture,' tilts the third factor against fair use," where, as here, it was not done for parody, comment, or criticism. *Dr. Seuss 2,* 983 F. 3d at 458.

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY ADJUDICATION**

Livingly's use of the Subject Photographs unaltered and in their entirety, strongly cuts against a finding of fair use.

4. *Livingly's use gravely harms the marketability of the Subject Photographs*

Finally, Defendant's use (and uses like it) of the Subject Photographs materially impairs the market for Grecco's works. Grecco retained the copyright to the Subject Photographs so that he could license them, for a fee, for secondary use. That secondary market will be all but destroyed if entertainment websites can freely use the Subject Photographs any time they reference the underlying shows.

In addressing the fourth fair use factor, Courts assess "the extent of market harm caused by the particular actions of the alleged infringer" and "whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590. *See also Harper & Row*, 471 U.S. at 568 ("[T]o negate fair use one need only show that if the challenged use 'should become widespread, it would adversely affect the potential market for the copyrighted work.'") (quotation omitted).

As a professional photographer /licensing company Grecco depends on its ability to license its images for uses such as those at bar — and "unrestricted and widespread" use similar to Livingly's has an "adverse impact" on the potential market for Grecco's work. Indeed, Livingly's argument that Grecco has never issued a preemptive license yet has pursued infringement claims on the Subject Photographs proves too much, i.e., that the images are commercially valuable, yet rampant infringement has all but eviscerated the market for proper licenses. Thus, like the court in *Dr. Seuss 2,* "[t]his is not a case where the copyist's work fills a market that the copyright owner will likely avoid," this is a case where the copyist has usurped the copyright owner's market. *Dr. Seuss 2,* 983 F. 3d at 460.

**C.    Grecco's Claims are not Barred by Statute of Limitations**

Livingly acknowledges that this action is timely as to two of the Subject

9

Photographs. With respect to Subject Photographs 1 and 3, which were first posted 2016, Livingly essentially argues that because Grecco has historically sought to protect its copyrights, it should be charged with knowledge of every post on every website existing in the unfathomably vast internet. This is of course facially absurd and fails to even create a question of fact.

Grecco learned of Livingly's infringements on December 24, 2019 (SDF ¶ 13) and commenced this action in 2020. Under the "discovery rule," the limitations period began to run on December 24, 2019 unless evidence exists that Grecco discovered "or with due diligence should have discovered, the injury that forms the basis for the claim" sooner. *Petrella v. Metro-Goldwyn-Mayer, Inc., et al.,* 572 U.S. 663, 670 n. 4 (2014) (citation omitted).

Livingly's only argument that Grecco should be charged with earlier knowledge is that Grecco has been using third party reverse image search companies for years. However, Livingly itself concedes that one could not reasonably have been expected to find the infringements at issue given the limits of available technology, and that it, itself, was unable to do so. SDF ¶ 83 ("because of technical limitations on its ability to search content on its websites, Livingly inadvertently overlooked uses of still photographs at issue in this case."). And, the Ninth Circuit recently reversed an adjudication by this Court that Grecco was not entitled to the benefit of the discovery rule merely because he had previously used reverse image search technology. *Michael Grecco Productions, Inc. v. Ziff Davis, LLC,* 830 Fed. Appx. 233, 234 (Nov. 25, 2020) ("The statute of limitations discovery rule analysis is a factual one." (citation omitted)).

Livingly must present facts to establish that Grecco should have discovered its infringements earlier. It has failed to do so. "Multiple courts have held that photographers do not have a "general duty to police the internet for copyright infringements." *Delano v. Rowland Network Commc'ns LLC,* No. CV-19-02811-PHX-MTL, 2020 WL 2308476, at *3 (D. Ariz. May 8, 2020), *citing, e.g., Mackie v.*

10

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY ADJUDICATION**

*Hipple*, No. C09-0164RSL, 2010 WL 3211952, at *2 (W.D. Wash. Aug. 9, 2010) ("[Defendant] presents no case law indicating that [Plaintiff] had an affirmative duty to police the internet and stock photography agencies to find infringing copies of his work[.]"). Where a copyright holder does police the internet for infringements and still does not find a claim sooner, she certainly should not be punished for her efforts.

Finally, even without the discovery rule, the separate accrual rule defeats Livingly's statute of limitations defense. "When a defendant commits successive violations [of the Copyright Act], the statute of limitations runs separately from each violation." *Petrella,* 572 U.S. at 671 (footnotes omitted). Therefore, "[e]ach time an infringing work is reproduced or distributed, the infringer commits a new wrong…[which] gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs." *Id.* Here, Livingly continued display the Subject Photographs well into 2019—within the three years preceding the filing of the complaint. It thus violated Grecco's rights under Section 106 of the Copyright Act within the statute of limitations period.  *See APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 499 (2019) ("each of these displays constituted a separate infringement on [plaintiff's] right of public display under § 106(5)[.]").

Summary adjudication of liability for infringement is thus proper.

**D. Livingly's Willfulness and Grecco's Damages Are Questions for the Jury.**

It is unclear why Livingly has argued, in opposition to a motion simply seeking an adjudication of basic copyright infringement liability, that its infringement of the Subject Photographs, including one that it had previously infringed, was entirely innocent and that damages should be minimal. Those are, of course, questions for a jury and there is ample evidence upon which a factfinder could find otherwise.

Livingly has been unable (or unwilling) to state from where it obtained the Subject Photographs, and has told a story (i.e., that it likely would have gotten the X-Files images from the Fox website or social media pages) that is demonstrably false—Fox admits that it did not have the images at the time and had not made them

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY ADJUDICATION

available for promotional use.  Moreover, Livingly's employees admitted that they would regularly search for images on Google, and if the image "appeared" to them to be promotional (based on upon uncertain and indefinite criteria) they felt entitled to use them.  SDF ¶ 15.  Notably, Livingly has supported the actions of its staff despite those actions being contrary to Livingly's own policies regarding use of photographs on its websites, all of which were implemented with the intention of preventing the current situation.  For example, Livingly's policies instructed employees to not use photographs where the original source could not be determined, to not use photographs from professional photographers, to provide proper attribution, and to reach out to ask for permission when it cannot be determined whether an image may be used or not.  SDF ¶¶ 14-5, 74.  A question of fact thus exists as to Defendant's willfulness.

## III.    CONCLUSION

Livingly has presented no substantial evidence that it ever had any interactions with Grecco from which a license could conceivably be implied. It has also presented no evidence that the Studios ever used the Subject Photographs promotionally, let alone either had a written right to sublicense or exercised that right in favor of Livingly's quizzes and listicles. And, Livingly presents no facts that could reasonably establish fair use, raise a question as to the reasonableness of Grecco's discovery of these claims in 2019, or otherwise establish any affirmative defense. So owing, Livingly's liability for infringement is ripe for adjudication and this motion should be granted.

Respectfully submitted,

Dated: March 22, 2021                         By:    */s/ Stephen M Doniger*
                                                     Stephen M. Doniger, Esq.
                                                     Kelsey M. Schultz, Esq.
                                                     DONIGER / BURROUGHS
                                                     Attorneys for Plaintiff

12

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY ADJUDICATION**