EXHIBIT 8

1  Joshua Koltun (Bar No. 173040)
2  Attorney
   1 Sansome Street
3  Suite 3500, No. 500
   San Francisco, California  94104
4  Telephone:  415.680.3410
   Facsimile:  866.462.5959
5  joshua@koltunattorney.com
6
7  Attorney for Defendant and Counterclaimant
   Livingly Media, Inc.
8
9                    UNITED STATES DISTRICT COURT
10                   CENTRAL DISTRICT OF CALIFORNIA
11

12  MICHAEL GRECCO PRODUCTIONS,   )   Case No.: 2:20-c-00151 DSF-PJW
    INC. /d/b/a "Michael Grecco   )
13  Photography," a California corporation,  )   LIVINGLY MEDIA, INC.
                                  )   DEPOSITION NOTICE TO
14              Plaintiff,        )   MICHAEL GRECCO
                                  )   PRODUCTIONS, INC.
15         v.                     )
                                  )
16                                )
17  LIVINGLY MEDIA, INC., a Delaware  )
    Corporation; and DOES 1-10,   )
18                                )
                Defendants.       )
19                                )
20                                )
21                                )
22  _____

23
24
25
26
27                                          ╔══════════════╗
                                            ║  Exhibit 8   ║
28                                          ╚══════════════╝

Joshua Koltun ATTORNEY

**PLEASE TAKE NOTICE**  that pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendant and Counterclaimant Livingly Media, Inc. ("Livingly"), will take the deposition of Plaintiff and Counterdefendant Michael Grecco Productions, Inc. ("MGP") before a duly qualified notary public authorized to administer oaths, via videoconferencing technology at 9:30 a.m. on November 5, 2020, and continuing from day to day thereafter, Saturdays, Sundays and holidays excepted.  The deposition shall be recorded stenographically, and Livingly reserves the right to videotape the deposition.  If counsel mutually agree to a different date and time for the deposition, the deposition will go forward on such date, and all other terms of this notice will apply.

The matters as to which MGP is requested to designate persons to testify on its behalf are as follows:

1.      The photographs taken by Michael Grecco or in which Grecco or MGP or its predecessors ("YOU") claims to own the copyright, in which the subject matter of the photograph is derived from or related to the *X-Files* or *Xena, Warrior Princess* television shows ("SHOWS"), including but not limited to the Subject Photographs at issue in the Complaint in this action ("PHOTOGRAPHS"), including:

> a.  the commissioning of the PHOTOGRAPHS;
>
> b.  the creation of the PHOTOGRAPHS;
>
> c.  any communications or transactions with the studios or other entities involved in the production of the SHOWS concerning the photographs ("STUDIOS") concerning the PHOTOGRAPHS, including but not limited to communications by YOUR agents or attorneys;
>
> d.  the publication or other disposition of the PHOTOGRAPHS;
>
> e.  the copyright registration of the copyright in the PHOTOGRAPHS;
>
> f.  the licensing of the PHOTOGRAPHS by YOU to the STUDIOS;
>
> g.  the licensing of the PHOTOGRAPHS by YOU to third parties, including both retroactive licensing and prospective licensing;

Joshua Koltun ATTORNEY

h.  any income YOU have derived from the PHOTOGRAPHS;

i.  YOUR efforts (including that of YOUR attorneys), to discover any infringement of the PHOTOGRAPHS;

j.  YOUR claims of infringement of the PHOTOGRAPHS;

2.  YOUR communications with Livingly Media, Inc.,

3.  The authenticity and provenance of any documents produced in this litigation.

4.  YOUR practices, agreements, and understandings, over time, concerning the labeling, attribution, crediting, or designation of authorship or copyright ownership in your photographs, including but not limited to "Copyright Management Information" under the Digital Millenium Copyright Act.

Dated: October, 29, 2020                    _____\s_____

Joshua Koltun
Attorney for Defendant
and Counterclaimant
Livingly Media, Inc.

Joshua Koltun ATTORNEY

- 2 -

PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Joshua Koltun, Attorney, 1 Sansome Street, Suite 3500/No. 500, San Francisco CA 94104.

On *October 29, 2020*, I served the following documents:

**LIVINGLY'S DEPOSITION NOTICE TO MICHAEL GRECCO PRODUCTIONS**

By *emailing* a true copy of the document(s) listed above to plaintiff's counsel of record herein at the following address:

stephen@donigerlawfirm.com

fcasella@donigerlawfirm.com

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on October 29, 2020 at San Francisco, California.


_____/s/_____
Joshua Koltun

EXHIBIT 18

Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
PERKOWSKI LEGAL, PC
445 S. Figueroa Street
Suite 3100
Los Angeles, California 90071
Telephone: (213) 426-2137

Attorneys for Plaintiff
MICHAEL GRECCO PRODUCTIONS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> VOX MEDIA, LLC, <br><br> *Defendant.* | Case No. 2:19-cv-7826 DSF (PJWx) <br><br> **FIRST AMENDED COMPLAINT** <br><br> *Jury Trial Demanded* |

Plaintiff Michael Grecco Productions, Inc., formerly known as Michael Grecco Photography, Inc., for its Complaint against defendant Vox Media, LLC, alleges as follows:

1.     This is an action for copyright infringement brought by plaintiff, the holder of all copyrights to the photographs described below, against all defendants for uses of plaintiff's photograph without authorization or permission.

**JURISDICTION AND VENUE**

2.     This is an action for injunctive relief, statutory damages, monetary damages, and other relief under the copyright law of the United States.

3.     This action arises under the Copyright Act of 1976, Title 17 U.S.C. § 101 et seq.

1

**Exhibit 18**

4.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question) and § 1338 (copyright).

5.     This Court has personal jurisdiction over defendant Vox Media because it has a principal places of business in this judicial district, is doing business in the State of California and in this judicial district, and has caused injury to plaintiff and his intellectual property within the State of California and in this judicial district.

6.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) or § 1391(b)(2), as well as 28 U.S.C. § 1400(a).

## PARTIES

7.     Plaintiff Michael Grecco Productions is a corporation organized and existing under the laws of the State of California with its principal place of business in Santa Monica, in Los Angeles County.

8.     Defendant Vox Media is, according to documents on file with the California Secretary of State, an entity organized and existing under the laws of the State of Delaware with its principal place of business in New York.

9.     Vox Media is a media enterprise that publishes *New York* magazine and NYmag.com, as well as online publications Vulture, The Cut, Grub Street, Intelligencer, and The Strategist. The magazine and websites feature articles on entertainment, brands, sports, culture, and other topics. *New York* magazine maintains a verified circulation of over 400,000 subscriptions and 14 million users visit the websites each month.

## BACKGROUND FACTS

10.     In the marketplace, celebrity photos carry tremendous value. Plaintiff has licensed individual images of celebrities to major content outlets for sometimes tens of thousands of dollars. Plaintiff's business is to provide such images, on an exclusive or non-exclusive basis, to major media publications and other entities that need imagery to accompany written content. Celebrity content, celebrity gossip, and

celebrity photos are among the most valued content that generates and drives traffic to websites.

11.     Defendant here has driven traffic to its websites in part by the presence of sought-after and searched-for celebrity images—including, as set forth below, an image that plaintiff owns. This traffic translates to significant advertising revenue. That is, content websites like Vox Media's effectively monetize the content on their websites by securing eyeballs, which translates to ad revenue. Violating plaintiff's copyright by using a photographic image without authorization assists in this strategy.

## A.     Michael Grecco, a Professional Photographer

12.     Michael Grecco is a commercial photographer and film director noted for his iconic celebrity portraits, innovative magazine covers, editorial images and advertising spreads for high profile companies like Fox, NBC/Universal, GE, Pfizer, HBO, Kodak, IBM, Yahoo!, ESPN, Wired, Time, Entertainment Weekly, Esquire, Premier and MAXIM. His work is regularly featured in prestigious venues, including the Louis Stern, G. Ray Hawkins, Stephen Cohen and Fahey Klein galleries.

13.     Plaintiff Michael Grecco Productions owns Grecco's intellectual property. Grecco, operating through plaintiff, meticulously protects his intellectual property against infringement both within the United States and throughout the rest of the world.

14.     Michael Grecco Productions was formerly known as Michael Grecco Photography, Inc.

15.     The cachet of Grecco's portfolio, and his talent, have resulted in substantial licensing opportunities throughout the years on which he relies to research and fund future photo shoots and to pay himself and his staff at Michael Grecco Productions. Grecco has always maintained the publishing rights to his works, knowing they would provide the revenue. Grecco also relies on income generated from licensing his photographs for his living. Through plaintiff, Grecco employs a

1  staff dedicated to setting up new photo shoots, as well as managing, monetizing, and

2  policing the intellectual property of his portfolio.

3       16.    Unfortunately, a multitude of works by Grecco are now on the internet,

4  without authorization and without compensation to Grecco or plaintiff, as a result of

5  intellectual property theft. The magnitude of this theft is a baleful compliment to his

6  talents: web pirates, who pay nothing for stolen content, can select the best.

7       17.    Plaintiff, which licenses Grecco's works, has been forced to incur costs

8  to discover piracy and to help collect the revenues due to him from the tide of

9  copyright infringements. The policing of his intellectual properties has become a

10 cumbersome and expensive task which adds to the cost of every image produced. As

11 in the past, despite the constant struggle against internet piracy, Mr. Grecco still relies

12 on these revenues to continue his work.

13 **A.    The Infringed Image and Defendants' Unauthorized Use**

14      18.    Plaintiff is the owner and exclusive copyright holder of photographic

15 image (the "Image") as follows:

16      19.    The Image is a promotional still photograph of David Duchovny and

17 Gillian Anderson as fictional characters Fox

18 Mulder and Dana Scully from the popular TV

19 show "The X Files."  In this Image, agent

20 Mulder is holding a flashlight above his head

21 while standing next to agent Scully in a

22 turquoise-colored room.  The image is

23 registered to plaintiff with Registration No.

24 VA 1-232-596 (eff. Sept. 8, 2003) in

25 compliance with the Copyright Act.  The Image

26 appears to the right.



27      20.    The Image was created at the request of plaintiff's client USA Weekend,

28 which was granted a license to use the Image on the cover of USA Weekend

4

1   magazine in March 1995. The rights granted were for one-time North America only,

2   without the right to transfer to a third party and without the right to reprint or sell.

3        21.    Plaintiff never licensed the Image to defendant or its predecessor New

4   York Media, LLC. Nevertheless, Vox Media used the Image by prominently

5   featuring the Image to promote an article and slideshow unrelated to the Image itself

6   and to drive viewership, as set forth below.

7        22.    Vox Media used the Image by copying it and displaying it on

8   vulture.com in an article entitled *Don't Be Surprised if These Nine TV Shows Get*

9   *Rebooted Next*, by Josef Adalian and Kyle Buchanan (the "Article"). The Article with

10  an accompanying slideshow was published on November 4, 2011, and continued to

11  be displayed at the time the original Complaint was filed.

12       23.    On information and belief, when the Article was published Josef Adalian

13  was employed as a writer for Vulture by Vox Media predecessor New York Media.

14       24.    On information and belief, Kyle Buchanan was an employed author for

15  Vulture magazine at the time of the infringement.

16       25.    Defendant did not disclose its unauthorized use of the Image to plaintiff

17  or seek permission to use the Image. Through the exercise of reasonable diligence,

18  plaintiff discovered defendants' unauthorized use of the Image within the last three

19  years. But for plaintiff's discovery of defendants' unauthorized uses, their

20  infringements would still be concealed.

21  **B.    Facts That Support a Finding that Plaintiff's Claims Are Not Time Barred**

22       26.    Plaintiff's claims are not barred by the statute of limitations because

23  plaintiff actually discovered Vox Media's unauthorized use fewer than three years

24  before filing the complaint. In addition, plaintiff was reasonably diligent in

25  discovering defendants' unauthorized uses of the Photographs and could not have

26  discovered the unauthorized uses sooner than it did.

27       **1.    Plaintiff's large and extensive image library**

28       27.    As with many professional photographers, each photoshoot involves the

5

taking of hundreds if not thousands of photographs. Plaintiff always retains copyright ownership of the photographic images that result from these photoshoots.

28.     Grecco has been taking photographs for some forty years, so plaintiff has an enormous library of images, estimated at over ten million.

29.     After a photoshoot, plaintiff's clients typically choose a subset of photographic images to be retouched and finalized. Plaintiff then provides that subset of images to the client with a non-exclusive license, in which the client's right to use is restricted in geographic scope, in temporal scope, by the number of uses, and/or by the type of use allowed.

30.     Although plaintiff sometimes allows clients to grant sub-licenses for the purpose of advertising and promotion—as for example with some X-Files images—plaintiff never allows its clients to give those third-party sub-licensees the right to grant further licenses.

31.     Because of the extremely large number of images that are part of its library, plaintiff cannot realistically conduct enforcement efforts on all of them. Instead, plaintiff must make tough decisions about a much smaller subset of images to include in electronic search databases and reverse-image searches.

**2.     Reverse-image search tools**

32.     Reverse-image searching is a content-based image retrieval technique that involves formulating a search query by providing a system with a sample image—rather than words or metadata—and having it return results based on that image.

33.     There are reverse-image search engines that are publicly available, such as Google Image Search and TinEye, and some that are privately developed and available only to subscribers for commercial use.

34.     All reverse-image search engines are limited in their search capability. The limitations are manifested in two primary ways: (a) in the size and scope of the

FIRST AMENDED COMPLAINT

"index" of images that are being searched by the system, and (b) the "algorithm" being used to conduct the search.

35.   *Index limitation*: No reverse-image search engine searches the entire World Wide Web (the "web"). Instead, each system uses its own index of images, which is created using confidential and proprietary methods that results in a smaller subset of the entire population.

36.   Although the methods vary, it is widely understood that each system uses a combination of factors to find and index images, including without limitation: (a) the rank of the domain on which the image appears, (b) the rank of the page on which the image appears, (c) the amount of activity on the page on which the image appears, and (d) the recency of the activity on the page on which the image appears.

37.   Therefore, broadly speaking, popular domains and pages, with lots of hits or with frequent changes to content, are more likely to get indexed than old, inactive pages on low-ranked domains.

38.   Search indexes are small compared to the number of images available on the web. For example, the number of total images on the Internet is impossibly large. According to one report in 2014, 1.8 *billion* digital images are uploaded to the internet every single day—or 657 *billion* every year. By contrast, the last time an estimate was made available in 2010, Google Image Search—widely believed to be the largest reverse-image search index—had indexed only 10 billion images in the preceding 10 years.

39.   Accordingly, many pages on the web may never be indexed for reverse-image searching, in any system's index.

40.   *Algorithm limitation*: Even if an image is indexed, a reverse-image search will return the result only if the system's algorithm can locate it.

41.   Broadly speaking, reverse-image searching is using computer vision technology to match images based on similarities in textures, colors, shapes, and other content of the image. Each search system—whether publicly available or for

private, commercial users—uses its own confidential and propriety algorithm for this process.

42.     Whether an algorithm can locate an image on the Web based on a user's input will therefore depend on the quality of the system's algorithm. Other factors that affect search ability and results include: system limitations on file size or file type that can be used as search input; the quality of the image input by a user into the search engine, and the quality of the image on the web page that is indexed for search.

43.     Because of the technological limitations described above, it is possible that a specific image on the Web might never be found despite reverse-image searching on multiple platforms or systems, or it might be found only after several years, as search-engine indexes grow in size and reverse-image search technology improves over time.

**3.    Plaintiff's search process**

44.     Because plaintiff owns over 10 million total images, it is not practical to conduct searches on all of them. Plaintiff has therefore had to select a smaller subset of images to include in searches.

45.     Of the 10 million total images, about 15,000 are final re-touched images. Of those, plaintiff has selected about 6,500 to include in its image library for licensing to the public. Plaintiff uses that library of approximately 6,500 images as a database on which to conduct reverse-image searches for copyright enforcement purposes.

46.     The number of images included in plaintiff's reverse-image search efforts has also grown over time: as plaintiff finds unauthorized uses of images not included in the search database, plaintiff will add such images to the database. This usually happens by chance, or when a reverse-image search finds an image that is similar, but not identical, to the image already being searched.

FIRST AMENDED COMPLAINT

47.     Between about 2010 and 2018, as relevant to the claims here, plaintiff used several reverse-image search systems in its efforts to enforce its copyrights against widespread infringement on the Internet:

a.     *Higbee & Associates*: the law firm of Higbee & Associates leases reverse-image search technology from third parties but maintains "sightings" or "hits" in a proprietary database and "portal" for its clients. Plaintiff continues to use the Higbee service.

b.     *ImageRights*: a private, commercial service using a proprietary system for reverse-image searching the web. Plaintiff used ImageRights until mid-August 2018.

c.     *Google Image Search* and *TinEye*: plaintiff also uses these publicly available reverse-image search engines to conduct manual searches.

### a.     Higbee process

48.     The Higbee process is as follows: First, "sightings" or "hits" of plaintiff's images are located by the algorithm using Higbee's system. Those sightings are maintained within the Higbee system, out of plaintiff's view. Plaintiff has very limited access to unreviewed sightings.

49.     On information and belief, at any given time, the Higbee system contains many thousand sightings of plaintiff's images. As of the filing of this complaint, there were nearly 33,000 sightings in the Higbee system.

50.     Second, each sighting is reviewed internally (at Higbee), assigned a quality score, and determined whether it is viable for enforcement. If so, the sighting is sent into the client "portal" for plaintiff to review, confirm it is an infringement, and approve the sighting for enforcement action.

51.     Plaintiff's internal review includes verifying the image, determining that it is not subject to a prior license or release, and making a preliminary assessment of fair use and DMCA safe-harbor protection.

52.     Plaintiff has only three staff members—Michael Grecco himself, a studio manager (who also handles plaintiff's bookings and legitimate licensing efforts), and an archivist—any of which may review and approve a Higbee sighting.

53.     Finally, after plaintiff approves, the sighting is returned to Higbee to be worked on by case workers and attorneys.

### b.     ImageRights process

54.     Like the Higbee process, with ImageRights the system locates "sightings" or "hits" of plaintiff's images using an algorithm. Unlike the Higbee process, ImageRights dumps all sightings into a portal for investigation and confirmation, and approval by plaintiff.

55.     Because ImageRights provides all sightings to plaintiff, this results in an extremely large number of sightings that plaintiff's small staff must vet. As of the time that plaintiff stopped using ImageRights in August 2018, there were around 100,000 sightings that needed to be investigated.

56.     Each sighting produced by ImageRights must undergo the following a series steps to confirm whether it should be pursued for copyright enforcement: verifying that the sighting involves one of plaintiff's images (i.e., it is not a "false positive"); investigating whether the sighting involves an image or a user that has a prior authorization, license, or release allowing the use of the image; preliminarily determining whether there is a viable fair-use defense to the use of the image; preliminarily assessing whether there is a DMCA safe-harbor defense to the use of the image; and determining whether the sighting involves an image or a user that has a connection to the United States.

57.     Assessing whether a DMCA safe-harbor defense exists often requires extensive research into the identity of the user (if it can be determined) and whether that user is acting on behalf of the website owner in posting the image.

58.     Plaintiff has only three staff members who are responsible for vetting every one of the ImageRights sightings. Because the vetting process described above

10

1 can be time-intensive, there is often a significant delay from when ImageRights
2 dumps sightings data into a review portal until when plaintiff actually becomes aware
3 of the sighting and the potential infringement.

4     59.    After plaintiff completes its investigation of an ImageRights sighting, it
5 is approved for enforcement and turned over to an attorney for handling.

6     **c.**    **Google Image Search and TinEye**

7     60.    Because plaintiff has thousands and thousands of images, it is not
8 feasible to use publicly available search engines like Google Image Search and
9 TinEye to conduct comprehensive enforcement efforts on an entire image library.
10 This is because images must be separately loaded into the search field of the engine
11 one by one.

12     61.    Plaintiff often uses Google Image Search and TinEye to supplement the
13 results from the private reverse-image search engines that are part of its enforcement
14 efforts. After a commercial system like ImageRights locates an infringement,
15 plaintiff's staff will often input the found image into Google Image Search and/or
16 TinEye. Since different search engines often return different results, conducting
17 supplementary searching in this manner will sometimes reveal more infringements.

18     **4.**    **The discovery of the Photographs in this action**

19     62.    With respect to the Image that is the subject of this action, the above
20 process worked as follows:

21     63.    An employee of plaintiff, aware that the Image is frequently infringed,
22 on February 12, 2019, conducted a reverse-image search of the Image using Google
23 Image Search and found defendant's unauthorized use of the Image on vulture.com.

24     64.    Before February 12, 2019, the ImageRights system had not returned a
25 "sighting" of the Image on vulture.com.

26     65.    Before February 12, 2019, a sighting of the Image on vulture.com had
27 not been pushed through to the Higbee portal for plaintiff's review, confirmation, and
28 approval.

66.     Accordingly, plaintiff was reasonably diligent in searching for and discovering defendants' unauthorized uses of the Image.

**C.     Systemic Piracy Destroys the Value of the Creators' Work**

67.     Plaintiff conducts business as a syndicator of photos. This business model is predicated on licensing the use of works in multiple outlets, each of which pays a fee to publish. Although the original licensor pays for the creation of the work, plaintiffs' business model depends on additional licenses to fully compensate for the work. In short, the business plan depends on multiples sales of the work over time.

68.     Individuals and entities in the media industries know that repeated (sometimes instantaneous) acts of content piracy destroy the syndication value of the work of content creators like Grecco.

69.     Defendant's theft of plaintiff's work illustrates the process whereby commercial piracy of content not only deprives the owner of license fees but also destroys the syndication value of the work. Legitimate publications to which plaintiff looks to pay licensing fees are unwilling to pay for works that are already widely disseminated on the internet for free by pirate sites.

**D.     Facts That Support a Finding of Willful Infringement**

70.     On information and belief, at the time that defendants published the Image, it knew or should have known that it did not have authorization or permission from plaintiff to do so.

71.     More specifically, at the time of the infringement (and now), Vox Media was aware of the importance of copyright protection. This is demonstrated on the Vulture website itself, which contains a copyright notice, for example as shown below.

VULTURE IS A VOX MEDIA NETWORK. © 2020 VOX MEDIA, INC. ALL RIGHTS RESERVED.

72.     Further, Vox Media's awareness of the importance of copyright protection as it pertains to the rights of third parties is demonstrated by the Terms of

12

EXHIBIT 19

Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
PERKOWSKI LEGAL, PC
445 S. Figueroa Street
Suite 3100
Los Angeles, California 90071
Telephone: (213) 426-2137

Attorneys for Plaintiff
MICHAEL GRECCO PRODUCTIONS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., | Case No.: 2:19-cv-00535 JAK (AFMx) |
| *Plaintiff,* | **SECOND AMENDED COMPLAINT** |
| v. | *Jury Trial Demanded* |
| EVOLVE MEDIA, LLC, CRAVEONLINE MEDIA, LLC, TOTALLYHER MEDIA, LLC, and VIACOMCBS INC., | |
| *Defendants.* | |

Plaintiff Michael Grecco Productions, Inc., f/k/a Michael Grecco Photography, Inc., for its Complaint against defendants Evolve Media, LLC, CraveOnline Media, LLC, TotallyHer Media, LLC, and ViacomCBS Inc., alleges as follows:

1. This is an action for copyright infringement brought by plaintiff, the holder of all copyrights to the photographs described below, against all defendants for uses of plaintiff's photographs without authorization or permission.

## JURISDICTION AND VENUE

2. This is an action for injunctive relief, statutory damages, monetary damages, and other relief under the copyright law of the United States.

1

**Exhibit 19**

3.     This action arises under the Copyright Act of 1976, Title 17 U.S.C. § 101 et seq.

4.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question) and § 1338 (copyright).

5.     This Court has personal jurisdiction over defendants because, among other things, defendants have their principal places of business in this judicial district, are doing business in the State of California and in this judicial district, and have caused injury to plaintiff and his intellectual property within the State of California and in this judicial district.

6.     Venue in this judicial district is proper, either under 28 U.S.C. § 1391(b)(1) or under 28 U.S.C. § 1391(b)(2), and (b)(3), as well as 28 U.S.C. § 1400(a).

**PARTIES**

7.     Plaintiff Michael Grecco Productions, Inc., formerly known as Michael Grecco Photography, Inc., is a corporation organized and existing under the laws of the State of California with its principal place of business in Santa Monica, in Los Angeles County. Plaintiff is a photography agency that owns the copyright to images created by Michael Grecco, a well-known professional photographer, and that licenses such photographs to third parties on his behalf.

8.     Plaintiff licenses photographs for use and distribution throughout the United States, including California.

9.     Defendant Evolve Media, LLC is, according to documents on file with the California Secretary of State, an entity organized and existing under the laws of the State of California with its principle place of business in this judicial district.

10.     Evolve Media is a publisher of digital enthusiast destinations for men and women. According to Evolve Media, it "offers premium and engaging content to its readers, while offering marketers the tools needed to execute custom, content-led marketing solutions" that reach Evolve Media's large audience of millions of people.

Case 2:20-cv-00151-ARSF-IC  Document 04-3  Filed 03/24/21  Page 22 of 90  Page ID
Case 2:20-cv-00035-JAR-AFM  Document 04-1  Filed 02/25/20  Page 3 of 90  Page ID #:420
#:1109

11.     Defendant CraveOnline, LLC is a digital media company that produces and publishes content directed at entertaining and informing young men. According to documents on file with the California Secretary of State, an entity organized and existing under the laws of the State of California with its principle place of business in this judicial district.

12.     Defendant TotallyHer Media, LLC is a digital media, marketing, and sales organization directed at entertaining and informing women. According to documents on file with the California Secretary of State, an entity organized and existing under the laws of the State of California with its principle place of business in this judicial district.

13.     On information and belief, CraveOnline is known as and/or doing business as Mandatory Media and is branded "Mandatory." TotallyHer Media is branded as "TotallyHer." As shown below, the "About Us" page of Evolve Media's website, http://www.evolvemediallc.com/, lists Mandatory and TotallyHer as two of its brands.

## OUR BRANDS

**Content** and **Community** is our mission. Produce quality, authoritative content on topics people are passionate about and then provide them the ability to connect and engage with others that share that same passion.

**MANDATORY**                    TOTALLY**HER**

14.     On information and belief, Mandatory is owned, operated, and/or controlled by Evolve Media. The main web page of Mandatory, www.mandatory.com, states at the bottom that "Mandatory.com is a property of Evolve Media LL," as shown below.



**MANDATORY**     CONTACT US     ADVERTISER INFO     PRIVACY POLICY     TERMS & CONDITIONS     ADCHOICES

MANDATORY.COM IS A PROPERTY OF EVOLVE MEDIA LLC COMPANY. © 2018 ALL RIGHTS RESERVED.

15.     According to documents on file with the California Secretary of State, Evolve Media is the sole manager or member of CraveOnline Media, LLC.

1    16.    On information and belief, TotallyHer Media is owned, operated, and/or
2 controlled by Evolve Media. The main web page of TotallyHer Media,

  

©2019 All rights reserved. TotallyHer Media, LLC is a division of Evolve Media, LLC.

8 www.totallyhermedia.com, states at the bottom that "TotallyHer Media, LLC is a
9 division of Evolve Media, LLC," as shown below.

10    17.    Defendant ViacomCBS Inc. is a corporation organized under the laws of
11 the State of Delaware with a principal place of business in New York. According to
12 documents on file with the California Secretary of State, ViacomCBS is registered to
13 do business in the State of California.

14                              **BACKGROUND FACTS**

15    18.    In the marketplace, celebrity photos carry tremendous value. Plaintiff
16 has licensed individual images of celebrities to major content outlets for sometimes
17 tens of thousands of dollars. Plaintiff's business is to provide such images, on an
18 exclusive and non-exclusive bases, to major media publications. Celebrity content,
19 celebrity gossip, and celebrity photos are among the most valued content that
20 generates and drives traffic to websites.

21    19.    Defendants here have driven traffic to their websites in part by the
22 presence of sought-after and searched-for celebrity images—including, as set forth
23 below, images that plaintiff owns. All of this traffic translates to significant
24 advertising revenue. That is, content websites like defendants effectively monetize
25 the content on their websites by securing eyeballs, which translates to ad revenue.
26 Violating plaintiff's copyright by using its photographic images without authorization
27 is part of defendants' strategy.

28

SECOND AMENDED COMPLAINT

## A.    The Infringed Images

20.     Plaintiff is the owner and exclusive copyright holder of photographic images (the "Photographs") as follows:

21.     *Xena Image*. The Xena Image is a promotional still photograph of American actress Lucy Lawless as Xena, a fictional character from the television show "Xena, Warrior Princess." The Xena Image was registered to plaintiff, with Registration No. VA 2-064-915 (eff. Aug. 29, 2017), in compliance with the Copyright Act. A reproduction of the Xena Image appears to the right.



22.     *Kate Walsh Image*. The Kate Walsh Image is a photograph of American actress Kate Walsh. The Kate Walsh Image was registered to plaintiff, with Registration No. VA 699-224 (eff. Apr. 10, 2006), in compliance with the Copyright Act. A reproduction of the Kate Walsh Image appears to the right.



23.     *Jerry O'Connell Image*. The Jerry O'Connell Image is a photograph of American actor Jerry O'Connell. The Jerry O'Connell Image was registered to plaintiff, with Registration No. VA 2-064-693 (eff. Aug. 20, 2017), in compliance with the Copyright Act. A reproduction of the Jerry O'Connell Image appears at left.

24.     *X-Files Images*. The X-Files Images are promotional still photographs of David Duchovny and Gillian Anderson as fictional characters Fox Mulder and Dana Scully from the popular TV show "The X Files."

///

///

5



a.    X-Files Image 1, depicting agents Scully and Mulder standing against a brown background, was registered to plaintiff, with Registration No. VA 2-063-319 (eff. July 27, 2017), in compliance with the Copyright Act. A reproduction of X-Files Image 1 appears to the left.

b.    X-Files Image 4, depicting agents Mulder and Scully in a green laboratory room with agent Scully turned and looking over her shoulder, was registered to plaintiff, with Registration No. 2-030-741 (eff. Jan. 22, 2017), in compliance with the Copyright Act. A reproduction of X-Files Image 4 appears to the left.

25.    The Photographs were created at the request of plaintiff's clients, each of which was granted a license that was limited by time, by scope of use allowed, by right to sublicense, or by a combination of the foregoing.

**B.    Defendants' Unauthorized Uses**

26.    Defendants own and maintain the following websites:

a.    Mandatory, accessible at www.mandatory.com;

b.    Crave Online, accessible at www.craveonline.com, www.craveonline.ca, and www.craveonline.co.uk.

c.    SuperHero Hype, accessible at www.superherohype.com.

d.    After Ellen, accessible at www.afterellen.com;

27.    On information and belief, defendant ViacomCBS owned the After Ellen website at least as early as 2008 and continuing through 2014.

6

SECOND AMENDED COMPLAINT

28.     On information and belief, defendant Evolve Media owned the After Ellen website from 2014 and continuing through early 2019.

29.     According to the "About Us" page on Evolve Media's website, its brands and websites "have earned the trust of more than 100 million global consumers a month and counting!" A revolving banner on the page states that defendants have "120 million readers (fans) a month and growing."

30.     Defendants are commercial endeavors. Their websites feature third-party advertisements by prominent business entities offering products and services, such as Advil (Pfizer), Kaiser Permanente. Black Rifle Coffee, ALDI, AT&T, Nissan, Honda, Metromile, and various hotel properties and films and television programs, and others.

31.     On information and belief, all or a significant part of defendants' revenue is ad-based, including native-advertising placement and sponsored posts. Accordingly, defendants earn more income when the number of viewers who sees their web pages increases. Defendants have the incentive to draw more viewers to their websites by featuring content that is visually interesting, such as by using plaintiff's Photographs.

32.     Plaintiff never licensed the Photographs to defendants. Nevertheless, defendants used the Photographs on its websites numerous times by prominently featuring the Photographs to promote articles and content unrelated to the Photographs themselves and to drive viewership, as set forth below.

33.     Defendants used the Xena Image by copying it and displaying it on the AfterEllen website on or about November 10, 2010.

34.     The Xena Image was included in an article by Trish Bendix, who on information and belief was at the time a Managing Editor of AfterEllen.com, and thus an employee or agent of ViacomCBS.

35.     Defendants continued to display the Xena Image on the AfterEllen website through at least May 2018.

7

36. Defendants used the Kate Walsh Image by copying it and displaying it on the AfterEllen website on or about June 6, 2007.

37. On information and belief, the person or persons who caused the Kate Walsh Image to be copied and displayed on the AfterEllen website was an employee or agent of ViacomCBS.

38. Defendants continued to display the Kate Walsh Image on the AfterEllen website through at least May 2018.

39. Defendants used the Jerry O'Connell Image by copying it and displaying it on the craveonline.com/mandatory and mandatory.com websites on or about August 21, 2013.

40. The Jerry O'Connell Image was included in an article by Cory Dudak, who at the time, on information and belief, was employed by defendants as a content writer.

41. Defendants continued to display the Jerry O'Connell Image on its website through at least February 2018.

42. Defendants used X-Files Image 1 by copying it and displaying it on the craveonline.com website on or about January 21, 2015; on or about March 24, 2015; on or about April 29, 2015; and on or about May 11, 2015, in articles posted on these dates by Blair Marnell, who at the time, on information and belief, was employee by one or more of defendants as a TV editor.

43. Defendants also used X-Files Image 1 by copying it and displaying in on the superherohype.com website on or about July 23, 2015. The image was included in an article posted on this date by Silas Lesnick, who on information and belief was employed by one of the defendants as a managing editor for comingsoon.net and superherohype.com.

44. On information and belief, defendants also used X-Files Image 1 by copying it and displaying in on the mandatory.com website.

SECOND AMENDED COMPLAINT

45.     Defendants also copied and displayed X-Files Image 1 on the craveonline.ca website on or about May 11, 2015.

46.     Defendants continued to display X-Files Image 1 on the craveonline.com and mandatory.com websites through at least 2018.

47.     Defendants used X-Files Image 4 by copying it and displaying it on the craveonline.com and mandatory.com websites on or about January 21, 2016, in articles posted on these dates by Blair Marnell, who at the time, on information and belief, was employee by one or more of defendants as a TV editor.

48.     Defendants continued to display X-Files Image 4 on its websites through at least 2018.

49.     Defendants published each of the Photographs without any authorization or permission from plaintiff to do so.

50.     Defendants did not disclose their unauthorized uses of the Photographs to plaintiff or seek permission to use the Photographs. Rather, plaintiff discovered defendants' unauthorized uses through its own diligence.

**C.      Facts That Support a Finding that Plaintiff's Claims Are Not Time Barred**

51.     Plaintiff's claims are not barred by the statute of limitations because plaintiff actually discovered defendants' unauthorized uses fewer than three years before filing the complaint. In addition, plaintiff was reasonably diligent in discovering defendants' unauthorized uses of the Photographs and could not have discovered the unauthorized uses sooner than it did.

**1.      Plaintiff's large and extensive image library**

52.     As with many professional photographers, each photoshoot involves the taking of hundreds if not thousands of photographs. Plaintiff always retains copyright ownership of the photographic images that result from these photoshoots.

53.     Grecco has been taking photographs for some forty years, so plaintiff has an enormous library of images, estimated at over ten million.

9

54.     After a photoshoot, plaintiff's clients typically choose a subset of photographic images to be retouched and finalized. Plaintiff then provides that subset of images to the client with a non-exclusive license, in which the client's right to use is restricted in geographic scope, in temporal scope, by the number of uses, and/or by the type of use allowed.

55.     Although plaintiff sometimes allows clients to grant sub-licenses for the purpose of advertising and promotion—as for example with some X-Files images— plaintiff never allows its clients to give those third-party sub-licensees the right to grant further licenses.

56.     Because of the extremely large number of images that are part of its library, plaintiff cannot realistically conduct enforcement efforts on all of them. Instead, plaintiff must make tough decisions about a much smaller subset of images to include in electronic search databases and reverse-image searches.

**2.      Reverse-image search tools**

57.     Reverse-image searching is a content-based image retrieval technique that involves formulating a search query by providing a system with a sample image—rather than words or metadata—and having it return results based on that image.

58.     There are reverse-image search engines that are publicly available, such as Google Image Search and TinEye, and some that are privately developed and available only to subscribers for commercial use.

59.     All reverse-image search engines are limited in their search capability. The limitations are manifested in two primary ways: (a) in the size and scope of the "index" of images that are being searched by the system, and (b) in the "algorithm" being used to conduct the search.

60.     *Index limitation*: No reverse-image search engine searches the entire World Wide Web (the "web"). Instead, each system uses its own index of images,

SECOND AMENDED COMPLAINT

which is created using confidential and proprietary methods that results in a smaller subset of the entire population.

61.     Although the methods vary, it is widely understood that each system uses a combination of factors to find and index images, including without limitation: (a) the rank of the domain on which the image appears, (b) the rank of the page on which the image appears, (c) the amount of activity on the page on which the image appears, and (d) the recency of the activity on the page on which the image appears.

62.     Therefore, broadly speaking, popular domains and pages, with lots of hits or with frequent changes to content, are more likely to get indexed than old, inactive pages on low-ranked domains.

63.     Search indexes are small compared to the number of images available on the web. For example, the number of total images on the Internet is impossibly large. According to one report in 2014, 1.8 *billion* digital images are uploaded to the internet every single day—or 657 *billion* every year. By contrast, the last time an estimate was made available in 2010, Google Image Search—widely believed to be the largest reverse-image search index—had indexed only 10 billion images in the preceding 10 years.

64.     Accordingly, many pages on the web may never be indexed for reverse-image searching, in any system's index.

65.     *Algorithm limitation*: Even if an image is indexed, a reverse-image search will return the result only if the system's algorithm can locate it.

66.     Broadly speaking, reverse-image searching is using computer vision technology to match images based on similarities in textures, colors, shapes, and other content of the image. Each search system—whether publicly available or for private, commercial users—uses its own confidential and propriety algorithm for this process.

67.     Whether an algorithm can locate an image on the Web based on a user's input will therefore depend on the quality of the system's algorithm. Other factors

11

SECOND AMENDED COMPLAINT

that affect search ability and results include: system limitations on file size or file type that can be used as search input; the quality of the image input by a user into the search engine, and the quality of the image on the web page that is indexed for search.

68.     Because of the technological limitations described above, it is possible that a specific image on the Web might never be found despite reverse-image searching on multiple platforms or systems, or it might be found only after several years, as search-engine indexes grow in size and reverse-image search technology improves over time.

### 3.     Plaintiff's search process

69.     Because plaintiff owns over 10 million total images, it is not practical to conduct searches on all of them. Plaintiff has therefore had to select a smaller subset of images to include in searches.

70.     Of the 10 million total images, about 15,000 are final re-touched images. Of those, plaintiff has selected about 6,500 to include in its image library for licensing to the public. Plaintiff uses that library of approximately 6,500 images as a database on which to conduct reverse-image searches for copyright enforcement purposes.

71.     The number of images included in plaintiff's reverse-image search efforts has also grown over time: as plaintiff finds unauthorized uses of images not included in the search database, plaintiff will add such images to the database. This usually happens by chance, or when a reverse-image search finds an image that is similar, but not identical, to the image already being searched.

72.     Between about 2010 and 2018, as relevant to the claims here, plaintiff used several reverse-image search systems in its efforts to enforce its copyrights against widespread infringement on the Internet:

    a.     *Higbee & Associates*: the law firm of Higbee & Associates leases reverse-image search technology from third parties but maintains "sightings"

12

or "hits" in a proprietary database and "portal" for its clients. Plaintiff continues to use the Higbee service.

b. *ImageRights*: a private, commercial service using a proprietary system for reverse-image searching the web. Plaintiff used ImageRights until mid-August 2018.

c. *Google Image Search* and *TinEye*: plaintiff also uses these publicly available reverse-image search engines to conduct manual searches.

### a. Higbee process

73.     The Higbee process is as follows: First, "sightings" or "hits" of plaintiff's images are located by the algorithm using Higbee's system. Those sightings are maintained within the Higbee system, out of plaintiff's view. Plaintiff has very limited access to unreviewed sightings. For example, the system does not show plaintiff a visual of the infringement.

74.     On information and belief, at any given time, the Higbee system contains many thousand sightings of plaintiff's images. As of the filing of this complaint, there were nearly 33,000 sightings in the Higbee system.

75.     Second, each sighting is reviewed internally (at Higbee), assigned a quality score, and determined whether it is viable for enforcement. If so, the sighting is sent into the client "portal" for plaintiff to review, confirm it is an infringement, and approve the sighting for enforcement action.

76.     Plaintiff's internal review includes verifying the image, determining that it is not subject to a prior license or release, and making a preliminary assessment of fair use and DMCA safe-harbor protection.

77.     Plaintiff has only three staff members—Michael Grecco himself, a studio manager (who also handles plaintiff's bookings and legitimate licensing efforts), and an archivist—any of which may review and approve a Higbee sighting.

78.     Finally, after plaintiff approves, the sighting is returned to Higbee to be worked on by case workers and attorneys.

13

### b. ImageRights process

79. Like the Higbee process, with ImageRights the system locates "sightings" or "hits" of plaintiff's images using an algorithm. Unlike the Higbee process, ImageRights dumps all sightings into a portal for investigation and confirmation, and approval by plaintiff.

80. Because ImageRights provides all sightings to plaintiff, this results in an extremely large number of sightings that plaintiff's small staff must vet. As of the time that plaintiff stopped using ImageRights in August 2018, there were around 100,000 sightings that needed to be investigated.

81. Each sighting produced by ImageRights must undergo the following a series steps to confirm whether it should be pursued for copyright enforcement: verifying that the sighting involves one of plaintiff's images (i.e., it is not a "false positive"); investigating whether the sighting involves an image or a user that has a prior authorization, license, or release allowing the use of the image; preliminarily determining whether there is a viable fair-use defense to the use of the image; preliminarily assessing whether there is a DMCA safe-harbor defense to the use of the image; and determining whether the sighting involves an image or a user that has a connection to the United States.

82. Assessing whether a DMCA safe-harbor defense exists often requires extensive research into the identity of the user (if it can be determined) and whether that user is acting on behalf of the website owner in posting the image.

83. Plaintiff has only three staff members who are responsible for vetting every one of the ImageRights sightings. Because the vetting process described above can be time-intensive, there is often a significant delay from when ImageRights dumps sightings data into a review portal until when plaintiff actually becomes aware of the sighting and the potential infringement.

84. After plaintiff completes its investigation of an ImageRights sighting, it is approved for enforcement and turned over to an attorney for handling.

14

SECOND AMENDED COMPLAINT

### c. Google Image Search and TinEye

85.     Because plaintiff has thousands and thousands of images, it is not feasible to use publicly available search engines like Google Image Search and TinEye to conduct comprehensive enforcement efforts on an entire image library. This is because images must be separately loaded into the search field of the engine one by one.

86.     Plaintiff often uses Google Image Search and TinEye to supplement the results from the private reverse-image search engines that are part of its enforcement efforts. After a commercial system like ImageRights locates an infringement, plaintiff's staff will often input the found image into Google Image Search and/or TinEye. Since different search engines often return different results, conducting supplementary searching in this manner will sometimes reveal more infringements.

### 4. The discovery of the Photographs in this action

87.     With respect to the Images that are the subject of this action, the above process worked as follows:

88.     In September 2016, ImageRights identified some unauthorized uses of plaintiff's X-Files images on the CraveOnline website. Additional infringement sightings were identified later in 2016 and in 2017.

89.     One of plaintiff's staff members processed these infringements in October 2017 and approved them for enforcement.

90.     On or about November 15, 2017, plaintiff attempted to send a demand by email to "legal@evolvemediallc.com" concerning six unauthorized uses of three of plaintiff's X-Files images.

91.     In or about February 10, 2018, while updating the matter for outside counsel, one of plaintiff's staff members discovered defendants' unauthorized use of the Jerry O'Connell Image as well as additional unauthorized uses of the X-Files Images.

15

SECOND AMENDED COMPLAINT

Case 2:20-cv-00151-JAK-AFM  Document 64-3  Filed 02/25/20  Page 16 of 20  Page ID #:433

92.     In or about May 2018, one of plaintiff's staff members realized that there was a connection between the craveonline.com website and the mandatory.com website. This led to additional manual searches, using Google Image Search and/or TinEye, on all the websites that were believed to be owned or operated by Crave or Evolve Media.

93.     These searches resulted in the discovery, on or about May 10, 2018, of additional unauthorized uses of the X-Files Images by defendants, as well as the Kate Walsh Image on the AfterEllen website. At the same time, plaintiff's staff was able to connect to defendants the unauthorized use of the Xena Image on the AfterEllen website, which had been discovered by staff in August 2017.

94.     Accordingly, plaintiff was reasonably diligent in searching for and discovering defendants' unauthorized uses of the Image.

**D.     Facts That Support a Finding of Willful Infringement**

95.     On information and belief, at the time that defendants published the Photographs, it knew or should have known that it did not have authorization or permission from plaintiff to do so.

96.     More specifically, defendants are aware of the importance of copyright protection. This is demonstrated on defendants' websites themselves, each of which contains a copyright notice, for example as shown below.



EVOLVE / MEDIA     PRIVACY POLICY | TERMS OF SERVICE
©2019 All Rights Reserved. EVOLVE MEDIA, LLC

97.     Further, defendants' awareness of the importance of copyright protection as it pertains to the rights of third parties is demonstrated by the Terms of Use that they publish or link to on each of their websites. The Terms of Use contains language that warns users of the importance of third parties' intellectual property rights, including copyright. The Evolve Media Terms of Service, Mandatory Terms of Use, and the TotallyHer Terms of Service all read as follows:

SECOND AMENDED COMPLAINT

EXHIBIT 20

3103 17TH STREET
SANTA MONICA, CA 90405
TEL 310.452.4461
FAX 310.452.4462

MICHAEL@MICHAELGRECCO.COM

**MICHAELGRECCO.COM**

# MICHAEL**GRECCO**PHOTOGRAPHY
## STOCK  INVOICE

**TO:**  Cleveland.com

**INVOICE#** 3808
**DATE:** 12/14/16
**P.O.#**
**JOB:** X-Files

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**DESCRIPTION:** For the use of one image of the X-Files on the Cleveland.com website as part of a story called: "The Greatest TV Pilots of All Time."

**USE:** Limited publication rights for one image of X-Files on Cleveland.com website s part of a story called, "The Greatest TV Pilots of All Time." Image use from _____ forward. Image may remain up on the site in it's orgianl context only. No other rights granted. Payment in full is a material condition precedent to photographer's grant of any rights.

**TERMS:** Full payment is due upon receipt of this invoice. Final billing reflects actual, not estimated expenses, plus applicable taxes. All fees and charges in this invoice are for  the service(s) and/or licensing described above. Fees for licensing of additional available rights will be quoted upon request. A late payment charge of 1.5% per month applies after 12/24/2016.

|  |  |
|---|---|
| TOTAL | $7,500.00 |
| SALES TAX @ | $0.00 |
| FINAL TOTAL | $7,500.00 |
| ADVANCE | $7,500.00 |
| **BALANCE  U.S.** | **$0.00** |

Michael Grecco, President  (Licensor)          Date

**Exhibit 20**

Please make checks payable to "Michael Grecco Productions Inc.", E.I.N.: 95-4664141.

RIGHTS LICENSED ONLY UPON FULL PAYMENT OF TOTAL BILLING AND SUBJECT TO TERMS AND CONDITIONS ON REVERSE.

CONFIDENTIAL                                                          GRECCO000015

3103 17TH STREET
SANTA MONICA, CA 90405
TEL 310.452.4461
FAX 310.452.4462

MICHAEL@MICHAELGRECCO.COM
**MICHAELGRECCO.COM**


# MICHAEL**GRECCO**PHOTOGRAPHY
## STOCK INVOICE

**TO:**

Rolf Selin
President / Managing Director
iStone

11555 Medlock Bridge Road, · Suite 100
Johns Creek  GA  30097

**INVOICE#** 3825
**DATE:** 9/19/17
**P.O.#**
**JOB:** X-Files

**DESCRIPTION:** For the use of of the X-Files David Duchovny and Gillian Anderson (the characters Fox Mulder and Dana Scully from the X-Files), holding flashlights on the iStone website and social media pages from January 1, 2016 through September 19, 2017.

**USE:** For the use of one images of David Duchovny and Gillian Anderson (the characters Fox Mulder and Dana Scully from the X-Files), holding flashlights to accompany an article on computer data mining posted to iStone's website and social media pages including Linkedin. The term of this license is January 1, 2016 through September 19, 2017. No other rights granted. These rights may not be transferred by the client to a third party. Client may not reprint or sell the Images to anyone. Payment in full is a material condition precedent to photographers grant of any rights.

**TERMS:** Full payment is due upon receipt of this invoice. Final billing reflects actual, not estimated expenses, plus applicable taxes. All fees and charges in this invoice are for  the service(s) and/or licensing described above. Fees for licensing of additional available rights will be quoted upon request. A late payment charge of 1.5% per month applies after 9/29/2017.

| | |
|---|---|
| TOTAL | $35,000.00 |
| SALES TAX @ | $0.00 |
| FINAL TOTAL | $35,000.00 |
| ADVANCE | $0.00 |
| **BALANCE U.S.** | **$35,000.00** |

Michael Grecco, President  (Licensor)          Date

Please make checks payable to "Michael Grecco Productions Inc.", E.I.N.: 95-4664141.

RIGHTS LICENSED ONLY UPON FULL PAYMENT OF TOTAL BILLING AND SUBJECT TO TERMS AND CONDITIONS ON REVERSE.

CONFIDENTIAL                                    GRECCO000016

**Michael Grecco Productions**
3103 17th St
Santa Monica, CA  90405
studio@michaelgrecco.com



# INVOICE

| **BILL TO** | | **INVOICE #** | 1005 |
|---|---|---|---|
| Erica Carter | | **DATE** | 11/29/2018 |
| Livingly Media, Inc. | | **DUE DATE** | 12/03/2018 |
| 101 Redwood Shores Parkway, | | **TERMS** | Due on receipt |
| Suite 150 | | | |
| Redwood City, CA 94070 | | | |

**CUSTOMER**

Livingly Media, Inc. - X-Files

| DATE | ACTIVITY | | RATE | AMOUNT |
|---|---|---|---|---|
| 11/29/2018 | **Description:** For the use of one image of the X-Files cast members, Gillian Anderson and David Duchovny, on the livinglymedia.com website, in a quiz, as part of a story entitled, "Are you Mulder or Scully, from the X-Files," Use granted from 1/1/2016 to 11/30/2018. | 1 | 15,000.00 | 15,000.00 |

**Use:** Web publication rights of one 1/2 screen image of the X-Files cast members, Gillian Anderson and David Duchovny, on the livinglymedia.com website, as part of a story entitled, "Are you Mulder or Scully, from the X-Files?," from 01/01/2016 to 11/30/2018, only. No other rights granted. Payment in full is a material condition precedent to photographer's grant of any rights.

**Terms:** Full payment is due upon receipt of this invoice. All fees and charges in this invoice are for the service(s) and/or licensing described above. Fees for licensing of additional available rights will be quoted upon request. A late payment charge of 1.5% per month applies after 12/3/2018. Rights licensed subject to terms and conditions on pages 2 pages 3.

CONFIDENTIAL                                              GRECCO000017

3103 17TH STREET
SANTA MONICA, CA 90405
TEL 310.452.4461
FAX 310.452.4462

MICHAEL@MICHAELGRECCO.COM
**MICHAELGRECCO**.COM



**MICHAELGRECCO**PHOTOGRAPHY

**ALL SERVICES, AND PERMISSIONS TO REPRODUCE OR USE ANY IMAGE, ARE SUBJECT TO ALL OF THE FOLLOWING TERMS AND CONDITIONS**

**1. DEFINITIONS:** This Agreement is by and between MICHAEL GRECCO PRODUCTIONS, INC., ("Licensor"), and the commissioning party (the "Client" named on the front of this Agreement, and any permitted assignees). Licensor's relationship with Client is that of an independent contractor. "Image(s)" mean(s) the visual and / or other forms of film, prints, slides, chromes and any other visual materials in any format including without limitation digital materials supplied by Licensor to Client pursuant to this agreement. Licensor owns, controls, or represents the owner of, copyrights in the Image(s). The Image(s) are Licensor's or its employees', agent's, or contractor's interpretation, rather than a literal copy of any concepts or layouts provided to Licensor by Client. "Service(s)" means the photography and/or related digital or other related services described on the front of this Agreement that Client is specifically commissioning Licensor to perform, through it s agents, employees, and /or contractors, pursuant to this Agreement. "Copyright Management Information" means the name and other identifying information of Licensor, terms and conditions for use(s) of the Images, copyright notice information, and such other information that Licensor may prescribe.

**2. FEES, CHARGES AND ADVANCES:** Client and Client's representatives shall be jointly and severally responsible for full payment of all fees, charges, expenses and advances. The permissions granted, fees, charges, and advances set forth in this Agreement apply to the original specifications for the Services and any applicable permissions. Additional permissions shall be obtained and paid for, and additional fees, charges, and advances shall be paid by Client for, any subsequent changes, additions, or variations requested by Client, for services or permissions, and these shall be as quoted to Client in advance; where any are not quoted in advance they may be assessed, in licensor's discretion, at Licensor's negotiated rates for such permissions, and in accordance with Licensor's usual charges for changes, additions, and variations to the scope of services. However, nothing herein shall impose upon Licensor any obligation to grant additional or modified permissions, or to perform additional or to modify the services, and the same may be denied or withheld. All advance payments are due in full prior to production.

**3. IMPORTANT LIMITATIONS OF LIABILITY, RELEASES, AND INDEMNITY:** Client's sole remedy for a breach of this agreement shall be for, and Licensor's entire liability shall in no event exceed, return of the license fee paid to Licensor, and UNDER NO CIRCUMSTANCES SHALL LICENSOR, ITS CONTRACTORS, EMPLOYEES, OR AGENTS, BE LIABLE TO CLIENT FOR ANY ADDITIONAL OR OTHER REMEDY OR FOR GENERAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE, OR SPECIAL DAMAGES ARISING FROM THIS AGREEMENT, THE IMAGE(S) , OR  FROM  ANY ACTS OR OMISSIONS OF LICENSOR, OR LICENSOR'S CONTRACTORS, EMPLOYEES, OR AGENTS, except where the same arise against them from their own respective fraud, violation of law, or willful injury. Client shall indemnify, defend, and hold Licensor and Licensor's representatives, contractors, employees, and agents, harmless from and for any and all claims, liabilities, damages, and expenses of any nature whatsoever, including actual attorneys' fees, costs of investigation, and court costs a) arising from or relating to Client's direct or indirect distribution, display or other use of any Image, b) arising from or relating to any wrongful or negligent acts of the Client, or others, or their representatives, employees, or agents, and / or c) arising from Licensor and Licensor's representatives, contractors, employees, and agents own respective acts and omissions except where such acts or omissions constitute the party's fraud, violation of law, or willful wrongdoing or where they are solely negligent;  such indemnification, defense, and holding harmless, to apply except as otherwise prohibited by law. IMPORTANT: Client acknowledges and agrees that Client's agreement herein to hold harmless the Licensor, its employees, contractors, and agents, applies to all claims for injuries, damages, or losses to the Client's person and property, real or personal (whether those injuries, damages, or losses are known or unknown, foreseen or unforeseen, or patent or latent) which the client may have against the Licensor, its representatives, contractors, employees, and agents, for their own acts or omissions except where the acts or omissions constitute fraud, violation of law, willful wrongdoing, or where the party is solely negligent. Client certifies that Client has read the following provisions of California Civil Code Section 1542: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." Client intentionally and knowingly waives application of the California Civil Code Section 1542. Client understands and acknowledges that the significance and consequence of this waiver of California Civil Code Section 1542 is that even if Client should eventually suffer damages arising out of Licensor's or Licensor's representative's, contractor's, employee's, and agent's own respective acts and omissions, Client will not be able to make any claim for those damages except where the party's acts or omissions constitute fraud, a violation of law, willful wrongdoing, or where the party is solely negligent. Client acknowledges that it intends these consequences even as to claims for damages that may exist as of the date of this agreement but which Client does not know exists, and which, if known, would materially affect Client's decision to execute this agreement, regardless, of whether Client's lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause." Client assumes the risk of injury, damage, and loss, arising from facts and circumstances known to Client prior to the time injury occurs, and except where expressly prohibited by law.

**4. RIGHTS & PERMISSIONS:** Licensor, or its designated contactor(s), solely owns copyright in the Image(s). The permissions granted are granted only, and are materially conditioned, upon: (a) Client's acceptance of all terms contained in this Agreement, (b) Licensor's receipt of full payment when and as the payment shall become due and payable (TIME BEING OF THE ESSENCE), c) the request, grant of, and payment for the permissions occurring prior to the authorized use, and (c) the use of proper copyright notice and other Copyright Management Information requested or used by Licensor in connection with the Image(s). Licensor's permissions are granted for the Image(s) to Client only upon the condition that Client accepts all of the terms of this Agreement. Unless otherwise specifically stated on the front of this Agreement, all permissions granted by Licensor are non-exclusive, the duration of any permission is one year from the date of Licensor's invoice, and is for English language use in the United States of America only. Licensor, its contractors, and agents, reserve all rights in the Image(s) of every kind and nature, including, without limitation, copyright, electronic publishing and use rights, in any and all media, throughout the world, now existing and or hereafter arising, that are not specifically and expressly granted in the provisions of this agreement. No permission is valid unless signed by Licensor. This Agreement may not be assigned or transferred by Client without the prior written consent of Licensor and provided that the assignee or transferee agrees in writing to be bound by all of the terms, conditions, and obligations of this Agreement. Transfer shall not constitute a novation as to the assignor. Any voluntary assignment or assignments by operation of law of any rights or obligations of Client shall be deemed a default under this Agreement allowing Licensor to exercise all remedies including, without limitation, terminating this Agreement, the right to all net worth or financial information of any assignee, and the fullest extent of adequate assurances of future performance. Upon request by Licensor, Client shall provide Licensor with a full and complete disclosure of any and all uses of each Image by Client and any party acting under client's permission, and provide Licensor with three (3) copies, without charge, of each and every use of each Image. Work provided to Client by Licensor under this agreement is not work made for hire for client.

**5. DELETION OF DIGITAL IMAGE(S):** For all Images supplied in digital format, Client agrees to delete all such Images 90 days after their delivery date unless a longer retention period is agreed to in writing.

**6. PAYMENT AND COLLECTION TERMS:** Invoices from Licensor are payable upon receipt by Client. Client agrees to pay a late payment fee equal to 1.5% per month on any unpaid amount or balance. Such late fees shall commence to run on an invoice ten (10) days after its mailing or email date (whichever is earlier). Such late fee(s) shall in no event exceed the lawful maximum permitted in the State of California (or other applicable maximum, if any) with respect to commercial transactions (or if this is a consumer transaction shall be and shall not exceed the lawful consumer transaction maximum in the State of California, or other state maximum if applicable according to law).

3103 17TH STREET
SANTA MONICA, CA 90405
TEL  310.452.4461
FAX  310.452.4462

MICHAEL@MICHAELGRECCO.COM
**MICHAELGRECCO.COM**



**MICHAELGRECCO**PHOTOGRAPHY

**7. DISPUTE RESOLUTION:** At Licensor's election, any dispute involving Licensor arising out of this agreement may be resolved exclusively by binding arbitration before a single arbitrator, in California, in accordance with the rules of the American Arbitration Association, and the decision of the arbitrator shall be final, binding, and enterable in any court having jurisdiction. Except for matters that are or become the subject of pending arbitration, the parties hereto consent to the personal jurisdiction over them, and to the exclusive venue, of the courts of the State of California, County of Los Angeles, in any matter properly brought before a court. The parties agree that any dispute arising out of this agreement shall be governed by the laws of the State of California without regard to its rules for the resolution of conflicts of law.  In any action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover their actual attorneys' fees, arbitration fees, court costs, and all other non-reimbursable litigation and arbitration expenses including, without limitation, expert witness fees and investigation expenses, and pre-judgment and post-judgment interest on, and until, all amounts are paid. Any remedies available to Licensor under or in connection with this agreement shall be cumulative.

**8. TAX:** Client shall pay and hold Licensor harmless on account of any sales, use, or other taxes or governmental charges of any kind, however denominated, imposed by any government, including any subsequent assessments, in connection with this Agreement, the Image(s), the Service(s) or any income earned or payments received by Licensor hereunder. To the extent that Licensor may be required to withhold or to subsequently pay such taxes Client shall promptly furnish Licensor with funds in the full amount of all the sums withheld or to be paid, plus any assessments, penalties, and interest accruing therewith.

**9. RELEASES:** LICENSOR SHALL NOT PROVIDE CLIENT WITH ANY MODEL, PROPERTY, PUBLICITY, PRIVACY, TRADEMARK, OR OTHER RELEASE, FOR ANY IMAGE(S) UNLESS OTHERWISE AGREED TO BY LICENSOR IN WRITING AND SEPARATELY PAID FOR BY CLIENT. CLIENT GRANTS TO LICENSOR, ITS SUCCESSORS AND ASSIGNS, ANY AND ALL RIGHTS THAT MAY BE REQUIRED FOR ANY AND ALL USE OF THE IMAGE(S) BY LICENSOR OR ITS PERMITEES THAT ARE LAWFUL.

**10. ELECTRONIC RIGHTS:** No electronic usage rights of any kind are licensed or granted hereunder unless specifically set forth on the front of this Agreement. Licensor specifically reserves all rights not specifically conveyed to Client hereunder. Such rights reserved include but are not limited to all rights of publication, distribution, display or Transmission in electronic and digital media of any kind, now existing and hereafter arising. Usage rights for any kind of revision of a collective work including any later collective work in the same series, are expressly reserved by the Licensor.

**11. INTEGRATION, MODIFICATION, GOVERNING LAW AND MISCELLANEOUS:** This Agreement sets forth the entire understanding and agreement between Licensor and Client regarding the Service(s) and / or the Image(s). This Agreement supersedes any and all prior representations and agreements regarding the Service(s) and/or the Image(s), whether written or verbal. Neither Licensor nor Client shall be bound by any purchase order, term, condition, representation, warranty or provision other than as specifically stated in this Agreement. No waiver or modification may be made to any term or condition contained in this Agreement unless in writing and signed by Licensor. Waiver of any one provision of this Agreement or portion thereof shall not be deemed to be a permanent waiver or a waiver of any other provision of this Agreement or portion thereof. The parties agree that this is a negotiated agreement, and that any objections to the terms of this Agreement must be made in writing and delivered to Licensor within ten days of the receipt of this Agreement by Client or Client's representative, or this Agreement shall be binding. Notwithstanding anything to the contrary, no Image(s) may be used in any manner without Licensor's prior written consent, and Client's receipt of and holding of any Image(s) delivered to client pursuant to this agreement, constitutes Client's complete acceptance of this Agreement. The formation, interpretation, and performance of this Agreement shall be governed by the laws of the State of California, without regard California's rules for the resolution of conflicts of law. This Agreement shall be construed in accordance with its terms and shall not be construed more favorably for or more strongly against Licensor or Client by reason of either party's drafting of this agreement. The provisions of this agreement are severable and the invalidity of any provision or portion thereof shall not affect the validity of any remaining provision or portion thereof. Payments made by Client and accepted by Licensor shall be a ratification of and acceptance of the express terms of this Agreement, and not of any modification, addition, contrary, or other terms or orders, not expressly agreed to by Licensor in writing.

**12. COPYRIGHT/ENFORCEMENT OF EXCLUSIVE LICENSE:** The sole right to pursue and/or defend any and all claims sounding in infringement of its copyright(s), trademark and/or intellectual property rights in the Image(s), free from any claims by Client or any other person, whether or not the rights granted to Client are exclusive or non-exclusive, shall be deemed retained by Licensor. If Licensor is determined not to possess any of such rights, or any encumbrance exists, Client agrees to execute and deliver to Licensor such documents as Licensor reasonably requests to carry out the purpose of this clause so as to allow Licensor the right to pursue and/or defend any and all claims sounding in infringement of copyright(s), trademark, and/or intellectual property rights in the Image(s), free from claims, encumbrances, or interests of Client, or any other party.

**13. CLIENT AGREES THAT WHENEVER COMMERCIALLY REASONABLE TO INCLUDE THE PHOTO CREDIT:** © MICHAEL GRECCO or © MICHAEL GRECCO PRODUCTIONS, INC. [year date of publication] in conjunction with all uses of Licensor's Image(s).

CONFIDENTIAL

GRECCO000019



3103 17TH STREET
SANTA MONICA, CA 90405
TEL 310.452.4461
FAX 310.452.4402

MICHAEL**GRECCO**PHOTOGRAPHY

**To Whom It May Concern:**

**The information below is being provided as instructions for ACH/Direct Deposit and wire transfer payments into our account:**

**Recipient:**

**Michael Grecco Productions, Inc.**
**3103 17th Street**
**Santa Monica, CA 90405**
**(310) 452-4461**

**Bank Information:**

City National Bank
1620 26th Street, North Tower
Santa Monica, CA 90404
(310) 264-2902

**Domestic Wire Transfers:**

**Routing Number: 122016066**

**Account Number: 017317776**

**International Wire Transfers:**

**Swift Code: CINAU56L**

**Account Number: 017317776**

**Please contact our office with any additional questions.**

**Sincerely,**

**Michael Grecco**
**President**

MICHAEL**GRECCO**.COM
310.452.4461

MG

CONFIDENTIAL                                                    GRECCO000021

Form **W-9**
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

**Give Form to the requester. Do not send to the IRS.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Michael Grecco Productions, Inc.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC    ☑ C Corporation    ☐ S Corporation    ☐ Partnership    ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

3103 17th Street

**6** City, state, and ZIP code

Santa Monica, CA 90405

Requester's name and address (optional)

**7** List account number(s) here (optional)

---

### Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

[ ] [ ] [ ] – [ ] [ ] – [ ] [ ] [ ] [ ]

**or**

Employer identification number

9 5 – 4 6 6 4 1 4 1

---

### Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**    Signature of U.S. person ▶ _____    Date ▶ 3/16/15

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding?* on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X                Form **W-9** (Rev. 12-2014)

CONFIDENTIAL

3103 17TH STREET
SANTA MONICA, CA 90405
TEL 310.452.4461
FAX 310.452.4462

MICHAEL@MICHAELGRECCO.COM
**MICHAELGRECCO.COM**

# MICHAELGRECCOPHOTOGRAPHY
## STOCK INVOICE

**TO:**  Dr. Susan L. Thomas
President
Truman University
200 Mcclain Hall
100 East Normal Avenue
Kirksville MI 63501

**INVOICE#** 3855
**DATE:** 12/17/18
**P.O.#**
**JOB:** X-Files

*Susan L. Thomas    12/19/18*

**DESCRIPTION:** For the use of one image of the X-Files Cast with the flashlight held high, as part of a story entittled, "Netflix Roulette — 'The X-Files.'"

**USE:**  Web publication rights of one image of the X-Files cast used for a story entitled: 'Netflix Roulette — "The X-Files'" from 9/26/2015 to 12/15/2018, on the Truman Media Networks at http://tmn.truman.edu/blog/lifestyle/netflix-roulette-the-x-files/, only. This license is granted in full to any and all associated with the University and it's websites. No other rights granted. Payment in full is a material condition precedent to photographer's grant of any rights.

**TERMS:** Full payment is due upon receipt of this invoice. Final billing reflects actual, not estimated expenses, plus applicable taxes. All fees and charges in this invoice are for the service(s) and/or licensing described above. Fees for licensing of additional available rights will be quoted upon request. A late payment charge of 1.5% per month applies after 12/27/2018

| | |
|---|---|
| TOTAL | $15,000.00 |
| SALES TAX @ | $0.00 |
| FINAL TOTAL | $15,000.00 |
| ADVANCE | $0.00 |
| **BALANCE U.S.** | **$15,000.00** |

Michael Grecco, President (Licensor)          Date

Please make checks payable to "Michael Grecco Productions Inc.", E.I.N.: 95-4664141.

RIGHTS LICENSED ONLY UPON FULL PAYMENT OF TOTAL BILLING AND SUBJECT TO TERMS AND CONDITIONS ON REVERSE.

CONFIDENTIAL                                        GRECCO000023



MICHAELGRECCOPHOTOGRAPHY

**ALL SERVICES, AND PERMISSIONS TO REPRODUCE OR USE ANY IMAGE, ARE SUBJECT TO ALL OF THE FOLLOWING TERMS AND CONDITIONS**

**1. DEFINITIONS:** This Agreement is by and between MICHAEL GRECCO PRODUCTIONS, INC., ("Licensor"), and the commissioning party (the "Client" named on the front of this Agreement, and any permitted assignees). Licensor's relationship with Client is that of an independent contractor. "Image(s)" mean(s) the visual and / or other forms of film, prints, slides, chromes and any other visual materials in any format including without limitation digital materials supplied by Licensor to Client pursuant to this agreement. Licensor owns, controls, or represents the owner of, copyrights in the Image(s). The Image(s) are Licensor's or its employees', agent's, or contractor's interpretation, rather than a literal copy of any concepts or layouts provided to Licensor by Client. "Service(s)" means the photography and/or related digital or other related services described on the front of this Agreement that Client is specifically commissioning Licensor to perform, through it s agents, employees, and /or contractors, pursuant to this Agreement. "Copyright Management Information" means the name and other identifying information of Licensor, terms and conditions for use(s) of the Images, copyright notice information, and such other information that Licensor may prescribe.

**2. FEES, CHARGES AND ADVANCES:** Client and Client's representatives shall be jointly and severally responsible for full payment of all fees, charges, expenses and advances. The permissions granted, fees, charges, and advances set forth in this Agreement apply to the original specifications for the Services and any applicable permissions. Additional permissions shall be obtained and paid for, and additional fees, charges, and advances shall be paid by Client for, any subsequent changes, additions, or variations requested by Client, for services or permissions, and these shall be as quoted to Client in advance; where any are not quoted in advance they may be assessed, in licensor's discretion, at Licensor's negotiated rates for such permissions, and in accordance with Licensor's usual charges for changes, additions, and variations to the scope of services. However, nothing herein shall impose upon Licensor any obligation to grant additional or modified permissions, or to perform additional or to modify the services, and the same may be denied or withheld. All advance payments are due in full prior to production.

**3. IMPORTANT LIMITATIONS OF LIABILITY, RELEASES, AND INDEMNITY:** Client's sole remedy for a breach of this agreement shall be for, and Licensor's entire liability shall in no event exceed, return of the license fee paid to Licensor, and UNDER NO CIRCUMSTANCES SHALL LICENSOR, ITS CONTRACTORS, EMPLOYEES, OR AGENTS, BE LIABLE TO CLIENT FOR ANY ADDITIONAL OR OTHER REMEDY OR FOR GENERAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE, OR SPECIAL DAMAGES ARISING FROM THIS AGREEMENT, THE IMAGE(S) , OR FROM ANY ACTS OR OMISSIONS OF LICENSOR, OR LICENSOR'S CONTRACTORS, EMPLOYEES, OR AGENTS, except where the same arise against them from their own respective fraud, violation of law, or willful injury. Client shall indemnify, defend, and hold Licensor and Licensor's representatives, contractors, employees, and agents, harmless from and for any and all claims, liabilities, damages, and expenses of any nature whatsoever, including actual attorneys' fees, costs of investigation, and court costs a) arising from Licensor's or Client's direct or indirect distribution, display or other use of any image, b) arising from or relating to any wrongful or negligent acts of the Client, or others, or their representatives, employees, or agents, and / or c) arising from Licensor and Licensor's representatives, contractors, employees, and agents own respective acts and omissions except where such acts or omissions constitute the party's fraud, violation of law, or willful wrongdoing or where they are solely negligent;  such indemnification, defense, and holding harmless, to apply except as otherwise prohibited by law. IMPORTANT: Client acknowledges and agrees that Client's agreement herein to hold harmless the Licensor, its employees, contractors, and agents, applies to all claims for injuries, damages, or losses to the Client's person and property, real or personal (whether those injuries, damages, or losses are known or unknown, foreseen or unforeseen, or patent or latent) which the client may have against the Licensor, its representatives, contractors, employees, and agents, for their own acts or omissions except where the acts or omissions constitute fraud, violation of law, willful wrongdoing, or where the party is solely negligent. Client has read the following provisions of California Civil Code Section 1542: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." Client intentionally and knowingly waives application of the California Civil Code Section 1542. Client understands and acknowledges that the significance and consequence of this waiver of California Civil Code Section 1542 is that even if Client should eventually suffer damages arising out of Licensor's or Licensor's representative's, contractor's, employee's, and agent's own respective acts and omissions, Client will not be able to make any claim for those damages except where the party's acts or omissions constitute fraud, a violation of law, willful wrongdoing, or where the party is solely negligent. Client acknowledges that it intends these consequences even as to claims for damages that may exist as of the date of this agreement but which Client does not know exists, and which, if known, would materially affect Client's decision to execute this agreement, regardless, of whether Client's lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause." Client assumes the risk of injury, damage, and loss, arising from facts and circumstances known to Client prior to the time injury occurs, and except where expressly prohibited by law.

**4. RIGHTS & PERMISSIONS:** Licensor, or its designated contactor(s), solely owns copyright in the Image(s). The permissions granted are granted only, and are materially conditioned, upon: (a) Client's acceptance of all terms contained in this Agreement, (b) Licensor's receipt of full payment when and as the payment shall become due and payable (TIME BEING OF THE ESSENCE), c) the request, grant of, and payment for the permissions occurring prior to the authorized use, and (c) the use of proper copyright notice and other Copyright Management Information requested or used by Licensor in connection with the Image(s). Licensor's permissions are granted for the Image(s) to Client only upon the condition that ~~the~~ *w.u,* Client accepts all of the terms of this Agreement. Unless otherwise specifically stated on the front of this Agreement, all permissions granted by Licensor are non-exclusive, ~~the duration of any permission is one year from the date of Licensor's invoice,~~ and is for English language use in the United States of America only. Licensor, its contractors, and agents, reserve all rights in the Image(s) of every kind and nature, including, without limitation, copyright, electronic publishing and use rights, in any and all media, throughout the world, now existing and or hereafter arising, that are not specifically and expressly granted in the provisions of this agreement. No permission is valid unless signed by Licensor. This Agreement may not be assigned or transferred by Client without the prior written consent of Licensor and provided that the assignee or transferee agrees in writing to be bound by all of the terms, conditions, and obligations of this Agreement. Transfer shall not constitute a novation as to the assignor. Any voluntary assignment or assignments by operation of law of any rights or obligations of Client shall be deemed a default under this Agreement allowing Licensor to exercise all remedies including, without limitation, terminating this Agreement, the right to at net worth or financial information of any assignee, and the fullest extent of adequate assurances of future performance. Upon request by Licensor, Client shall provide Licensor with a full and complete disclosure of any and all uses of each Image by Client and any party acting under client's permission, and provide Licensor with three (3) copies, without charge, of each and every use of each Image. Work provided to Client by Licensor under this agreement is not work made for hire for client.

**5. DELETION OF DIGITAL IMAGE(S):** For all Images supplied in digital format, Client agrees to delete all such Images 90 days after their delivery date unless a longer retention period is agreed to in writing.

**6. PAYMENT AND COLLECTION TERMS:** Invoices from Licensor are payable upon receipt by Client. Client agrees to pay a late payment fee equal to 1.5% per month on any unpaid amount or balance. Such late fees shall commence to run on an invoice ten (10) days after its mailing or email date (whichever is earlier). Such late fee(s) shall in no event exceed the lawful maximum permitted in the State of California (or other applicable maximum, if any) with respect to commercial transactions (or if this is a consumer transaction shall be and shall not exceed the lawful consumer transaction maximum in the State of California, or other state maximum if applicable according to law).

3102 17TH STREET
SANTA MONICA, CA 90405
TEL 310.452.4461
FAX 310.452.4462

MICHAELGRECCO.COM

MICHAELGRECCOPHOTOGRAPHY

**7. DISPUTE RESOLUTION:** At Licensor's election, any dispute involving Licensor arising out of this agreement may be resolved exclusively by binding arbitration before a single arbitrator, in California, in accordance with the rules of the American Arbitration Association, and the decision of the arbitrator shall be final, binding, and enterable in any court having jurisdiction. Except for matters that are or become the subject of pending arbitration, the parties hereto consent to the personal jurisdiction over them, and to the exclusive venue, of the courts of the State of California, County of Los Angeles, in any matter properly brought before a court. The parties agree that any dispute arising out of this agreement shall be governed by the laws of the State of California without regard to its rules for the resolution of conflicts of law. In any action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover their actual attorneys' fees, arbitration fees, court costs, and all other non-reimbursable litigation and arbitration expenses including, without limitation, expert witness fees and investigation expenses, and pre-judgment and post-judgment interest on, and until, all amounts are paid. Any remedies available to Licensor under or in connection with this agreement shall be cumulative.

**8. TAX:** Client shall pay and hold Licensor harmless on account of any sales, use, or other taxes or governmental charges of any kind, however denominated, imposed by any government, including any subsequent assessments, in connection with this Agreement, the Image(s), the Service(s) or any income earned or payments received by Licensor hereunder. To the extent that Licensor may be required to withhold or to subsequently pay such taxes Client shall promptly furnish Licensor with funds in the full amount of all the sums withheld or to be paid, plus any assessments, penalties, and interest accruing therewith.

**9. RELEASES:** LICENSOR SHALL NOT PROVIDE CLIENT WITH ANY MODEL, PROPERTY, PUBLICITY, PRIVACY, TRADEMARK, OR OTHER RELEASE, FOR ANY IMAGE(S) UNLESS OTHERWISE AGREED TO BY LICENSOR IN WRITING AND SEPARATELY PAID FOR BY CLIENT. CLIENT GRANTS TO LICENSOR, ITS SUCCESSORS AND ASSIGNS, ANY AND ALL RIGHTS THAT MAY BE REQUIRED FOR ANY AND ALL USE OF THE IMAGE(S) BY LICENSOR OR ITS PERMITTEES THAT ARE LAWFUL.

**10. ELECTRONIC RIGHTS:** No electronic usage rights of any kind are licensed or granted hereunder unless specifically set forth on the front of this Agreement. Licensor specifically reserves all rights not specifically conveyed to Client hereunder. Such rights reserved include but are not limited to all rights of publication, distribution, display or Transmission in electronic and digital media of any kind, now existing and hereafter arising. Usage rights for any kind of revision of a collective work including any later collective work in the same series, are expressly reserved by the Licensor.

**11. INTEGRATION, MODIFICATION, GOVERNING LAW AND MISCELLANEOUS:** This Agreement sets forth the entire understanding and agreement between Licensor and Client regarding the Service(s) and / or the Image(s). This Agreement supersedes any and all prior representations and agreements regarding the Service(s) and/or the Image(s), whether written or verbal. Neither Licensor nor Client shall be bound by any purchase order, term, condition, representation, warranty or provision other than as specifically stated in this Agreement. No waiver or modification may be made to any term or condition contained in this Agreement unless in writing and signed by Licensor. Waiver of any one provision of this Agreement or portion thereof shall not be deemed to be a permanent waiver or a waiver of any other provision of this Agreement or portion thereof. The parties agree that this is a negotiated agreement, and that any objections to the terms of this Agreement must be made in writing and delivered to Licensor within ten days of the receipt of this Agreement by Client or Client's representative, or this Agreement shall be binding. Notwithstanding anything to the contrary, no Image(s) may be used in any manner without Licensor's prior written consent, and Client's receipt of and holding of any Image(s) delivered to client pursuant to this agreement, constitutes Client's complete acceptance of this Agreement. The formation, interpretation, and performance of this Agreement shall be governed by the laws of the State of California, without regard California's rules for the resolution of conflicts of law. This Agreement shall be construed in accordance with its terms and shall not be construed more favorably for or more strongly against Licensor or Client by reason of either party's drafting of this agreement. The provisions of this agreement are severable and the invalidity of any provision or portion thereof shall not affect the validity of any remaining provision or portion thereof. Payments made by Client and accepted by Licensor shall be a ratification of and acceptance of the express terms of this Agreement, and not of any modification, addition, contrary, or other terms or orders, not expressly agreed to by Licensor in writing.

**12. COPYRIGHT/ENFORCEMENT OF EXCLUSIVE LICENSE:** The sole right to pursue and/or defend any and all claims sounding in infringement of its copyright(s), trademark and/ or intellectual property rights in the Image(s), free from any claims by Client or any other person, whether or not the rights granted to Client are exclusive or non-exclusive, shall be deemed retained by Licensor. If Licensor is determined not to possess any of such rights, or any encumbrance exists, Client agrees to execute and deliver to Licensor such documents as Licensor reasonably requests to carry out the purpose of this clause so as to allow Licensor the right to pursue and/or defend any and all claims sounding in infringement of copyright(s), trademark, and/or intellectual property rights in the Image(s), free from claims, encumbrances, or interests of Client, or any other party.

**13. CLIENT AGREES THAT WHENEVER COMMERCIALLY REASONABLE TO INCLUDE THE PHOTO CREDIT:** © MICHAEL GRECCO or © MICHAEL GRECCO PRODUCTIONS, INC. [year date of publication] in conjunction with all uses of Licensor's Image(s).

CONFIDENTIAL

3103 17TH STREET
SANTA MONICA, CA 90405
TEL 310.452.4461
FAX 310.452.4462

MICHAEL**GRECCO**PHOTOGRAPHY

**To Whom It May Concern:**

**The information below is being provided as instructions for ACH/Direct Deposit and wire transfer payments into our account:**

**Recipient:**

**Michael Grecco Productions, Inc.**
**3103 17th Street**
**Santa Monica, CA 90405**
**(310) 452-4461**

**Bank Information:**

City National Bank
1620 26th Street, North Tower
Santa Monica, CA 90404
(310) 264-2902

**Domestic Wire Transfers:**

Routing Number: 122016066

Account Number: 017317776

**International Wire Transfers:**

Swift Code: CINAU56L

Account Number: 017317776

Please contact our office with any additional questions.

Sincerely,

**Michael Grecco**
**President**

MICHAEL@MICHAELGRECCO.COM
MICHAEL**GRECCO**.COM
310.452.4461

MG

Form **W-9**
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

### Request for Taxpayer
### Identification Number and Certification

Give Form to the requester. Do not send it to the IRS.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Michael Grecco Productions, Inc.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC    ☑ C Corporation    ☐ S Corporation    ☐ Partnership    ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

3103 17th Street

**6** City, state, and ZIP code

Santa Monica, CA 90405

Requester's name and address (optional)

**7** List account number(s) here (optional)

Print or type
See **Specific Instructions** on page 2.

---

**Part I**   **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

| | | | – | | | – | | | | |

**or**

Employer identification number

| 9 | 5 | – | 4 | 6 | 6 | 4 | 1 | 4 | 1 |

---

**Part II**   **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**   Signature of U.S. person ▶   *[signature]*   Date ▶ 3 / 16 / 15

---

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding.* See *What is backup withholding?* on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued), and

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X

Form **W-9** (Rev. 12-2014)

CONFIDENTIAL



CONFIDENTIAL

GRECCO000026

3103 17TH STREET
SANTA MONICA, CA 90405
TEL  310.452.4461
FAX  310.452.4462

MICHAEL@MICHAELGRECCO.COM
**MICHAELGRECCO.COM**

# MICHAEL**GRECCO**PHOTOGRAPHY
## STOCK  INVOICE

**TO:**   Roosh  Valizadeh
Publisher And Editor
Return of Kings
Po Box 6244
Silver Springs  MD  20916

**INVOICE#** 3858
**DATE:** 3/4/19
**P.O.#**
**JOB:** X-Files

**DESCRIPTION:** For the use of one image of the XFiles cast shot in Vancouver, Canada for an article entilted: "4 OF THE BEST EPISODES OF THE X-FILES," on the ReturnofKings.com website.

**USE:**   This invoice serves as a general release for both the use of this image any another image known or unknown from the time of this invoice backwards on the ReturnofKings.com website platform only. Payment in full is a material condition precedent to photographers grant of any rights.

**TERMS:** Full payment is due upon receipt of this invoice. Final billing reflects actual, not estimated expenses, plus applicable taxes. All fees and charges in this invoice are for  the service(s) and/or licensing described above. Fees for licensing of additional available rights will be quoted upon request. A late payment charge of 1.5% per month applies after 3/14/2019

| | |
|---|---|
| TOTAL | $3,500.00 |
| SALES TAX @ | $0.00 |
| FINAL TOTAL | $3,500.00 |
| ADVANCE | $0.00 |
| **BALANCE  U.S.** | **$3,500.00** |

Michael Grecco, President  (Licensor)          Date

Please make checks payable to "Michael Grecco Productions Inc.", E.I.N.: 95-4664141.
RIGHTS LICENSED ONLY UPON FULL PAYMENT OF TOTAL BILLING AND SUBJECT TO TERMS AND CONDITIONS ON REVERSE.

CONFIDENTIAL                                    GRECCO000029

3103 17TH STREET
SANTA MONICA, CA 90405
TEL  310.452.4461
FAX  310.452.4462

MICHAEL@MICHAELGRECCO.COM


MICHAEL**GRECCO**PHOTOGRAPHY

**ALL SERVICES, AND PERMISSIONS TO REPRODUCE OR USE ANY IMAGE, ARE SUBJECT TO ALL OF THE FOLLOWING TERMS AND CONDITIONS**

**1. DEFINITIONS:** This Agreement is by and between MICHAEL GRECCO PRODUCTIONS, INC., ("Licensor"), and the commissioning party (the "Client" named on the front of this Agreement, and any permitted assignees). Licensor's relationship with Client is that of an independent contractor. "Image(s)" mean(s) the visual and / or other forms of film, prints, slides, chromes and any other visual materials in any format including without limitation digital materials supplied by Licensor to Client. Licensor owns, controls, or represents the owner of, copyrights in the Image(s). The Image(s) are Licensor's or its employees,' agent's, or contractor's interpretation, rather than a literal copy of any concepts or layouts provided to Licensor by Client pursuant to this agreement. "Service(s)" means the photography and/or related digital or other related services described on the front of this Agreement that Client is specifically commissioning Licensor to perform, through it s agents, employees, and /or contractors, pursuant to this Agreement. "Copyright Management Information" means the name and other identifying information of Licensor, terms and conditions for use(s) of the Images, copyright notice information, and such other information that Licensor may prescribe.

**2. POSTPONEMENTS AND CANCELLATIONS:** It is acknowledged that the Client's cancellation or postponement of the "shoot date" or other services will cause Licensor to incur substantial economic damages and losses of types, and in amounts, that are impossible to compute and ascertain with certainty as a basis for recovery of actual damages by Licensor, and that liquidated damages represent a fair, reasonable, and appropriate estimate thereof. Accordingly, in lieu of actual damages for postponement or cancellation, the Client agrees that liquidated damages shall be assessed in the event of postponement or cancellation and without the Licensor being required to present any evidence of the amount or character of actual damages sustained by reason thereof, as follows a) if Client postpones or cancels any photography "shoot date," or other Service, in whole or in part, without first obtaining Licensor's written consent, Client shall pay as liquidated damages to Licensor 50% of Licensor's quoted fees, provided that b) if Client postpones or cancels with less than two business days' prior written notice to Licensor, Client shall pay 100% of Licensor's quoted fees. Client shall additionally pay, and also as liquidated damages, all expenses and charges incurred and not cancellable in connection with any postponed or canceled shoot date or service. Such liquidated damages are intended to represent estimated actual damages, are in the mutual interests of the parties, are not intended as a penalty, and Client shall pay them to Licensor without Licensor being obligated to further mitigate damages.

**3. FORCE MAJEURE:** Licensor shall not be in default of this Agreement by reason of its, or its employee's, contractor's, or agent's, delay in the performance of or failure to perform, in whole or in part, any of the obligations hereunder, if such delay or failure results from occurrences beyond their reasonable control and without their fault or negligence. Client will pay 100% of Licensor's daily weather delay fee (as set forth on the front of this Agreement) for any delays due to weather conditions or any acts or occurrences beyond Licensor's reasonable control, plus all charges incurred.

**4. CLIENT APPROVAL:** Client is responsible for having its authorized representative present during all "shooting" and other appropriate phases of the Service(s) to approve Licensor's, its employee's, contractor's, and or agent's interpretation of the Service(s). If no representative is present, the interpretation by Licensor, its employees, contractors, or agents, shall conclusively be deemed to be accepted. Client shall be bound by all approvals and job changes made by Client's representatives.

**5. OVERTIME:** For and in the event of any Services that extend beyond eight consecutive hours in one day, Client agrees to and shall timely pay overtime for crew members and assistants at the rate of 1-1/2 times their hourly rates or fees, and for and in the event of any Services that extend beyond 12 hours in one day, Client agrees to and shall pay overtime for crew members and assistants at the rate of double their regularly hourly rates or fees.

**6. RESHOOTS:** Client shall pay 100% of Licensor's fees and charges for any reshooting or redoing of Services requested by Client. If the Image(s) become lost or unusable by reason of defects, damage, equipment malfunction, processing, or any other technical error, prior to delivery of the Image(s) to Client, Licensor will perform reasonable and appropriate Service(s) again without additional fees, provided Client advances and pays all fees and charges in connection with the initial Services.

**7. FEES, CHARGES AND ADVANCES:** Client and Client's representatives shall be jointly and severally responsible for full payment of all fees, charges, expenses and advances. The permissions granted, fees, charges, and advances set forth in this Agreement apply to the original specifications for the Services and any applicable permissions. Additional permissions shall be obtained and paid for, and additional fees, charges, and advances shall be paid by Client for, any subsequent changes, additions, or variations requested by Client, for services or permissions, and these shall be as quoted to Client in advance; where any are not quoted in advance they may be assessed, in licensor's discretion, at Licensor's negotiated rates for such permissions, and in accordance with Licensor's usual charges for changes, additions, and variations to the scope of services. However, nothing herein shall impose upon Licensor any obligation to grant additional or modified permissions, or to perform additional or to modify the services, and the same may be denied or withheld.  All advance payments are due in full prior to production.

**8. IMPORTANT LIMITATIONS OF LIABILITY, RELEASES, AND INDEMNITY:** Client's sole remedy for a breach of this agreement shall be for, and Licensor's entire liability shall in no event exceed, return of the license fee paid to Licensor, and UNDER NO CIRCUMSTANCES SHALL LICENSOR, ITS  CONTRACTORS, EMPLOYEES, OR AGENTS,  BE LIABLE TO CLIENT FOR ANY ADDITIONAL OR OTHER REMEDY OR FOR GENERAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE,  OR SPECIAL DAMAGES ARISING FROM THIS AGREEMENT, THE IMAGE(S) , OR  FROM  ANY ACTS OR OMISSIONS OF LICENSOR, OR LICENSOR'S CONTRACTORS, EMPLOYEES, OR AGENTS, except where the same arise against them from their own respective fraud, violation of law, or willful injury. Client shall indemnify, defend, and hold Licensor and Licensor's representatives, contractors, employees, and agents, harmless from and for  any and all claims, liabilities, damages, and expenses of any nature whatsoever, including actual attorneys' fees, costs of investigation, and court costs a) arising from or relating to Client's direct or indirect distribution, display or other use of any Image, b) arising from or relating to any wrongful or negligent acts of the Client, or others, or their representatives, employees, or agents, and / or c) arising from Licensor and Licensor's representatives, contractors, employees, and agents own respective acts and omissions except where such acts or omissions constitute the party's fraud, violation of law, or willful wrongdoing or where they are solely negligent;  such indemnification, defense, and holding harmless, to apply except as otherwise prohibited by law. IMPORTANT: Client acknowledges and agrees that Client's agreement herein to hold harmless the Licensor, its employees, contractors, and agents, applies to all claims for injuries, damages, or losses to the Client's person and property, real or personal (whether those injuries, damages, or losses are known or unknown, foreseen or unforeseen, or patent or latent) which the client may have against the Licensor, its representatives, contractors, employees, and agents, for their own acts or omissions except where the acts or omissions constitute fraud, violation of law, willful wrongdoing, or where the party is solely negligent. Client certifies that Client has read the following provisions of California Civil Code Section 1542: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." Client intentionally and knowingly waives application of the California Civil Code Section 1542. Client understands and acknowledges that the significance and consequence of this waiver of California Civil Code Section 1542 is that even if Client should eventually suffer damages arising out of Licensor's or Licensor's representative's, contractor's, employee's, and agent's own respective acts and omissions, Client will not be able to make any claim for those damages except where the party's acts or omissions constitute fraud, a violation of law, willful wrongdoing, or where the party is solely negligent. Client acknowledges that it intends these consequences even as to claims for damages that may exist as of the date of this agreement but which Client does not know exists, and which, if known, would materially affect Client's decision to execute this agreement, regardless, of whether Client's lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause." Client assumes the risk of injury, damage, and loss, arising from facts and circumstances known to Client prior to the time injury occurs, and except where expressly prohibited by law.

3103 17TH STREET
SANTA MONICA, CA 90405
TEL  310.452.4461
FAX  310.452.4462

MICHAEL@MICHAELGRECCO.COM
**MICHAELGRECCO**.COM

**MICHAELGRECCO**PHOTOGRAPHY

**9. RIGHTS & PERMISSIONS:** Licensor, or its designated contactor(s), solely owns copyright in the Image(s). The permissions granted are granted only, and are materially conditioned, upon: (a) Client's acceptance of all terms contained in this Agreement, (b) Licensor's receipt of full payment when and as the payment shall become due and payable (TIME BEING OF THE ESSENCE), and (c) the use of proper copyright notice and other Copyright Management Information requested or used by Licensor in connection with the Image(s). Licensor's permissions are granted for the Image(s) to Client only upon the condition that Client accepts all of the terms of this Agreement. Unless otherwise specifically stated on the front of this Agreement, all permissions granted by Licensor are non-exclusive, the duration of any permission is one year from the date of Licensor's invoice, and is for English language use in the United States of America only. Licensor, its contractors, and agents, reserve all rights in the Image(s) of every kind and nature, including, without limitation, copyright, electronic publishing and use rights, in any and all media, throughout the world, now existing and or hereafter arising, that are not specifically and expressly granted in the provisions of this agreement. No permission is valid unless signed by Licensor. This Agreement may not be assigned or transferred by Client without the prior written consent of Licensor and provided that the assignee or transferee agrees in writing to be bound by all of the terms, conditions, and obligations of this Agreement. Transfer shall not constitute a novation as to the assignor. Any voluntary assignment or assignments by operation of law of any rights or obligations of Client shall be deemed a default under this Agreement allowing Licensor to exercise all remedies including, without limitation, terminating this Agreement, the right to all net worth or financial information of any assignee, and the fullest extent of adequate assurances of future performance. Upon request by Licensor, Client shall provide Licensor with a full and complete disclosure of any and all uses of each Image by Client and any party acting under client's permission, and provide Licensor with three (3) copies, without charge, of each and every use of each Image. Work provided to Client by Licensor under this agreement is not work made for hire for client.

**10. DELETION OF DIGITAL IMAGE(S):** For all Images supplied in digital format, Client agrees to delete all such Images 90 days after their delivery date unless a longer retention period is agreed to in writing.

**11. PAYMENT AND COLLECTION TERMS:** Invoices from Licensor are payable upon receipt by Client. Client agrees to pay a late payment fee equal to 1.5% per month on any unpaid amount or balance. Such late fees shall commence to run on an invoice ten (10) days after its mailing or email date (whichever is earlier). Such late fee(s) shall in no event exceed the lawful maximum permitted in the State of California (or other applicable maximum, if any) with respect to commercial transactions (or if this is a consumer transaction shall be and shall not exceed the lawful consumer transaction maximum in the State of California, or other state maximum if applicable according to law).

**12. DISPUTE RESOLUTION:** At Licensor's election, any dispute involving Licensor arising out of this agreement may be resolved exclusively by binding arbitration before a single arbitrator, in California, in accordance with the rules of the American Arbitration Association, and the decision of the arbitrator shall be final, binding, and enterable in any court having jurisdiction. Except for matters that are or become the subject of pending arbitration, the parties hereto consent to the personal jurisdiction over them, and to the exclusive venue, of the courts of the State of California, County of Los Angeles, in any matter properly brought before a court. The parties agree that any dispute arising out of this agreement shall be governed by the laws of the State of California without regard to its rules for the resolution of conflicts of law. In any action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover their actual attorneys' fees, arbitration fees, court costs, and all other non-reimbursable litigation and arbitration expenses including, without limitation, expert witness fees and investigation expenses, and pre-judgment and post-judgment interest on, and until, all amounts are paid. Any remedies available to Licensor under or in connection with this agreement shall be cumulative.

**13. TAX:** Client shall pay and hold Licensor harmless on account of any sales, use, or other taxes or governmental charges of any kind, however denominated, imposed by any government, including any subsequent assessments, in connection with this Agreement, the Image(s), the Service(s) or any income earned or payments received by Licensor hereunder. To the extent that Licensor may be required to withhold or to subsequently pay such taxes Client shall promptly furnish Licensor with funds in the full amount of all the sums withheld or to be paid, plus any assessments, penalties, and interest accruing therewith.

**14. RELEASES:** LICENSOR SHALL NOT PROVIDE CLIENT WITH ANY MODEL, PROPERTY, PUBLICITY, PRIVACY, TRADEMARK, OR OTHER RELEASE, FOR ANY IMAGE(S) UNLESS OTHERWISE AGREED TO BY LICENSOR IN WRITING AND SEPARATELY PAID FOR BY CLIENT. CLIENT GRANTS TO LICENSOR, ITS SUCCESSORS AND ASSIGNS, ANY AND ALL RIGHTS THAT MAY BE REQUIRED FOR ANY AND ALL USE OF THE IMAGE(S) BY LICENSOR OR ITS PERMITEES THAT ARE LAWFUL.

**15. ELECTRONIC RIGHTS:** No electronic usage rights of any kind are licensed or granted hereunder unless specifically set forth on the front of this Agreement. Licensor specifically reserves all rights not specifically conveyed to Client hereunder. Such rights reserved include but are not limited to all rights of publication, distribution, display or Transmission in electronic and digital media of any kind, now existing and hereafter arising. Usage rights for any kind of revision of a collective work including any later collective work in the same series, are expressly reserved by the Licensor.

**16. INTEGRATION, MODIFICATION, GOVERNING LAW AND MISCELLANEOUS:** This Agreement sets forth the entire understanding and agreement between Licensor and Client regarding the Service(s) and / or the Image(s). This Agreement supersedes any and all prior representations and agreements regarding the Service(s) and/or the Image(s), whether written or verbal. Neither Licensor nor Client shall be bound by any purchase order, term, condition, representation, warranty or provision other than as specifically stated in this Agreement. No waiver or modification may be made to any term or condition contained in this Agreement unless in writing and signed by Licensor. Waiver of any one provision of this Agreement or portion thereof shall not be deemed to be a permanent waiver or a waiver of any other provision of this Agreement or portion thereof. The parties agree that this is a negotiated agreement, and that any objections to the terms of this Agreement must be made in writing and delivered to Licensor within ten days of the receipt of this Agreement by Client or Client's representative, or this Agreement shall be binding. Notwithstanding anything to the contrary, no Image(s) may be used in any manner without Licensor's prior written consent, and Client's receipt of and holding of any Image(s) delivered to client pursuant to this agreement, constitutes Client's complete acceptance of this Agreement. The formation, interpretation, and performance of this Agreement shall be governed by the laws of the State of California, without regard California's rules for the resolution of conflicts of law. This Agreement shall be construed in accordance with its terms and shall not be construed more favorably for or more strongly against Licensor or Client by reason of either party's drafting of this agreement. The provisions of this agreement are severable and the invalidity of any provision or portion thereof shall not affect the validity of any remaining provision or portion thereof. Payments made by Client and accepted by Licensor shall be a ratification and acceptance of the express terms of this Agreement, and not of any modification, addition, contrary, or other terms or orders, not expressly agreed to by Licensor in writing.

**17. COPYRIGHT/ENFORCEMENT OF EXCLUSIVE LICENSE:** The sole right to pursue and/or defend any and all claims sounding in infringement of its copyright(s), trademark and/or intellectual property rights in the Image(s), free from any claims by Client or any other person, whether or not the rights granted to Client are exclusive or non-exclusive, shall be deemed retained by Licensor. If Licensor is determined not to possess any of such rights, or any encumbrance exists, Client agrees to execute and deliver to Licensor such documents as Licensor reasonably requests to carry out the purpose of this clause so as to allow Licensor the right to pursue and/or defend any and all claims sounding in infringement of copyright(s), trademark, and/or intellectual property rights in the Image(s), free from claims, encumbrances, or interests of Client, or any other party.

**18. CLIENT AGREES THAT WHENEVER COMMERCIALLY REASONABLE TO INCLUDE THE PHOTO CREDIT:** © MICHAEL GRECCO or © MICHAEL GRECCO PRODUCTIONS, INC. [year date of publication] in conjunction with all uses of Licensor's Image(s).

3103 17TH STREET
SANTA MONICA, CA 90405
TEL 310.452.4461
FAX 310.452.4462

MICHAEL@MICHAELGRECCO.COM

**MICHAELGRECCO**.COM

# MICHAEL**GRECCO**PHOTOGRAPHY
## STOCK  INVOICE

TO:     Kriss Trav
        Editor-In-Chief
        MTRNetwork.net

INVOICE# **3867**
DATE: **5/15/19**
P.O.#
JOB: X-Files

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

DESCRIPTION: For the use of one image of David Duchovny (holding a flashlight up) and Gillian Anderson shot on the set of the X-Files in Vancouver, Canada. $10,000 rate agreed to with an initial payment of $1,500 due upon receipt and the balance to be paid in $500 increments on the 15th of every month. Licensee has a 15 day cure period if any payment is not received by the 15th of the month, otherwise they are in default.

USE:     One time publication rights on the MTRNetwork.net web site for a story entitled: *FOX BRINGS BACK THE X-FILES,* from March 15, 2015 to May 15, 2019 only. No other rights granted. These rights may not be transferred by the client to a third party.

**Payment in full is a material condition precedent to photographers grant of any rights.**

TERMS: Full payment is due upon receipt of this invoice. Final billing reflects actual, not estimated expenses, plus applicable taxes. All fees and charges in this invoice are for the service(s) and/or licensing described above. Fees for licensing of additional available rights will be quoted upon request. A late payment charge of 1.5% per month applies after 5/25/2019

|  |  |
|---|---|
| TOTAL | $10,000.00 |
| SALES TAX | $0.00 |
| FINAL TOTA | $10,000.00 |
| ADVANCE | $0.00 |
| **BALANCE  U.S.** | **$10,000.00** |

Michael Grecco, President  (Licensor)              D:

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

Please make checks payable to "Michael Grecco Productions Inc.", E.I.N.: 95-4664141.

RIGHTS LICENSED ONLY UPON FULL PAYMENT OF TOTAL BILLING AND SUBJECT TO TERMS AND CONDITIONS ON REVERSE.

CONFIDENTIAL                                      GRECCO000032

3103 17TH STREET
SANTA MONICA, CA 90405
TEL 310.452.4461
FAX 310.452.4462

MICHAEL@MICHAELGRECCO.COM



MICHAEL**GRECCO**PHOTOGRAPHY

**ALL SERVICES, AND PERMISSIONS TO REPRODUCE OR USE ANY IMAGE, ARE SUBJECT TO ALL OF THE FOLLOWING TERMS AND CONDITIONS**

**1. DEFINITIONS:** This Agreement is by and between MICHAEL GRECCO PRODUCTIONS, INC., ("Licensor"), and the commissioning party (the "Client" named on the front of this Agreement, and any permitted assignees). Licensor's relationship with Client is that of an independent contractor. "Image(s)" mean(s) the visual and / or other forms of film, prints, slides, chromes and any other visual materials in any format including without limitation digital materials supplied by Licensor to Client pursuant to this agreement. Licensor owns, controls, or represents the owner of, copyrights in the Image(s). The Image(s) are Licensor's or its employees', agent's, or contractor's interpretation, rather than a literal copy of any concepts or layouts provided to Licensor by Client. "Service(s)" means the photography and/or related digital or other related services described on the front of this Agreement that Client is specifically commissioning Licensor to perform, through it s agents, employees, and /or contractors, pursuant to this Agreement. "Copyright Management Information" means the name and other identifying information of Licensor, terms and conditions for use(s) of the Images, copyright notice information, and such other information that Licensor may prescribe.

**2. FEES, CHARGES AND ADVANCES:** Client and Client's representatives shall be jointly and severally responsible for full payment of all fees, charges, expenses and advances. The permissions granted, fees, charges, and advances set forth in this Agreement apply to the original specifications for the Services and any applicable permissions. Additional permissions shall be obtained and paid for, and additional fees, charges, and advances shall be paid by Client for, any subsequent changes, additions, or variations requested by Client, for services or permissions, and these shall be as quoted to Client in advance; where any are not quoted in advance they may be assessed, in licensor's discretion, at Licensor's negotiated rates for such permissions, and in accordance with Licensor's usual charges for changes, additions, and variations to the scope of services. However, nothing herein shall impose upon Licensor any obligation to grant additional or modified permissions, or to perform additional or to modify the services, and the same may be denied or withheld. All advance payments are due in full prior to production.

**3. IMPORTANT LIMITATIONS OF LIABILITY, RELEASES, AND INDEMNITY:** Client's sole remedy for a breach of this agreement shall be for, and Licensor's entire liability shall in no event exceed, return of the license fee paid to Licensor, and UNDER NO CIRCUMSTANCES SHALL LICENSOR, ITS CONTRACTORS, EMPLOYEES, OR AGENTS, BE LIABLE TO CLIENT FOR ANY ADDITIONAL OR OTHER REMEDY OR FOR GENERAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE, OR SPECIAL DAMAGES ARISING FROM THIS AGREEMENT, THE IMAGE(S) , OR FROM ANY ACTS OR OMISSIONS OF LICENSOR, OR LICENSOR'S CONTRACTORS, EMPLOYEES, OR AGENTS, except where the same arise against them from their own respective fraud, violation of law, or willful injury. Client shall indemnify, defend, and hold Licensor and Licensor's representatives, contractors, employees, and agents, harmless from and for any and all claims, liabilities, damages, and expenses of any nature whatsoever, including actual attorneys' fees, costs of investigation, and court costs a) arising from or relating to Client's direct or indirect distribution, display or other use of any Image, b) arising from or relating to any wrongful or negligent acts of the Client, or others, or their representatives, employees, or agents, and / or c) arising from Licensor and Licensor's representatives, contractors, employees, and agents own respective acts and omissions except where such acts or omissions constitute the party's fraud, violation of law, or willful wrongdoing or where they are solely negligent; such indemnification, defense, and holding harmless, to apply except as otherwise prohibited by law. IMPORTANT: Client acknowledges and agrees that Client's agreement herein to hold harmless the Licensor, its employees, contractors, and agents, applies to all claims for injuries, damages, or losses to the Client's person and property, real or personal (whether those injuries, damages, or losses are known or unknown, foreseen or unforeseen, or patent or latent) which the client may have against the Licensor, its representatives, contractors, employees, and agents, for their own acts or omissions except where the acts or omissions constitute fraud, violation of law, willful wrongdoing, or where the party is solely negligent. Client certifies that Client has read the following provisions of California Civil Code Section 1542: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." Client intentionally and knowingly waives application of the California Civil Code Section 1542. Client understands and acknowledges that the significance and consequence of this waiver of California Civil Code Section 1542 is that even if Client should eventually suffer damages arising out of Licensor's or Licensor's representative's, contractor's, employee's, and agent's own respective acts and omissions, Client will not be able to make any claim for those damages except where the party's acts or omissions constitute fraud, a violation of law, willful wrongdoing, or where the party is solely negligent. Client acknowledges that it intends these consequences even as to claims for damages that may exist as of the date of this agreement but which Client does not know exists, and which, if known, would materially affect Client's decision to execute this agreement, regardless, of whether Client's lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause." Client assumes the risk of injury, damage, and loss, arising from facts and circumstances known to Client prior to the time injury occurs, and except where expressly prohibited by law.

**4. RIGHTS & PERMISSIONS:** Licensor, or its designated contactor(s), solely owns copyright in the Image(s). The permissions granted are granted only, and are materially conditioned, upon: (a) Client's acceptance of all terms contained in this Agreement, (b) Licensor's receipt of full payment when and as the payment shall become due and payable (TIME BEING OF THE ESSENCE), c) the request, grant of, and payment for the permissions occurring prior to the authorized use, and (c) the use of proper copyright notice and other Copyright Management Information requested or used by Licensor in connection with the Image(s). Licensor's permissions are granted for the Image(s) to Client only upon the condition that Client accepts all of the terms of this Agreement. Unless otherwise specifically stated on the front of this Agreement, all permissions granted by Licensor are non-exclusive, the duration of any permission is one year from the date of Licensor's invoice, and is for English language use in the United States of America only. Licensor, its contractors, and agents, reserve all rights in the Image(s) of every kind and nature, including, without limitation, copyright, electronic publishing and use rights, in any and all media, throughout the world, now existing and or hereafter arising, that are not specifically and expressly granted in the provisions of this agreement. No permission is valid unless signed by Licensor. This Agreement may not be assigned or transferred by Client without the prior written consent of Licensor and provided that the assignee or transferee agrees in writing to be bound by all of the terms, conditions, and obligations of this Agreement. Transfer shall not constitute a novation as to the assignor. Any voluntary assignment or assignments by operation of law of any rights or obligations of Client shall be deemed a default under this Agreement allowing Licensor to exercise all remedies including, without limitation, terminating this Agreement, the right to all net worth or financial information of any assignee, and the fullest extent of adequate assurances of future performance. Upon request by Licensor, Client shall provide Licensor with a full and complete disclosure of any and all uses of each Image by Client and any party acting under client's permission, and provide Licensor with three (3) copies, without charge, of each and every use of each Image. Work provided to Client by Licensor under this agreement is not work made for hire for client.

**5. DELETION OF DIGITAL IMAGE(S):** For all Images supplied in digital format, Client agrees to delete all such Images 90 days after their delivery date unless a longer retention period is agreed to in writing.

**6. PAYMENT AND COLLECTION TERMS:** Invoices from Licensor are payable upon receipt by Client. Client agrees to pay a late payment fee equal to 1.5% per month on any unpaid amount or balance. Such late fees shall commence to run on an invoice ten (10) days after its mailing or email date (whichever is earlier). Such late fee(s) shall in no event exceed the lawful maximum permitted in the State of California (or other applicable maximum, if any) with respect to commercial transactions (or if this is a consumer transaction shall be and shall not exceed the lawful consumer transaction maximum in the State of California, or other state maximum if applicable according to law).

3103 17TH STREET
SANTA MONICA, CA 90405
TEL 310.452.4461
FAX 310.452.4462

MICHAEL@MICHAELGRECCO.COM
MICHAELGRECCO.COM

MICHAELGRECCOPHOTOGRAPHY

**7. DISPUTE RESOLUTION:** At Licensor's election, any dispute involving Licensor arising out of this agreement may be resolved exclusively by binding arbitration before a single arbitrator, in California, in accordance with the rules of the American Arbitration Association, and the decision of the arbitrator shall be final, binding, and enterable in any court having jurisdiction. Except for matters that are or become the subject of pending arbitration, the parties hereto consent to the personal jurisdiction over them, and to the exclusive venue, of the courts of the State of California, County of Los Angeles, in any matter properly brought before a court. The parties agree that any dispute arising out of this agreement shall be governed by the laws of the State of California without regard to its rules for the resolution of conflicts of law.  In any action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover their actual attorneys' fees, arbitration fees, court costs, and all other non-reimbursable litigation and arbitration expenses including, without limitation, expert witness fees and investigation expenses, and pre-judgment and post-judgment interest on, and until, all amounts are paid. Any remedies available to Licensor under or in connection with this agreement shall be cumulative.

**8. TAX:** Client shall pay and hold Licensor harmless on account of any sales, use, or other taxes or governmental charges of any kind, however denominated, imposed by any government, including any subsequent assessments, in connection with this Agreement, the Image(s), the Service(s) or any income earned or payments received by Licensor hereunder. To the extent that Licensor may be required to withhold or to subsequently pay such taxes Client shall promptly furnish Licensor with funds in the full amount of all the sums withheld or to be paid, plus any assessments, penalties, and interest accruing therewith.

**9. RELEASES:** LICENSOR SHALL NOT PROVIDE CLIENT WITH ANY MODEL, PROPERTY, PUBLICITY, PRIVACY, TRADEMARK, OR OTHER RELEASE, FOR ANY IMAGE(S) UNLESS OTHERWISE AGREED TO BY LICENSOR IN WRITING AND SEPARATELY PAID FOR BY CLIENT. CLIENT GRANTS TO LICENSOR, ITS SUCCESSORS AND ASSIGNS, ANY AND ALL RIGHTS THAT MAY BE REQUIRED FOR ANY AND ALL USE OF THE IMAGE(S) BY LICENSOR OR ITS PERMITEES THAT ARE LAWFUL.

**10. ELECTRONIC RIGHTS:** No electronic usage rights of any kind are licensed or granted hereunder unless specifically set forth on the front of this Agreement. Licensor specifically reserves all rights not specifically conveyed to Client hereunder. Such rights reserved include but are not limited to all rights of publication, distribution, display or Transmission in electronic and digital media of any kind, now existing and hereafter arising. Usage rights for any kind of revision of a collective work including any later collective work in the same series, are expressly reserved by the Licensor.

**11. INTEGRATION, MODIFICATION, GOVERNING LAW AND MISCELLANEOUS:** This Agreement sets forth the entire understanding and agreement between Licensor and Client regarding the Service(s) and / or the Image(s). This Agreement supersedes any and all prior representations and agreements regarding the Service(s) and/or the Image(s), whether written or verbal. Neither Licensor nor Client shall be bound by any purchase order, term, condition, representation, warranty or provision other than as specifically stated in this Agreement. No waiver or modification may be made to any term or condition contained in this Agreement unless in writing and signed by Licensor. Waiver of any one provision of this Agreement or portion thereof shall not be deemed to be a permanent waiver or a waiver of any other provision of this Agreement or portion thereof. The parties agree that this is a negotiated agreement, and that any objections to the terms of this Agreement must be made in writing and delivered to Licensor within ten days of the receipt of this Agreement by Client or Client's representative, or this Agreement shall be binding. Notwithstanding anything to the contrary, no Image(s) may be used in any manner without Licensor's prior written consent, and Client's receipt of and holding of any Image(s) delivered to client pursuant to this agreement, constitutes Client's complete acceptance of this Agreement. The formation, interpretation, and performance of this Agreement shall be governed by the laws of the State of California, without regard California's rules for the resolution of conflicts of law. This Agreement shall be construed in accordance with its terms and shall not be construed more favorably for or more strongly against Licensor or Client by reason of either party's drafting of this agreement. The provisions of this agreement are severable and the invalidity of any provision or portion thereof shall not affect the validity of any remaining provision or portion thereof. Payments made by Client and accepted by Licensor shall be a ratification of and acceptance of the express terms of this Agreement, and not of any modification, addition, contrary, or other terms or orders, not expressly agreed to by Licensor in writing.

**12. COPYRIGHT/ENFORCEMENT OF EXCLUSIVE LICENSE:** The sole right to pursue and/or defend any and all claims sounding in infringement of its copyright(s), trademark and/ or intellectual property rights in the Image(s), free from any claims by Client or any other person, whether or not the rights granted to Client are exclusive or non-exclusive, shall be deemed retained by Licensor. If Licensor is determined not to possess any of such rights, or any encumbrance exists, Client agrees to execute and deliver to Licensor such documents as Licensor reasonably requests to carry out the purpose of this clause so as to allow Licensor the right to pursue and/or defend any and all claims sounding in infringement of copyright(s), trademark, and/or intellectual property rights in the Image(s), free from claims, encumbrances, or interests of Client, or any other party.

**13. CLIENT AGREES THAT WHENEVER COMMERCIALLY REASONABLE TO INCLUDE THE PHOTO CREDIT:** © MICHAEL GRECCO or © MICHAEL GRECCO PRODUCTIONS, INC. [year date of publication] in conjunction with all uses of Licensor's Image(s).

3103 17TH STREET
SANTA MONICA, CA 90405
TEL  310.452.4461
FAX  310.452.4402

MICHAEL**GRECCO**PHOTOGRAPHY

**To Whom It May Concern:**

**The information below is being provided as instructions for ACH/Direct Deposit and wire transfer payments into our account:**

**Recipient:**

**Michael Grecco Productions, Inc.**
**3103 17th Street**
**Santa Monica, CA 90405**
**(310) 452-4461**

**Bank Information:**

City National Bank
1620 26th Street, North Tower
Santa Monica, CA 90404
(310) 264-2902

**Domestic Wire Transfers:**

**Routing Number: 122016066**

**Account Number: 017317776**

**International Wire Transfers:**

**Swift Code: CINAUS6L**

**Account Number: 017317776**

**Please contact our office with any additional questions.**

**Sincerely,**

**Michael Grecco**
**President**

MICHAEL@MICHAELGRECCO.COM
MICHAEL**GRECCO.COM**
310.452.4461

MG

CONFIDENTIAL

GRECCO000035

Form **W-9**
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

**Give Form to the requester. Do not send to the IRS.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Michael Grecco Productions, Inc.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC    ☑ C Corporation    ☐ S Corporation    ☐ Partnership    ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

3103 17th Street

**6** City, state, and ZIP code

Santa Monica, CA 90405

Requester's name and address (optional)

**7** List account number(s) here (optional)

*Print or type*
*See Specific Instructions on page 2.*

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

**Social security number**

| | | | – | | | – | | | | |

**or**

**Employer identification number**

| 9 | 5 | – | 4 | 6 | 6 | 4 | 1 | 4 | 1 |

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**   Signature of U.S. person ▶   Date ▶ 9/15/16

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

**Purpose of Form**

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X

Form **W-9** (Rev. 12-2014)

CONFIDENTIAL

GRECCO000036

3103 17TH STREET
SANTA MONICA, CA 90405
TEL 310.452.4461
FAX 310.452.4462

MICHAEL@MICHAELGRECCO.COM
**MICHAELGRECCO**.COM



# MICHAEL**GRECCO**PHOTOGRAPHY
## STOCK  INVOICE

TO:

Penelope  Linge
Owner
Hellogiggles Inc.
626 Wilshire Blvd , Suite 850
Los Angeles  CA  90017
Penelope@hellogiggles.com

INVOICE# **3877**
DATE: **11/19/19**
P.O.#
JOB: **X-Files**

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

DESCRIPTION: For the use of one image of the X-Files cast members, on the HelloGiggles.com website.

USE: Limited publication rights of one image of X-Files on the HelloGiggles.com website. Image use from January 1,2019 to present. Image may remain up on the site in it's original context only. No other rights granted. Payment in full is a material condition precedent to photographer's grant of any rights.

TERMS: Full payment is due upon receipt of this invoice. Final billing reflects actual, not estimated expenses, plus applicable taxes. All fees and charges in this invoice are for the service(s) and/or licensing described above. Fees for licensing of additional available rights will be quoted upon request. A late payment charge of 1.5% per month applies after 11/29/2019

| | |
|---|---|
| TOTAL | $10,000.00 |
| SALES TAX | $0.00 |
| FINAL TOTA | $10,000.00 |
| ADVANCE | $0.00 |
| BALANCE  U.S. | $10,000.00 |

Michael Grecco, President  (Licensor)                    D

Please make checks payable to "Michael Grecco Productions Inc.", E.I.N.: 95-4664141.

RIGHTS LICENSED ONLY UPON FULL PAYMENT OF TOTAL BILLING AND SUBJECT TO TERMS AND CONDITIONS ON REVERSE.

CONFIDENTIAL                                                          GRECCO000037

3103 17TH STREET
SANTA MONICA, CA 90405
TEL  310.452.4461
FAX  310.452.4462

MICHAEL@MICHAELGRECCO.COM



**MICHAELGRECCO**PHOTOGRAPHY

**ALL SERVICES, AND PERMISSIONS TO REPRODUCE OR USE ANY IMAGE, ARE SUBJECT TO ALL OF THE FOLLOWING TERMS AND CONDITIONS**

**1. DEFINITIONS:** This Agreement is by and between MICHAEL GRECCO PRODUCTIONS, INC., ("Licensor"), and the commissioning party (the "Client" named on the front of this Agreement, and any permitted assignees). Licensor's relationship with Client is that of an independent contractor. "Image(s)" mean(s) the visual and / or other forms of film, prints, slides, chromes and any other visual materials in any format including without limitation digital materials supplied by Licensor to Client pursuant to this agreement. Licensor owns, controls, or represents the owner of, copyrights in the Image(s). The Image(s) are Licensor's or its employees', agent's, or contractor's interpretation, rather than a literal copy of any concepts or layouts provided to Licensor by Client. "Service(s)" means the photography and/or related digital or other related services described on the front of this Agreement that Client is specifically commissioning Licensor to perform, through it s agents, employees, and /or contractors, pursuant to this Agreement. "Copyright Management Information" means the name and other identifying information of Licensor, terms and conditions for use(s) of the Images, copyright notice information, and such other information that Licensor may prescribe.

**2. FEES, CHARGES AND ADVANCES:** Client and Client's representatives shall be jointly and severally responsible for full payment of all fees, charges, expenses and advances. The permissions granted, fees, charges, and advances set forth in this Agreement apply to the original specifications for the Services and any applicable permissions. Additional permissions shall be obtained and paid for, and additional fees, charges, and advances shall be paid by Client for, any subsequent changes, additions, or variations requested by Client, for services or permissions, and these shall be as quoted to Client in advance; where any are not quoted in advance they may be assessed, in licensor's discretion, at Licensor's negotiated rates for such permissions, and in accordance with Licensor's usual charges for changes, additions, and variations to the scope of services. However, nothing herein shall impose upon Licensor any obligation to grant additional or modified permissions, or to perform additional or to modify the services, and the same may be denied or withheld. All advance payments are due in full prior to production.

**3. IMPORTANT LIMITATIONS OF LIABILITY, RELEASES, AND INDEMNITY:** Client's sole remedy for a breach of this agreement shall be for, and Licensor's entire liability shall in no event exceed, return of the license fee paid to Licensor, and UNDER NO CIRCUMSTANCES SHALL LICENSOR, ITS CONTRACTORS, EMPLOYEES, OR AGENTS, BE LIABLE TO CLIENT FOR ANY ADDITIONAL OR OTHER REMEDY OR FOR GENERAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE, OR SPECIAL DAMAGES ARISING FROM THIS AGREEMENT, THE IMAGE(S), OR FROM ANY ACTS OR OMISSIONS OF LICENSOR, OR LICENSOR'S CONTRACTORS, EMPLOYEES, OR AGENTS, except where the same arise against them from their own respective fraud, violation of law, or willful injury. Client shall indemnify, defend, and hold Licensor and Licensor's representatives, contractors, employees, and agents, harmless from and for any and all claims, liabilities, damages, and expenses of any nature whatsoever, including actual attorneys' fees, costs of investigation, and court costs a) arising from or relating to Client's direct or indirect distribution, display or other use of any Image, b) arising from or relating to any wrongful or negligent acts of the Client, or others, or their representatives, employees, or agents, and / or c) arising from Licensor and Licensor's representatives, contractors, employees, and agents own respective acts and omissions except where such acts or omissions constitute the party's fraud, violation of law, or willful wrongdoing or where they are solely negligent; such indemnification, defense, and holding harmless, to apply except as otherwise prohibited by law. IMPORTANT: Client acknowledges and agrees that Client's agreement herein to hold harmless the Licensor, its employees, contractors, and agents, applies to all claims for injuries, damages, or losses to the Client's person and property, real or personal (whether those injuries, damages, or losses are known or unknown, foreseen or unforeseen, or patent or latent) which the client may have against the Licensor, its representatives, contractors, employees, and agents, for their own acts or omissions except where the acts or omissions constitute fraud, violation of law, willful wrongdoing, or where the party is solely negligent. Client certifies that Client has read the following provisions of California Civil Code Section 1542: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." Client intentionally and knowingly waives application of the California Civil Code Section 1542. Client understands and acknowledges that the significance and consequence of this waiver of California Civil Code Section 1542 is that even if Client should eventually suffer damages arising out of Licensor's or Licensor's representative's, contractor's, employee's, and agent's own respective acts and omissions, Client will not be able to make any claim for those damages except where the party's acts or omissions constitute fraud, a violation of law, willful wrongdoing, or where the party is solely negligent. Client acknowledges that it intends these consequences even as to claims for damages that may exist as of the date of this agreement but which Client does not know exists, and which, if known, would materially affect Client's decision to execute this agreement, regardless, of whether Client's lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause." Client assumes the risk of injury, damage, and loss, arising from facts and circumstances known to Client prior to the time injury occurs, and except where expressly prohibited by law.

**4. RIGHTS & PERMISSIONS:** Licensor, or its designated contactor(s), solely owns copyright in the Image(s). The permissions granted are granted only, and are materially conditioned, upon: (a) Client's acceptance of all terms contained in this Agreement, (b) Licensor's receipt of full payment when and as the payment shall become due and payable (TIME BEING OF THE ESSENCE), c) the request, grant of, and payment for the permissions occurring prior to the authorized use, and (c) the use of proper copyright notice and other Copyright Management Information requested or used by Licensor in connection with the Image(s). Licensor's permissions are granted for the Image(s) to Client only upon the condition that Client accepts all of the terms of this Agreement. Unless otherwise specifically stated on the front of this Agreement, all permissions granted by Licensor are non-exclusive, the duration of any permission is one year from the date of Licensor's invoice, and is for English language use in the United States of America only. Licensor, its contractors, and agents, reserve all rights in the Image(s) of every kind and nature, including, without limitation, copyright, electronic publishing and use rights, in any and all media, throughout the world, now existing and or hereafter arising, that are not specifically and expressly granted in the provisions of this agreement. No permission is valid unless signed by Licensor. This Agreement may not be assigned or transferred by Client without the prior written consent of Licensor and provided that the assignee or transferee agrees in writing to be bound by all of the terms, conditions, and obligations of this Agreement. Transfer shall not constitute a novation as to the assignor. Any voluntary assignment or assignments by operation of law of any rights or obligations of Client shall be deemed a default under this Agreement allowing Licensor to exercise all remedies including, without limitation, terminating this Agreement, the right to all net worth or financial information of any assignee, and the fullest extent of adequate assurances of future performance. Upon request by Licensor, Client shall provide Licensor with a full and complete disclosure of any and all uses of each Image by Client and any party acting under client's permission, and provide Licensor with three (3) copies, without charge, of each and every use of each Image. Work provided to Client by Licensor under this agreement is not work made for hire for client.

**5. DELETION OF DIGITAL IMAGE(S):** For all Images supplied in digital format, Client agrees to delete all such Images 90 days after their delivery date unless a longer retention period is agreed to in writing.

**6. PAYMENT AND COLLECTION TERMS:** Invoices from Licensor are payable upon receipt by Client. Client agrees to pay a late payment fee equal to 1.5% per month on any unpaid amount or balance. Such late fees shall commence to run on an invoice ten (10) days after its mailing or email date (whichever is earlier). Such late fee(s) shall in no event exceed the lawful maximum permitted in the State of California (or other applicable maximum, if any) with respect to commercial transactions (or if this is a consumer transaction shall be and shall not exceed the lawful consumer transaction maximum in the State of California, or other state maximum if applicable according to law).

3103 17TH STREET
SANTA MONICA, CA 90405
TEL  310.452.4461
FAX  310.452.4462

MICHAEL@MICHAELGRECCO.COM
**MICHAELGRECCO**.COM

**MICHAELGRECCO**PHOTOGRAPHY

**7. DISPUTE RESOLUTION:** At Licensor's election, any dispute involving Licensor arising out of this agreement may be resolved exclusively by binding arbitration before a single arbitrator, in California, in accordance with the rules of the American Arbitration Association, and the decision of the arbitrator shall be final, binding, and enterable in any court having jurisdiction. Except for matters that are or become the subject of pending arbitration, the parties hereto consent to the personal jurisdiction over them, and to the exclusive venue, of the courts of the State of California, County of Los Angeles, in any matter properly brought before a court. The parties agree that any dispute arising out of this agreement shall be governed by the laws of the State of California without regard to its rules for the resolution of conflicts of law.  In any action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover their actual attorneys' fees, arbitration fees, court costs, and all other non-reimbursable litigation and arbitration expenses including, without limitation, expert witness fees and investigation expenses, and pre-judgment and post-judgment interest on, and until, all amounts are paid. Any remedies available to Licensor under or in connection with this agreement shall be cumulative.

**8. TAX:** Client shall pay and hold Licensor harmless on account of any sales, use, or other taxes or governmental charges of any kind, however denominated, imposed by any government, including any subsequent assessments, in connection with this Agreement, the Image(s), the Service(s) or any income earned or payments received by Licensor hereunder. To the extent that Licensor may be required to withhold or to subsequently pay such taxes Client shall promptly furnish Licensor with funds in the full amount of all the sums withheld or to be paid, plus any assessments, penalties, and interest accruing therewith.

**9. RELEASES:** LICENSOR SHALL NOT PROVIDE CLIENT WITH ANY MODEL, PROPERTY, PUBLICITY, PRIVACY, TRADEMARK, OR OTHER RELEASE, FOR ANY IMAGE(S) UNLESS OTHERWISE AGREED TO BY LICENSOR IN WRITING AND SEPARATELY PAID FOR BY CLIENT. CLIENT GRANTS TO LICENSOR, ITS SUCCESSORS AND ASSIGNS, ANY AND ALL RIGHTS THAT MAY BE REQUIRED FOR ANY AND ALL USE OF THE IMAGE(S) BY LICENSOR OR ITS PERMITEES THAT ARE LAWFUL.

**10. ELECTRONIC RIGHTS:** No electronic usage rights of any kind are licensed or granted hereunder unless specifically set forth on the front of this Agreement. Licensor specifically reserves all rights not specifically conveyed to Client hereunder. Such rights reserved include but are not limited to all rights of publication, distribution, display or Transmission in electronic and digital media of any kind, now existing and hereafter arising. Usage rights for any kind of revision of a collective work including any later collective work in the same series, are expressly reserved by the Licensor.

**11. INTEGRATION, MODIFICATION, GOVERNING LAW AND MISCELLANEOUS:** This Agreement sets forth the entire understanding and agreement between Licensor and Client regarding the Service(s) and / or the Image(s). This Agreement supersedes any and all prior representations and agreements regarding the Service(s) and/or the Image(s), whether written or verbal. Neither Licensor nor Client shall be bound by any purchase order, term, condition, representation, warranty or provision other than as specifically stated in this Agreement. No waiver or modification may be made to any term or condition contained in this Agreement unless in writing and signed by Licensor. Waiver of any one provision of this Agreement or portion thereof shall not be deemed to be a permanent waiver or a waiver of any other provision of this Agreement or portion thereof. The parties agree that this is a negotiated agreement, and that any objections to the terms of this Agreement must be made in writing and delivered to Licensor within ten days of the receipt of this Agreement by Client or Client's representative, or this Agreement shall be binding. Notwithstanding anything to the contrary, no Image(s) may be used in any manner without Licensor's prior written consent, and Client's receipt of and holding of any Image(s) delivered to client pursuant to this agreement, constitutes Client's complete acceptance of this Agreement. The formation, interpretation, and performance of this Agreement shall be governed by the laws of the State of California, without regard California's rules for the resolution of conflicts of law. This Agreement shall be construed in accordance with its terms and shall not be construed more favorably for or more strongly against Licensor or Client by reason of either party's drafting of this agreement. The provisions of this agreement are severable and the invalidity of any provision or portion thereof shall not affect the validity of any remaining provision or portion thereof. Payments made by Client and accepted by Licensor shall be a ratification of and acceptance of the express terms of this Agreement, and not of any modification, addition, contrary, or other terms or orders, not expressly agreed to by Licensor in writing.

**12. COPYRIGHT/ENFORCEMENT OF EXCLUSIVE LICENSE:** The sole right to pursue and/or defend any and all claims sounding in infringement of its copyright(s), trademark and/ or intellectual property rights in the Image(s), free from any claims by Client or any other person, whether or not the rights granted to Client are exclusive or non-exclusive, shall be deemed retained by Licensor. If Licensor is determined not to possess any of such rights, or any encumbrance exists, Client agrees to execute and deliver to Licensor such documents as Licensor reasonably requests to carry out the purpose of this clause so as to allow Licensor the right to pursue and/or defend any and all claims sounding in infringement of copyright(s), trademark, and/or intellectual property rights in the Image(s), free from claims, encumbrances, or interests of Client, or any other party.

**13. CLIENT AGREES THAT WHENEVER COMMERCIALLY REASONABLE TO INCLUDE THE PHOTO CREDIT:** © MICHAEL GRECCO or © MICHAEL GRECCO PRODUCTIONS, INC. [year date of publication] in conjunction with all uses of Licensor's Image(s).

CONFIDENTIAL

GRECCO000039

3103 17TH STREET
SANTA MONICA, CA 90405
TEL  310.452.4461
FAX  310.452.4402

**MICHAEL**GRECCO PHOTOGRAPHY

**To Whom It May Concern:**

**The information below is being provided as instructions for ACH/Direct Deposit and wire transfer payments into our account:**

**Recipient:**

**Michael Grecco Productions, Inc.**
**3103 17th Street**
**Santa Monica, CA 90405**
**(310) 452-4461**

**Bank Information:**

City National Bank
1620 26th Street, North Tower
Santa Monica, CA 90404
(310) 264-2902

**Domestic Wire Transfers:**

**Routing Number: 122016066**

**Account Number: 017317776**

**International Wire Transfers:**

**Swift Code: CINAU56L**

**Account Number: 017317776**

**Please contact our office with any additional questions.**

**Sincerely,**

**Michael Grecco**
**President**

MICHAEL@MICHAELGRECCO.COM
**MICHAEL**GRECCO**.COM**
310.452.4461

**MG**

CONFIDENTIAL                                    GRECCO000040

Form **W-9**
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

**Give Form to the requester. Do not send to the IRS.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Michael Grecco Productions, Inc.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC   ☑ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

3103 17th Street

**6** City, state, and ZIP code

Santa Monica, CA 90405

Requester's name and address (optional)

**7** List account number(s) here (optional)

*Print or type*
*See Specific Instructions on page 2.*

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

| | | | – | | | – | | | | |

**or**

Employer identification number

| 9 | 5 | | – | 4 | 6 | 6 | 4 | 1 | 4 | 1 |

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**   Signature of U.S. person ▶   Date ▶ 3/16/15

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding? *on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X     Form **W-9** (Rev. 12-2014)

CONFIDENTIAL

GRECCO000041



CONFIDENTIAL

GRECO000042

EXHIBIT 23



# KESWICK HAMILTON

**Exhibit 23**

*invoice*

DATE 11 August 1993                                    NUMBER #636

SUBMITTED TO   John Lavet, 20TH CENTURY FOX TELEVISION

10201 W. Pico Blvd., Los Angeles, CA 90036

PROJECT DESCRIPTION   "X-Files" Advertising/Publicity Shoot by Michael Grecco

| | | |
|---|---|---|
| 1 Day Creative Fee | | $3,500.00* |
| 1 Day Preparation | | 1,750.00# |
| Assistants | B/u ok | 1,515.00 |
| Film/Processing/Polaroid | B/u ok | 3,010.00 |
| Equipment Rental | B/u ok | 1,195.00 |
| Set Construction (balance billed directly to Fox) | B/u ok | 2,925.00 |
| Expendables | Flat | 100.00 |
| Meals | Flat | 84.00 |
| Mileage/Phone | B/u ok | 72.00 |
| Messengers | Flat | 100.00 |
| Insurance | | |

| | | |
|---|---|---|
| Total Fees | | 5,250.00* |
| Total Expenses | | 9,001.00 |
| Sub-total | | 14,288.33 |
| CA Sales Tax | | 1,179.00 |
| Sub-total | | 15,467.33 |
| Less Advance | | <7,677.00> |
| Total Amount Due | | $7,790.33 |

Federal ID 95.4309528

GRECCO000001

## TERMS AND CONDITIONS

1. **Acceptance of terms.** The photographs which are subject of this agreement are sent on the condition that the terms stated below are agreed to in full. Holding photographs beyond five days constitutes acceptance of these terms, including agreement to the liquidated damages provision.
   **If you do not agree to all the terms of this agreement, please return all photographs at once.**

2. **Copyright protection/credit line.** Client acknowledges that Michael Grecco Photography owns the copyright to the photographs and agrees to take all necessary precautions to insure protection of such copyright.
   a) For non-editorial use, client will provide copyright protection by placing proper copyright notice on any use. Proper notice is © (year) Michael Grecco.
   b) For editorial use, a credit line in the form © (year) Michael Grecco shall appear adjacent to or within the photograph itself in type no smaller than that of related text. Failure to include the foregoing shall result in a treble fee. **Client acknowledges that such treble fee is fair and reasonable for the loss of recognition and lack of copyright protection resulting from the failure to give proper copyright notice or credit line.**

3. **Scope of license.** Rights granted are for **one use only (excluding buy outs)**. Rights granted under this license may not be assigned or transferred without written permission. Materials may not be reproduced, copied, projected, cannibalized or otherwise used without express written consent.
   **No rights are granted until payment is received by Michael Grecco Photography.**

4. **Model releases.** No model releases exist unless specified by Michael Grecco Photography. Client acknowledges that Michael Grecco Photography makes no warranty of model release for photographs supplied under this agreement.

5. **Notice and copies.** Client will provide Michael Grecco Photography with details of all photographs before use and provide Michael Grecco Photography with two free copies of all photographs appearing in print within seven days of printing.

6. **Return of photographs.** All photographs shall be returned undamaged within 30 days of client's receipt unless specifically agreed otherwise in writing by Michael Grecco Photography. Return of photographs must be by registered mail, air freight or bonded messenger, in all cases fully insured with return receipt requested. Client retains responsibility for safe return of photographs and liability for damage thereto until received by Michael Grecco Photography or his authorized agent. All photographs not returned within 30 days of receipt by the client will be subject to a holding charge of $5.00 per week per image unless otherwise agreed in writing.

7. **Lost or damaged photographs.** The parties acknowledge that it is difficult and impractical to determine the exact value of each photograph subject to this agreement. Therefore the parties agree that the reasonable value of each original photograph lost, damaged or altered is $1,500.00 per photograph unless another value is agreed on in writing. The parties also agree that $100.00 is a reasonable fee for each lost or damaged duplicate photograph of which Michael Grecco Photography holds the undamaged original. Acceptance of this liquidated damages provision by client is a material consideration for delivery by Michael Grecco Photography to the client of photographs governed by this agreement.

8. **Vicarious responsibility.** Client accepts responsibility and liability for all acts of its employees, agents, assigns, messengers, printers, shippers, researchers and all others acting at its request or on its behalf.

9. **Indemnity.** Client agrees to hold Michael Grecco Photography and any other photographer harmless and to indemnify them from all claims, liabilities, damages and expenses, including reasonable attorney's fees, arising out of any use of photographs supplied by Michael Grecco Photography including, but not limited to those arising from misuse of photographs, privacy claims and lack of model releases.

10. **Default.**
    a) All bills are due immediately upon receipt of the described photographs and must be paid before any use is made of photographs supplied. Use prior to full payment, or any misuse, damage or loss of photographs, will be a default under this agreement.
    b) Interest on any defaulted amount will occur from the date of first use, misuse, damage, loss or any other event until paid in full, at a rate of 1.65% monthly or the maximum rate permitted by law.
    c) A late charge of 1.65% monthly of the defaulted amount due but not paid will be assessed on the default. This late charge is intended by both parties as fair compensation to Michael Grecco Photography for the inconvenience occasioned by the default and the cost of carrying a defaulted account.
    d) All cost of collection of defaulted accounts, including interest and late charges, will be charged to client as an addition to the amount payable. These costs of collection include but are not limited to, reasonable attorney's fees and court costs.

11. **Governing Law.** This agreement is governed by the laws of the state of California.

12. **Attorney's fees.** In the event of litigation between parties to this agreement concerning the subject of this agreement, the prevailing party will be entitled to recover reasonable attorney's fees and the cost of suit from the other party.

13. **Waiver.** No action of Michael Grecco Photography other than a written waiver may be construed as waiving any part of this agreement, and no written waiver may be construed as waiving any part of the agreement beyond what it specifically covers.

14. **Arbitration.**
    a) Any controversy between the parties regarding the construction or application, and any claim arising out of this agreement or its default or breach, will be submitted to binding arbitration on written request by one party to the other.
    b) The parties will each appoint one person to hear and determine the dispute. These two arbitrators will choose a third arbitrator whose decision will be binding on both parties. The cost of any arbitration will be allocated among the parties in the proper proportions decided by the arbitrators, based on the merits of the case and each party's good faith efforts to handle the dispute.
    c) The arbitrators will be governed and enforced under the provisions of The California Arbitration Law, Code of Civil Procedure sections 1280 and following (or any other similar successor statute).

15. **Estimates.** All expense estimates are subject to normal trade variance of 10%.

16. **Copyright Jurisdiction.** Client hereby expressly consents to the jurisdiction of the Federal courts with respect to claims by Michael Grecco Photography under the Copyright Act of 1976, as amended.

17. **Overtime.** In the event a shoot extends beyond eight (8) consecutive hours, Michael Grecco Photography may charge for such excess time of assistants and freelance staff at the rate of one-and-one-half their hourly rates.

18. **Reshoots.** Client will be charged 100% fee and expenses for any reshoot required by Client. For any reshoot required because of an act of God or the fault of a third party, Michael Grecco Photography will charge no additional fee and Client will pay all expenses. If Michael Grecco Photography charges for special contingency insurance and is paid in full for the shoot, Client will not be charged for any expenses covered by insurance. A list of exclusions from such insurance will be provided on request.

19. **Cancellations and postponements.**
    a) Client is responsible for payment of all expenses incurred up to the time of cancellation, plus 50% of Michael Grecco Photography's fee. If notice of cancellation is given less than two (2) business days before the shoot date, Client will be charged 100% fee.
    b) Weather postponements. Unless otherwise agreed, Client will be charged 100% fee if postponement is due to weather conditions while on location and 50% fee if postponement occurs before departure to location.

20. **Severibility.** If any provision is found unenforceable, the remaining terms will be unaffected and will remain in force.

21. **Time is of the essence.** Time is of the essence with respect to payment and return of materials.

22. **Buy-outs.** Notwithstanding any of the foregoing, "buy-outs" entitle client to multiple uses of the photos with copyright notices whenever published. Commercial exploitation of any part of any photo in any form is strictly prohibited.

23. **Entire agreement.** This agreement contains the entire agreement between client and Michael Grecco Photography. It supersedes all other agreements, oral and written, between them with respect to the photographs, and no other agreement between them for the subject matter of this agreement is valid or binding. This agreement may be modified only in a writing signed by both parties.

GRECCO000002

## ASSIGNMENT INVOICE

TO: MAGGIE HAMILTON
DIRECTOR OF MARKETING
KESWICK HAMILTON SYGMA
3519 WEST SIXTH STREET
LOS ANGELES CA 90020
213-380-3933

INVOICE# 1491
DATE: 3/13/1995
P.O.#

JOB FOR: JENNIFER GREENFELD
USA WEEKEND

JOB TITLE: X-FILES

DESCRIPTION:

FOR PHOTOGRAPHING THE X-FILES FOR THE COVER OF USA WEEKEND IN VANCOUVER ON 3/9-11/95.

USE:

ONE TIME NORTH AMERICAN RIGHTS ONLY. THESE RIGHTS MAY NOT BE TRANSFERRED TO A THIRD PARTY. PHOTOS MAY NOT BE REPRINTED OR SOLD.

FEE:

| | | | |
|---|---|---|---|
| 1 | DAY(S) CREATIVE FEE @ | $1,125.00 | $1,125.00 |
| | | FEE TOTAL: | **$1,125.00** |

LABOR:

| | | | |
|---|---|---|---|
| 3 | DAY(S) ASSISTANT #1 @ | $150.00 | $450.00 |
| 1 | DAY(S) ASSISTANT #2 @ | $125.00 | $125.00 |
| 2 | HOUR(S) OVER TIME ( 16 HOUR DAY 3/10-11) @ | $22.50 | $45.00 |
| | | LABOR TOTAL: | **$620.00** |

MATERIALS:

| | | | |
|---|---|---|---|
| 22 | ROLLS OF 2 1/4 COLOR @ | $10.00 | $220.00 |
| 6 | FUJI INSTANT FILM (DOUBLE) @ | $30.00 | $180.00 |
| 22 | ROLLS PROCESSED @ | $15.00 | $330.00 |
| 17 | EXTRA SNIPS @ | $5.00 | $85.00 |
| | | MATERIALS TOTAL: | **$815.00** |

PRODUCTION:

| | |
|---|---|
| EQUIPMENT RENTALS: SCISSOR LIFT AND DIFFUSION | $328.32 |
| EXPENDABLES: TAPE, GELS, FILTERS, BATTS., CINEFOIL, ETC. | $50.00 |
| PROPS: FLASH LIGHTS WITH BATTERIES | $74.58 |
| AIRFARE PLUS EXTRA BAGS ($50.00), AND EXIT TAX ($8.00) | $1,392.02 |
| HOTEL | $531.12 |
| CAR RENTALS: VAN FOR 3 DAYS | $241.43 |
| GRATUITIES: AT AIRPORTS AND IN AND OUT OF HOTEL TWICE | $102.15 |
| TAXIS: TO AND FROM LAX AND TO DINNER | $63.85 |
| MEALS: FOR 2 FOR 2 DAYS, FOR 3 FOR 1 DAY | $220.84 |
| PHONE CALLS: LOCAL, L.D., & CELLULAR W/L.D. & ACCESS | $87.45 |
| MESSENGERS TO AND FROM LAB | $36.00 |
| PRODUCTION TOTAL: | **$3,127.76** |

| | |
|---|---|
| SUBTOTAL | $5,687.76 |
| SALES TAX @ 0.00% | $0.00 |
| FINAL TOTAL | $5,687.76 |
| ADVANCE/PAYMENT | $5,687.76 |

**NET 30 - DUE BY 4/12/95**   **BALANCE   U.S.**   **$0.00**

**PLEASE MAKE CHECKS PAYABLE TO "MICHAEL GRECCO", SS# 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**

CONFIDENTIAL

GRECCO000003

## TERMS AND CONDITIONS

1. **Acceptance of terms.** The photographs which are subject of this agreement are sent on the condition that the terms stated below are agreed to in full. Holding photographs beyond five days constitutes acceptance of these terms, including agreement to the liquidated damages provision. **If you do not agree to all the terms of this agreement, please return all photographs at once.**

2. **Copyright protection/credit line.** Client acknowledges that Michael Grecco Photography owns the copyright to the photographs and agrees to take all necessary precautions to insure protection of such copyright.
   a) For non-editorial use, client will provide copyright protection by placing proper copyright notice on any use. Proper notice is © (year) Michael Grecco.
   b) For editorial use, a credit line in the form © (year) Michael Grecco shall appear adjacent to or within the photograph itself in type no smaller than that of related text. Failure to include the foregoing shall result in a treble fee. **Client acknowledges that such treble fee is fair and reasonable for the loss of recognition and lack of copyright protection resulting from the failure to give proper copyright notice or credit line.**

3. **Scope of license.** Rights granted are for **one use only (excluding buy outs).** Rights granted under this license may not be assigned or transferred without written permission. Materials may not be reproduced, copied, projected, cannibalized or otherwise used without express written consent. **No rights are granted until payment is received by Michael Grecco Photography.**

4. **Model releases.** No model releases exist unless specified by Michael Grecco Photography. Client acknowledges that Michael Grecco Photography makes no warranty of model release for photographs supplied under this agreement.

5. **Notice and copies.** Client will provide Michael Grecco Photography with details of all photographs before use and provide Michael Grecco Photography with two free copies of all photographs appearing in print within seven days of printing.

6. **Return of photographs.** All photographs shall be returned undamaged within 30 days of client's receipt unless specifically agreed otherwise in writing by Michael Grecco Photography. Return of photographs must be by registered mail, air freight or bonded messenger, in all cases fully insured with return receipt requested. Client retains responsibility for safe return of photographs and liability for damage thereto until received by Michael Grecco Photography or his authorized agent. All photographs not returned within 30 days of receipt by the client will be subject to a holding charge of $5.00 per week per image unless otherwise agreed in writing.

7. **Lost or damaged photographs.** The parties acknowledge that it is difficult and impractical to determine the exact value of each photograph subject to this agreement. Therefore the parties agree that the reasonable value of each original photograph lost, damaged or altered is $1,500.00 per photograph unless another value is agreed on in writing. The parties also agree that $100.00 is a reasonable fee for each lost or damaged duplicate photograph of which Michael Grecco Photography holds the undamaged original. Acceptance of this liquidated damages provision by client is a material consideration for delivery by Michael Grecco Photography to the client of photographs governed by this agreement.

8. **Vicarious responsibility.** Client accepts responsibility and liability for all acts of its employees, agents, assigns, messengers, printers, shippers, researchers and all others acting at its request or on its behalf.

9. **Indemnity.** Client agrees to hold Michael Grecco Photography and any other photographer harmless and to indemnify them from all claims, liabilities, damages and expenses, including reasonable attorney's fees, arising out of any use of photographs supplied by Michael Grecco Photography including, but not limited to those arising from misuse of photographs, privacy claims and lack of model releases.

10. **Default.**
    a) All bills are due immediately upon receipt of the described photographs and must be paid before any use is made of photographs supplied. Use prior to full payment, or any misuse, damage or loss of photographs, will be a default under this agreement.
    b) Interest on any defaulted amount will occur from the date of first use, misuse, damage, loss or any other event until paid in full, at a rate of 1.65% monthly or the maximum rate permitted by law.
    c) A late charge of 1.65% monthly of the defaulted amount due but not paid will be assessed on the default. This late charge is intended by both parties as fair compensation to Michael Grecco Photography for the inconvenience occasioned by the default and the cost of carrying a defaulted account.
    d) All cost of collection of defaulted accounts, including interest and late charges, will be charged to client as an addition to the amount payable. These costs of collection include but are not limited to, reasonable attorney's fees and court costs.

11. **Governing Law.** This agreement is governed by the laws of the state of California.

12. **Attorney's fees.** In the event of litigation between parties to this agreement concerning the subject of this agreement, the prevailing party will be entitled to recover reasonable attorney's fees and the cost of suit from the other party.

13. **Waiver.** No action of Michael Grecco Photography other than a written waiver may be construed as waiving any part of this agreement, and no written waiver may be construed as waiving any part of the agreement beyond what it specifically covers.

14. **Arbitration.**
    a) Any controversy between the parties regarding the construction or application, and any claim arising out of this agreement or its default or breach, will be submitted to binding arbitration on written request by one party to the other.
    b) The parties will each appoint one person to hear and determine the dispute. These two arbitrators will choose a third arbitrator whose decision will be binding on both parties. The cost of any arbitration will be allocated among the parties in the proper proportions decided by the arbitrators, based on the merits of the case and each party's good faith efforts to handle the dispute.
    c) The arbitrators will be governed and enforced under the provisions of The California Arbitration Law, Code of Civil Procedure sections 1280 and following (or any other similar successor statute).

15. **Estimates.** All expense estimates are subject to normal trade variance of 10%.

16. **Copyright Jurisdiction.** Client hereby expressly consents to the jurisdiction of the Federal courts with respect to claims by Michael Grecco Photography under the Copyright Act of 1976, as amended.

17. **Overtime.** In the event a shoot extends beyond eight (8) consecutive hours, Michael Grecco Photography may charge for such excess time of assistants and freelance staff at the rate of one-and-one-half their hourly rates.

18. **Reshoots.** Client will be charged 100% fee and expenses for any reshoot required by Client. For any reshoot required because of an act of God or the fault of a third party, Michael Grecco Photography will charge no additional fee and Client will pay all expenses. If Michael Grecco Photography charges for special contingency insurance and is paid in full for the shoot, Client will not be charged for any expenses covered by insurance. A list of exclusions from such insurance will be provided on request.

19. **Cancellations and postponements.**
    a) Client is responsible for payment of all expenses incurred up to the time of cancellation, plus 50% of Michael Grecco Photography's fee. If notice of cancellation is given less than two (2) business days before the shoot date, Client will be charged 100% fee.
    b) Weather postponements. Unless otherwise agreed, Client will be charged 100% fee if postponement is due to weather conditions while on location and 50% fee if postponement occurs before departure to location.

20. **Severibility.** If any provision is found unenforceable, the remaining terms will be unaffected and will remain in force.

21. **Time is of the essence.** Time is of the essence with respect to payment and return of materials.

22. **Buy-outs.** Notwithstanding any of the foregoing, "buy-outs" entitle client to multiple uses of the photos with copyright notices whenever published. Commercial exploitation of any part of any photo in any form is strictly prohibited.

23. **Entire agreement.** This agreement contains the entire agreement between client and Michael Grecco Photography. It supersedes all other agreements, oral and written, between them with respect to the photographs, and no other agreement between them for the subject matter of this agreement is valid or binding. This agreement may be modified only in a writing signed by both parties.

CONFIDENTIAL

## ASSIGNMENT  INVOICE

**TO:**  Maggie  Hamilton
Director Of Marketing
Hamilton Gray
3519 West Sixth Street
Los Angeles  CA  90020
213-380-3933

**INVOICE#**  1910
**DATE:** 6/1/97
**P.O.#**
**JOB:** *HERCULES XENA*

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**JOB FOR:**  Erik Thompson / Mca Television Group

**DESCRIPTION:** FOR  PHOTOGRAPHING  *HERCULES  AND  XENA*  IN  AUCKLAND,  NEW  ZEALAND  FROM 5/6/97 TO 5/13/97.

**USE:**  UNLIMITED USAGE RIGHTS ARE GRANTED TO THE CLIENT.  MICHAEL GRECCO RETAINS THE COPYRIGHT TO ALL PHOTOGRAPHS.  MICHAEL GRECCO ALSO RETAINS THE RIGHT TO USE ANY PHOTOGRAPH FOR PERSONAL PORTFOLIO AND PROMOTIONAL USE.

**FEE:**

| | | |
|---|---|---:|
| 2  DAY(S) CREATIVE FEE @  $2,250.00 | | $4,500.00 |
| 2  DAY(S) PREPARATION @  $375.00 | | $750.00 |
| 2  DAY(S) LOCATION SCOUTING @  $375.00 | | $750.00 |
| 2  DAY(S) TRAVELING @  $375.00 | | $750.00 |
| | FEE TOTAL | **$6,750.00** |

**LABOR:**

| | | |
|---|---|---:|
| 9  DAY(S) ASSISTANT #1 @  $175.00 | | $1,575.00 |
| 3  DAY(S) ASSISTANT #2 @  $150.00 | | $450.00 |
| 2  DAY(S) ASSISTANT #3 @  $150.00 | | $300.00 |
| | LABOR TOTAL | **$2,325.00** |

**MATERIALS:**

| | | |
|---|---|---:|
| 288  ROLLS OF 2 1/4 COLOR  @  $10.00 | | $2,880.00 |
| 19  FUJI INSTANT FILM (DOUBLE) @  $30.00 | | $570.00 |
| 288  ROLL(S) PROCESSED @  $20.00 | | $5,760.00 |
| | MATERIALS TOTAL | **$9,210.00** |

**PRODUCTION:**

| | | |
|---|---|---:|
| EQUIPMENT RENTALS: | | $2,222.62 |
| SET CONSTRUCTION ( PLEXIGLASS) | | $264.89 |
| EXPENDABLES: TAPE, GELS, FILTERS, BATTS., CINEFOIL, ETC. | | $200.00 |
| AIRFARE WITH EXTRA BAGGAGE | | $2,628.24 |
| HOTEL | | $423.79 |
| VAN RENTALS | | $807.93 |
| GRATUITIES | | $62.00 |
| TAXIS | | $48.45 |
| MEALS | | $177.44 |
| PHONE & FAXES: LOCAL, L.D., & CELL W/L.D. & ACCESS | | $58.50 |
| MESSENGERS TO AND FROM LAB | | $72.00 |
| | PRODUCTION TOTAL | **$6,965.86** |

**TERMS:** Full payment is due upon receipt of this invoice.

Please make checks payable to "Michael Grecco Photography Inc.", E.I.N.: 95-4664141.

CONFIDENTIAL                                              GRECCO000005

Final billing reflects actual, not estimated expenses, plus applicable taxes. All fees and charges in this invoice are for the service(s) and/or licensing described above. Fees for licensing of additional available rights will be quoted upon request.

A late charge of 1.5% per month applies after 6/11/97.

| | |
|---|---|
| SUBTOTAL | |
| SALES TAX @ 0.00% | $0.00 |
| FINAL TOTAL | $25,250.86 |
| ADVANCE | |
| **BALANCE U.S.** | **$25,250.86** |

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

Michael Grecco, President  (Licensor)            Date

Please make checks payable to "Michael Grecco Photography Inc.", E.I.N.: 95-4664141.

CONFIDENTIAL                                    GRECCO000006

**ALL SERVICES AND LICENSES OF LICENSOR ARE SUBJECT TO EACH AND EVERY OF THE FOLLOWING TERMS AND CONDITIONS**

**1. DEFINITIONS:** This Agreement is by and between MICHAEL GRECCO PHOTOGRAPHY, INC ("Licensor") and the commissioning party (the "Client" named on the front of this Agreement, which includes Client's representatives and any permitted assignees). Licensor's relationship with Client is that of an independent contractor. "Image(s)" means the visual and/or other forms of film, prints, slides, chromes and any other visual materials in any format including digital information supplied by Licensor to Client. Licensor is the sole creator of the Image(s). The Image(s) are Licensor's interpretation, rather than a literal copy of any concepts or layouts provided to Licensor by Client. "Service(s)" means the photography and/or related digital or other related services described on the front of this Agreement that Client is specifically commissioning Licensor to perform pursuant to this Agreement. "Transmit" or "Transmission" means distribution by any device or process whereby an Image or copy of same, is fixed beyond the place from which it was sent. "Copyright Management Information" means the name and other identifying information of Licensor, terms and conditions for uses of the Images, and such other information that Licensor may prescribe.

**2. FEES, CHARGES AND ADVANCES:** Client and Client's representatives are jointly and severally responsible for full payment of all fees, charges, expenses and advances. The rights licensed, fees, charges and advances set forth in this Agreement apply only to the original specification of the Services. Additional fees and charges shall be paid by Client for any subsequent changes, additions or variations requested by Client. All advance payments are due in full prior to production.

**3. POSTPONEMENTS AND CANCELLATIONS:** If Client postpones or cancels any photography "shoot date" or other Service, in whole or in part, without first obtaining Licensor's written consent, Client shall pay Licensor 50% of Licensor's quoted fees. If Client postpones or cancels with less than two business days' prior written notice to Licensor, Client shall pay 100% of Licensor's quoted fees. Client shall in any event pay all expenses and charges incurred in connection with any postponed or canceled shoot date or other Service.

**4. FORCE MAJEURE:** Licensor shall not be in default of this Agreement by reason of its delay in the performance of or failure to perform, in whole or in part, any of its obligations hereunder, if such delay or failure results from occurrences beyond its reasonable control and without its fault or negligence. Client will pay 100% of Licensor's daily weather delay fee (as set forth on the front of this Agreement) for any delays due to weather conditions or any acts or occurrences beyond Licensor's reasonable control, plus all charges incurred.

**5. CLIENT APPROVAL:** Client is responsible for having its authorized representative present during all "shooting" and other appropriate phases of the Service(s) to approve Licensor's interpretation of the Service(s). If no representative is present, Licensor's interpretation shall be deemed as "accepted". Client shall be bound by all approvals and job changes made by Client's representatives.

**6. OVERTIME:** In the event any Services extend beyond eight consecutive hours in one day, Client agrees to and shall timely pay overtime for crew members and assistants at the rate of 1-1/2 times their hourly rates or fees, and if the Services extend beyond 12 hours in one day, Client agrees to and shall pay overtime for crew members and assistants at the rate of double their regularly hourly rates or fees.

**7. RESHOOTS:** Client shall pay 100% of Licensor's fees and charges for any reshooting or redoing of Services requested by Client. If the Image(s) become lost or unusable by reason of defects, damage, equipment malfunction, processing, or any other technical error, prior to delivery of the Image(s) to Client, Licensor will perform appropriate Service(s) again without additional fees, provided Client advances and pays all charges, and pays all fees and charges in connection with the initial Services.

**8. LIMITATION OF LIABILITY AND INDEMNITY:** Even if Client's exclusive remedy fails of its essential purpose, Licensor's entire liability shall in no event exceed the license fee paid to Licensor. UNDER NO CIRCUMSTANCES SHALL LICENSOR BE LIABLE FOR GENERAL, CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES ARISING FROM THIS AGREEMENT, THE SERVICE(S), THE IMAGE(S) OR ANY ACTS OR OMISSIONS OF LICENSOR. Client shall indemnify, defend and hold Licensor and Licensor's representatives harmless from any and all claims, liabilities, damages, and expenses of any nature whatsoever, including actual attorneys' fees, costs of investigation, court costs and any other expenses or costs arising from or relating to Client's direct or indirect use of the Image(s) or in connection with Licensor's reliance on any representations, instructions, information, or materials provided or approved by Client.

**9. RIGHTS LICENSED:** The licensed rights are transferred only upon: (a) Client's acceptance of all terms contained in this Agreement, (b) Licensor's receipt of full payment, and (c) the use of proper copyright notice and other Copyright Management Information requested or used by Licensor in connection with the Image(s). Licensor is willing to license the Image(s) to Client only upon the condition that Client accepts all of the terms of this Agreement. Unless otherwise specifically stated on the front of this Agreement, all licenses are non-exclusive, the duration of any license is one year from the date of Licensor's invoice and is for English language use in the United States of America only. Licensor reserves all rights in the Image(s) of every kind and nature, including, without limitation, copyright, electronic publishing and use rights, in any and all media, throughout the world, now existing and yet unknown, that are not specifically licensed or transferred by this Agreement. No license is valid unless signed by Licensor. This Agreement may not be assigned or transferred without the prior written consent of Licensor and provided that the assignee or transferee agrees in writing to be bound by all of the terms, conditions, and obligations of this Agreement. Any voluntary assignment or assignments by operation of law of any rights or obligations of Client shall be deemed a default under this Agreement allowing Licensor to exercise all remedies including, without limitation, terminating this Agreement, the right to all net worth or financial information of any assignee and the fullest extent of adequate assurances of future performance. Upon request by Licensor Client shall provide Licensor with a full and complete disclosure of any and all uses of each Image and provide Licensor with two (2) copies, without charge, of each and every use of each Image.

**10. RETURN OF ANALOG IMAGE(S):** Client assumes all risk for all Image(s) supplied by Licensor to Client, from the time of Client's receipt, to the time of the safe return receipt of the Image(s) to the possession and control of Licensor. If no return date appears on the front of this Agreement or on any related delivery memo, Client shall return all Image(s) in undamaged, unaltered and unretouched condition not later than 90 days after the date of delivery date unless otherwise agreed in writing. Client acknowledges that the failure turn any image(s) to Licensor within the agreed upon time period(s) will cause economic damage to Licensor. Client agrees to pay the sum of $5 per week per image (irrespective of the total number of images unreturned) and for a "holding fee". Client acknowledges that such calculation is fair and reasonable and bears a rational relationship to the damages, lost income, costs and expenses incurred by Licensor as a result of such failure. In the event an image is not returned to Licensor within 90 days of delivery to Client, such images shall be deemed "lost" and Client shall pay to Licensor damages in accordance with paragraph "12" herein. Notwithstanding, Licensor may assert a claim for lost or unreturned images at any time subsequent to the agreed upon return date(s).

**11. DELETION OF DIGITAL IMAGE(S):** For all images supplied in digital format, Client agrees to delete all such images 90 days after their delivery date unless a longer retention period is agreed to in writing.

**12. LOSS OR DAMAGE: IN CASE OF LOSS OR DAMAGE OF ANY ORIGINAL IMAGE(S), CLIENT AND LICENSOR AGREE THAT THE REASONABLE VALUE OF EACH ORIGINAL IMAGE IS $2,500.** Once original Image(s) are lost or damaged it is extremely difficult and impracticable to fix their exact individual value. Accordingly, Licensor and Client agree that the reasonable liquidated value of each original Image is $2,500. Client agrees to pay Licensor $2,500 for each lost or damaged original Image (irrespective of the total number of images lost or damaged) and Licensor agrees to limit Licensor's claim to that amount without regard to the actual value of such Image. An Image shall be considered an original if no high reproduction quality duplicate of that Image exists. Client specifically agrees that such $2,500 amount is reasonable, reasonably related to the value of the image(s), is not punitive and that the establishment of such clause and amount is in the mutual beneficial interests of the both Client and Licensor in the event of loss or damage to any/all images. Notwithstanding, the parties may agree to value any or all images at a figure greater or less than $2,500 per image so long as such valuation(s) are specifically set forth in this document. Both parties have duly considered the number of images covered by this agreement as well as their content, cost of creation, any existing model and/or property releases and other business considerations to be considered in the recreation of any lost or damage image and whether the subject images can in fact, be recreated. In the event client looses, fails to timely locate or renders a digital image unusable, client agrees to pay Licensor all fees and expenses charged by Licensor to re-transmit or otherwise redeliver such image(s).

**13. PAYMENT AND COLLECTION TERMS:** Invoices from Licensor are payable upon receipt by Client. Client agrees to pay a late payment fee equal to 1.5% per month on any unpaid amount or balance. Such late fees shall commence to run ten (10) days after the mailing date of this invoice. Such late fee(s) shall in no event exceed the lawful maximum permitted in the State of California with respect to commercial transactions of this type. In any action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover their actual attorneys' fees, court costs and all other non-reimbursable litigation expenses such as expert witness fees and investigation expenses. The parties hereto consent to the jurisdiction of the courts of the State of California, County of Los Angeles. The parties agree that any dispute arising out of this agreement shall be governed by the laws of the State of California

**14. TAX:** Client shall pay and hold Licensor harmless on account of any sales, use, or other taxes or governmental charges of any kind, however denominated, imposed by any government, including any subsequent assessments, in connection with this Agreement, the Image(s), the Service(s) or any income earned or payments received by Licensor hereunder. To the extent that Licensor may be required to withhold or pay such taxes Client shall promptly thereafter furnish Licensor with funds in the full amount of all the sums withheld or paid.

**15. RELEASES:** NO MODEL, PROPERTY, TRADEMARK, OR OTHER SUCH RELEASE EXISTS FOR ANY IMAGE(S) UNLESS LICENSOR SUBMITS TO CLIENT A SEPARATE RFI FASF SIGNED BY A THIRD-PARTY MODEL OR PROPERTY OWNER.

**16. ELECTRONIC RIGHTS:** No electronic usage rights of any kind are licensed or granted hereunder unless specifically set forth on the front of this Agreement. Licensor specifically reserves all rights not specifically conveyed to Client hereunder. Such rights reserved include but are not limited to all rights of publication, distribution, display or Transmission in electronic and digital media of any kind, now existing and yet unknown. Usage rights for any kind of revision of a collective work including any later collective work in the same series are expressly reserved by the Licensor.

**16. MODIFICATIONS, GOVERNING LAW AND MISCELLANEOUS:** This Agreement sets forth the entire understanding and agreement between Licensor and Client regarding the Service(s) and/or the Image(s). This Agreement supersedes any and all prior representations and agreements regarding the Service(s) and/or the Image(s), whether written or verbal. Neither Licensor nor Client shall be bound by any purchase order, term, condition, representation, warranty or provision other than as specifically stated in this Agreement. No waiver or modification may be made to any term or condition contained in this Agreement unless in writing and signed by Licensor. Waiver of any one provision of this Agreement shall not be deemed to be a waiver of any other provision of this Agreement. Any objections to the terms of this Agreement must be made in writing and delivered to Licensor within ten days of the receipt of this Agreement by Client or Client's representative, or this Agreement shall be binding. Notwithstanding anything to the contrary, no Image(s) may be used in any manner without Licensor's prior written consent, and Client's holding of any Image(s) constitutes Client's complete acceptance of this Agreement. The formation, interpretation, and performance of this Agreement shall be governed by the laws of the state of California, excluding the conflict of laws rules of California. All paragraph captions in this Agreement are for reference only, and shall not be considered in construing this Agreement. This Agreement shall be construed in accordance with its terms and shall not be construed more favorably for or more strongly against Licensor or Client.

**17. COPYRIGHT/ENFORCEMENT OF EXCLUSIVE LICENSE:** The sole right to pursue and/or defend any and all claims sounding in infringement of its copyright(s), trademark and/or intellectual property rights in the image(s), free from any claims by Client or any other person, whether or not the rights granted to Client or exclusive or non- exclusive shall be deemed retained by Licensor. If Licensor is determined not to possess such rights Client agrees to execute and deliver to Licensor such documents as Licensor reasonably requests to carry out the purpose of this clause to allow licensor the right to pursue and/or defend any and all claims sounding in infringement of its copyright(s), trademark and/or intellectual property rights in the image(s).

**18. CLIENT AGREES THAT WHENEVER COMMERCIALLY REASONABLE TO INCLUDE THE CREDIT:** © MICHAEL GRECCO or MICHAEL GRECCO PHOTOGRAPHY, INC. in conjunction with all uses of Licensor's image(s).

**STOCK INVOICE**

TO:  MAGGIE  HAMILTON
     DIRECTOR OF MARKETING
     KESWICK HAMILTON SYGMA
     3519 WEST SIXTH STREET
     LOS ANGELES  CA  90020
     213-380-3933

INVOICE#          1403
DATE:        10/12/1994
P.O.#

JOB FOR:                                    JOB TITLE:              X-FILES

DESCRIPTION:
    FOR THE USE OF ONE PICTURE OF THE "X-FILES" IN A NATIONAL  AD  CAMPAIGN FOR THE
    DELPHI INTERNET.

USE:
    CONSUMER AND TRADE PRINT ONLY NO DIRECT MAIL OR FOREIGN USE.

|  |  |  |
|---|---|---|
| TOTAL | | $5,000.00 |
| SALES TAX @ 0.00% | | $0.00 |
| FINAL TOTAL | | $5,000.00 |
| PAYMENT | | |
| **NET 30 - DUE BY 11/11/94**   **BALANCE** | **U.S.** | **$5,000.00** |

PLEASE MAKE CHECKS PAYABLE TO "MICHAEL GRECCO", SS# 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

CONFIDENTIAL                                    GRECCO000008

## TERMS AND CONDITIONS

1. **Acceptance of terms.** The photographs which are subject of this agreement are sent on the condition that the terms stated below are agreed to in full. Holding photographs beyond five days constitutes acceptance of these terms, including agreement to the liquidated damages provision. **If you do not agree to all the terms of this agreement, please return all photographs at once.**

2. **Copyright protection/credit line.** Client acknowledges that Michael Grecco Photography owns the copyright to the photographs and agrees to take all necessary precautions to insure protection of such copyright.
   a) For non-editorial use, client will provide copyright protection by placing proper copyright notice on any use. Proper notice is © (year) Michael Grecco.
   b) For editorial use, a credit line in the form © (year) Michael Grecco shall appear adjacent to or within the photograph itself in type no smaller than that of related text. Failure to include the foregoing shall result in a treble fee. **Client acknowledges that such treble fee is fair and reasonable for the loss of recognition and lack of copyright protection resulting from the failure to give proper copyright notice or credit line.**

3. **Scope of license.** Rights granted are for one use only (excluding buy outs). Rights granted under this license may not be assigned or transferred without written permission. Materials may not be reproduced, copied, projected, cannibalized or otherwise used without express written consent. **No rights are granted until payment is received by Michael Grecco Photography.**

4. **Model releases.** No model releases exist unless specified by Michael Grecco Photography. Client acknowledges that Michael Grecco Photography makes no warranty of model release for photographs supplied under this agreement.

5. **Notice and copies.** Client will provide Michael Grecco Photography with details of all photographs before use and provide Michael Grecco Photography with two free copies of all photographs appearing in print within seven days of printing.

6. **Return of photographs.** All photographs shall be returned undamaged within 30 days of client's receipt unless specifically agreed otherwise in writing by Michael Grecco Photography. Return of photographs must be by registered mail, air freight or bonded messenger, in all cases fully insured with return receipt requested. Client retains responsibility for safe return of photographs and liability for damage thereto until received by Michael Grecco Photography or his authorized agent. All photographs not returned within 30 days of receipt by the client will be subject to a holding charge of $5.00 per week per image unless otherwise agreed in writing.

7. **Lost or damaged photographs.** The parties acknowledge that it is difficult and impractical to determine the exact value of each photograph subject to this agreement. Therefore the parties agree that the reasonable value of each original photograph lost, damaged or altered is $1,500.00 per photograph unless another value is agreed on in writing. The parties also agree that $100.00 is a reasonable fee for each lost or damaged duplicate photograph of which Michael Grecco Photography holds the undamaged original. Acceptance of this liquidated damages provision by client is a material consideration for delivery by Michael Grecco Photography to the client of photographs governed by this agreement.

8. **Vicarious responsibility.** Client accepts responsibility and liability for all acts of its employees, agents, assigns, messengers, printers, shippers, researchers and all others acting at its request or on its behalf.

9. **Indemnity.** Client agrees to hold Michael Grecco Photography and any other photographer harmless and to indemnify them from all claims, liabilities, damages and expenses, including reasonable attorney's fees, arising out of any use of photographs supplied by Michael Grecco Photography including, but not limited to those arising from misuse of photographs, privacy claims and lack of model releases.

10. **Default.**
    a) All bills are due immediately upon receipt of the described photographs and must be paid before any use is made of photographs supplied. Use prior to full payment, or any misuse, damage or loss of photographs, will be a default under this agreement.
    b) Interest on any defaulted amount will occur from the date of first use, misuse, damage, loss or any other event until paid in full, at a rate of 1.65% monthly or the maximum rate permitted by law.
    c) A late charge of 1.65% monthly of the defaulted amount due but not paid will be assessed on the default. This late charge is intended by both parties as fair compensation to Michael Grecco Photography for the inconvenience occasioned by the default and the cost of carrying a defaulted account.
    d) All cost of collection of defaulted accounts, including interest and late charges, will be charged to client as an addition to the amount payable. These costs of collection include but are not limited to, reasonable attorney's fees and court costs.

11. **Governing Law.** This agreement is governed by the laws of the state of California.

12. **Attorney's fees.** In the event of litigation between parties to this agreement concerning the subject of this agreement, the prevailing party will be entitled to recover reasonable attorney's fees and the cost of suit from the other party.

13. **Waiver.** No action of Michael Grecco Photography other than a written waiver may be construed as waiving any part of this agreement, and no written waiver may be construed as waiving any part of the agreement beyond what it specifically covers.

14. **Arbitration.**
    a) Any controversy between the parties regarding the construction or application, and any claim arising out of this agreement or its default or breach, will be submitted to binding arbitration on written request by one party to the other.
    b) The parties will each appoint one person to hear and determine the dispute. These two arbitrators will choose a third arbitrator whose decision will be binding on both parties. The cost of any arbitration will be allocated among the parties in the proper proportions decided by the arbitrators, based on the merits of the case and each party's good faith efforts to handle the dispute.
    c) The arbitrators will be governed and enforced under the provisions of The California Arbitration Law, Code of Civil Procedure sections 1280 and following (or any other similar successor statute).

15. **Estimates.** All expense estimates are subject to normal trade variance of 10%.

16. **Copyright Jurisdiction.** Client hereby expressly consents to the jurisdiction of the Federal courts with respect to claims by Michael Grecco Photography under the Copyright Act of 1976, as amended.

17. **Overtime.** In the event a shoot extends beyond eight (8) consecutive hours, Michael Grecco Photography may charge for such excess time of assistants and freelance staff at the rate of one-and-one-half their hourly rates.

18. **Reshoots.** Client will be charged 100% fee and expenses for any reshoot required by Client. For any reshoot required because of an act of God or the fault of a third party, Michael Grecco Photography will charge no additional fee and Client will pay all expenses. If Michael Grecco Photography charges for special contingency insurance and is paid in full for the shoot, Client will not be charged for any expenses covered by insurance. A list of exclusions from such insurance will be provided on request.

19. **Cancellations and postponements.**
    a) Client is responsible for payment of all expenses incurred up to the time of cancellation, plus 50% of Michael Grecco Photography's fee. If notice of cancellation is given less than two (2) business days before the shoot date, Client will be charged 100% fee.
    b) Weather postponements. Unless otherwise agreed, Client will be charged 100% fee if postponement is due to weather conditions while on location and 50% fee if postponement occurs before departure to location.

20. **Severibility.** If any provision is found unenforceable, the remaining terms will be unaffected and will remain in force.

21. **Time is of the essence.** Time is of the essence with respect to payment and return of materials.

22. **Buy-outs.** Notwithstanding any of the foregoing, "buy-outs" entitle client to multiple uses of the photos with copyright notices whenever published. Commercial exploitation of any part of any photo in any form is strictly prohibited.

23. **Entire agreement.** This agreement contains the entire agreement between client and Michael Grecco Photography. It supersedes all other agreements, oral and written, between them with respect to the photographs, and no other agreement between them for the subject matter of this agreement is valid or binding. This agreement may be modified only in a writing signed by both parties.

CONFIDENTIAL                                   GRECCO000009

EXHIBIT 24

Close          2096 of 2110



Xena: Warrior Princess (1995)

Lucy Lawless in Xena: Warrior Princess (1995)

People   Lucy Lawless

Titles   Xena: Warrior Princess



EXHIBIT 25



Exhibit 25

EXHIBIT 26

Case 2:20-cv-09151-DSF-JC Document 64-3 Filed 03/24/21 Page 80 of 90 Page ID
#:1167
Case 1:07-cv-08171-CM-JCF Document 26-2 Filed 07/25/08 Page 9 of 11

Edward Greenberg, Esq. (ECG 5553)
EDWARD C. GREENBERG, P.C.
100 Park Avenue 33rd Floor
New York, NY 10017
(212) 697-8777

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MICHAEL GRECCO &
MICHAEL GRECCO PHOTOGRAPHY, INC.  07 CV 8171

    Plaintiffs,

             **DECLARATION OF**
             **MICHAELGRECCO IN**
             **OPPOSITION TO**
             **DEFENDANT'S**
  - against -       **MOTION FOR SUMMARY**
             **JUDGMENT**

THE EVERETT COLLECTION


    Defendants.

-----------------------------------------------------------------x
   I, MICHAEL GRECCO, declare as follows;

   1. I am the sole creator and copyright holder in all of the images involved in this

action. Any and all suggestions otherwise made by the defendant are completely false and

without any basis in fact. All of my licenses, including those provided to the defendants

and an example of which is annexed hereto as Exhibit B explicitly state that I maintain my

copyright.

   2. I have at all times maintained my copyright in every image involved in this

action.

   3. Every single image in this action was registered with the U.S. Copyright Office

as detailed in the complaint. I lecture other photographers on the methods suggested and

**Exhibit 26**

accepted by the US Copyright Office.  I have been in personal contact with the office via seminars and otherwise and am intimately familiar with the practices and procedures employed in Washington DC.

4.  I have never given permission to the defendants to use any of my images for any purpose or in any medium whatsoever.  The defendants by taking my images and making them available for viewing on the internet have violated my copyright in the images.

5.  By using my name in connection with their website the defendants have falsely suggested that I am affiliated with their site or that I have granted the defendants permission to use my images on their site.  This is also a fallacy.  I have never given the defendant permission to use my name, trademarks or copyrighted images to promote their site nor would I .

6.  Defendants claim that I have assigned all of my rights in the images away to the studios.  This, despite the fact that my licensing agreements maintain that I am the sole possessor of all copyrights in the images.

7.  The licensing agreements do not use the word "exclusive" because no exclusive rights have been granted to any of the images herein.  Contrary to defendant's assertions, I have licensed several of the images herein to third parties with the active consent or indifference of the studios.  Furthermore ALL rights in ALL images will revert back to me 35 years from the first license of the images to the studios.

8.  Furthermore, and with the studio's knowledge, I had authorized many of these images to be licensed through my former stock photo agency, Sygma.  Copies of several licenses for the subject images negotiated by myself or my agents on my behalf are attached hereto as Exhibit "A."

Case 2:20-cv-00151-DSF-JC   Document 64-3   Filed 03/24/21   Page 82 of 90   Page ID
Case 1:07-cv-08171-CM-JCF   Document 26-2   Filed 07/25/08   Page 3 of 3
#:1189

9. I have instructed my attorneys to inform the defendant that I am available to be deposed on several occasions. Defendant has never attempted to depose me. Had the defendant's deposed me I would have informed them that I have licensed these images, and that I have never ever assigned my copyright in any image.

10. Defendant's attorney chose to look at a box score of a baseball game rather than to view the game itself. Defendant has a false notion of the relationship between my and (the studios). That false notion remains because they refuses to depose me or examine the documents provided.

11. Obfuscating the truth is paramount. Getting to the truth irrelevant. This is not the first time that I have been engaged in litigation against Ms. Wolff and such tactics are familiar to me.

MICHAEL GRECCO

EXHIBIT 27

Case 2:20-cv-00151-DSF-JC Document 64-2 Filed 03/24/21 Page 84 of 90 Page ID
Case 1:07-cv-08171-CM-JCF Document 20 Filed 04/01/08 Page 2 of 3
#:1171

# EDWARD C. GREENBERG, P.C.

## COUNSELORS AT LAW

### 570 LEXINGTON AVENUE, 17ᵀᴴ FLOOR

### NEW YORK, NY 10022

TELEPHONE: (212) 697-8777
FACSIMILE: (212) 697-2528
ecglaw@aol.com

Of Counsel:
Debra S. Reiser

November 15, 2007

BY HAND
Toby Butterfield, Esq.
Cowan, DeBaets, Abrahams & Sheppard LLP
41 Madison Avenue 34ᵗʰ Floor
New York, New York 10010

Re: Grecco v Everett
Our File No.: C374P/06

Dear

Enclosed, as per your request, please find our clients original contracts with various film studios as well as his deposits to the copyright office for each image referenced in the Everett complaint.

The contracts and copyright deposits are grouped together by the images they govern. You will note that each and every contract indicates clearly and in no uncertain terms that "Michael Grecco retains the copyright to all photographs. Michael Grecco also retains the right to use any photograph for personal portfolio and promotional use."

Please feel free to contact us with any questions you may have.

Very truly yours,

Richard O'Brien
Law Clerk for Edward Greenberg

**Exhibit 27**

Case 2:20-cv-00151-DSF-JC Document 64-2 Filed 03/24/21 Page 85 of 90 Page ID #:1172
Case 1:07-cv-08171-CM-JCF Document 20 Filed 04/07/09 Page 20 of 30

P. 1

**MICHAEL GRECCO PHOTOGRAPHY, INC.**

GRECCO
UNLIMITED

1701 PIER AVENUE
SANTA MONICA CA 90405
TELEPHONE 310.452.4461
FACSIMILE 310.452.4462
EMAIL michael@greccophoto.com

# FAX

**DATE :**

**TO :**

**FACSIMILE # :**

**FROM :**

**REGARDING :**

**PAGE 1 OF :**

November 14, 2007

Edward Greenberg

212-697-2528

Michael Grecco

10

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

Dear Edward Greenberg,

Please find to follow a copy of the original package that was send to the Copy Right office for the Xena photographs. Along with a copy of the client invoice and usage terms from the job.

Please let me know if you need anything else.

All the best,

Rebecca D. Shulman

Case 2:20-cv-00151-DSF-JC Document 61-2 Filed 03/24/21 Page 86 of 90 Page ID
Case 2:20-cv-00151-DSF-JC Document 1 Filed 01/07/20 Page 90 of 90
#:1173

## ASSIGNMENT INVOICE

TO: MAGGIE HAMILTON
DIRECTOR OF MARKETING
HAMILTON GRAY
3519 WEST SIXTH STREET
LOS ANGELES CA 90020
213-380-3933

INVOICE#    1910
DATE:    6/1/1997
P.O.#

JOB FOR: ERIK THOMPSON
  MCA TELEVISION GROUP

JOB TITLE:    *HERCULES XENA*

DESCRIPTION:

FOR PHOTOGRAPHING *HERCULES AND XENA* IN AUCKLAND, NEW ZEALAND FROM 5/6/97 TO 5/13/97.

USE:

UNLIMITED USAGE RIGHTS ARE GRANTED TO THE CLIENT.   MICHAEL GRECCO RETAINS THE COPYRIGHT TO ALL PHOTOGRAPHS.   MICHAEL GRECCO ALSO RETAINS THE RIGHT TO USE ANY PHOTOGRAPH FOR PERSONAL PORTFOLIO AND PROMOTIONAL USE.

FEE:

| | | | |
|---|---|---|---|
| 2 DAY(S) CREATIVE FEE @ | | $2,250.00 | $4,500.00 |
| 2 DAY(S) TRAVELING @ | | $375.00 | $750.00 |
| 2 DAY(S) LOCATION SCOUTING @ | | $375.00 | $750.00 |
| 2 DAY(S) PREPARATION @ | | $375.00 | $750.00 |
| | | FEE TOTAL: | **$6,750.00** |

LABOR:

| | | | |
|---|---|---|---|
| 9 DAY(S) ASSISTANT #1 @ | | $175.00 | $1,575.00 |
| 3 DAY(S) ASSISTANT #2 @ | | $150.00 | $450.00 |
| 2 DAY(S) ASSISTANT #3 @ | | $150.00 | $300.00 |
| | | LABOR  TOTAL: | **$2,325.00** |

MATERIALS:

| | | | |
|---|---|---|---|
| 288 ROLLS OF 2 1/4 COLOR @ | | $10.00 | $2,880.00 |
| 19 FUJI INSTANT FILM (DOUBLE) @ | | $30.00 | $570.00 |
| 288 ROLL(S) PROCESSED @ | | $20.00 | $5,760.00 |
| | | MATERIALS  TOTAL: | **$9,210.00** |

PRODUCTION:

| | |
|---|---|
| EQUIPMENT RENTALS: | $2,222.62 |
| SET CONSTRUCTION ( PLEXIGLASS) | $264.89 |
| EXPENDABLES: TAPE, GELS, FILTERS, BATTS., CINEFOIL, ETC. | $200.00 |
| AIRFARE WITH EXTRA BAGGAGE | $2,628.24 |
| HOTEL | $423.79 |
| VAN RENTALS | $807.93 |
| GRATUITIES | $62.00 |
| TAXIS | $48.45 |
| MEALS | $177.44 |
| PHONE & FAXES: LOCAL, L.D., & CELL W/L.D. & ACCESS | $58.50 |
| MESSENGERS TO AND FROM LAB | $72.00 |
| PRODUCTION  TOTAL: | **$6,965.86** |

| | |
|---|---|
| SUBTOTAL | $25,250.86 |
| SALES TAX @ 0.00% | $0.00 |
| FINAL  TOTAL | $25,250.86 |
| ADVANCE/PAYMENT | $25,250.86 |
| BALANCE    U.S. | **$0.00** |

**NET 30 - DUE BY 7/1/97**

PLEASE MAKE CHECKS PAYABLE TO "MICHAEL GRECCO". SS# 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

## TERMS AND CONDITIONS

1. **Acceptance of terms.** The photographs which are subject of this agreement are sent on the condition that the terms stated below are agreed to in full. Holding photographs beyond five days constitutes acceptance of these terms, including agreement to the liquidated damages provision. If you do not agree to all the terms of this agreement, please return all photographs at once.

2. **Copyright protection/credit line.** Client acknowledges that Michael Grecco Photography owns the copyright to the photographs and agrees to take all necessary precautions to insure protection of such copyright.
   a) For non-editorial use, client will provide copyright protection by placing proper copyright notice on any use. Proper notice is © (year) Michael Grecco.
   b) For editorial use, a credit line in the form of (year) Michael Grecco shall appear adjacent to or with in the photograph itself in type no smaller than that of related text. Failure to include the foregoing shall result in a triple fee. Client acknowledges that such treble fee is fair and reasonable for the loss of recognition and lack of copyright protection resulting from the failure to give proper copyright notice or credit line.

3. **Scope of license.** Rights granted are for one use only (excluding buy-outs). Rights granted under this license may not be assigned or transferred without written permission. Materials may not be reproduced, copied, projected, combinated or otherwise used without express written consent. No rights are granted until payment is received by Michael Grecco Photography.

4. **Model releases.** No model releases exist unless specified by Michael Grecco Photography. Client acknowledges that Michael Grecco Photography makes no warranty of model release for photographs supplied under this agreement.

5. **Notice and copies.** Client will provide Michael Grecco Photography with details of all photographs before use and provide Michael Grecco Photography with two free copies of all photographs appearing in print within seven days of printing.

6. **Return of photographs.** All photographs shall be returned undamaged within 30 days of client's receipt unless specifically agreed otherwise in writing by Michael Grecco Photography. Return of photographs must be by registered mail, air freight or bonded messenger, in all cases fully insured with return receipt requested. Client retains responsibility for safe return of photographs and liability for damage thereto until received by Michael Grecco Photography or his authorized agent. All photographs not returned within 30 days of receipt by the client will be subject to a holding charge of $5.00 per week per image unless otherwise agreed in writing.

7. **Lost or damaged photographs.** The parties acknowledge that it is difficult and impractical to determine the exact value of each photograph subject to this agreement. Therefore the parties agree that the reasonable value of each original photograph lost, damaged or altered is $1,500.00 per photograph unless another value is agreed on in writing. The parties also agree that $100.00 is a reasonable fee for each lost or damaged duplicate photograph of which Michael Grecco Photography holds the undamaged original. Acceptance of this liquidated damages provision by client is a material consideration for delivery by Michael Grecco Photography to the client of photographs governed by this agreement.

8. **Vicarious responsibility.** Client accepts responsibility and liability for all acts of its employees, agents, assigns, messengers, printers, shippers, researchers and all others acting at its request or on its behalf.

9. **Indemnity.** Client agrees to hold Michael Grecco Photography and any other photographer harmless and to indemnify them from all claims, liabilities, damages and expenses, including reasonable attorney's fees, arising out of any use of photographs supplied by Michael Grecco Photography including, but not limited to those arising from misuse of photographs, privacy claims and lack of model releases.

10. **Default.**
    a) All bills are due immediately upon receipt of the described photographs and must be paid before any use is made of photographs supplied. Use prior to full payment, or any misuse, damage by loss of photographs, will be a default under this agreement.
    b) Interest on any defaulted amount will accrue from the date of first use, misuse, damage, loss or any other event until paid in full, at a rate of 1.65% monthly or the maximum rate permitted by law.
    c) A late charge of 1.65% monthly of the defaulted amount due before paid will be assessed on the default. This late charge is intended by both parties as fair compensation to Michael Grecco Photography for the inconvenience occasioned by the default and the cost of carrying a defaulted account.
    d) All cost of collection of defaulted accounts, including interest and late charges, will be charged to client as an addition to the amount payable. These costs of collection include but are not limited to, reasonable attorney's fees and court costs.

11. **Governing Law.** This agreement is governed by the laws of the state of California.

12. **Attorney's fees.** In the event of litigation between parties to this agreement concerning the subject of this agreement, the prevailing party will be entitled to recover reasonable attorney's fees and the cost of suit from the other party.

13. **Waiver.** No action of Michael Grecco Photography other than a written waiver may be construed as waiving any part of this agreement, and no written waiver may be construed as waiving any part of the agreement beyond what it specifically covers.

14. **Arbitration.**
    a) Any controversy between the parties regarding the construction or application, and any claim arising out of this agreement or its default or breach, will be submitted to binding arbitration on written request by one party to the other.
    b) The parties will each appoint one person to hear and determine the dispute. These two arbitrators will choose a third arbitrator whose decision will be binding on both parties. The cost of any arbitration will be allocated among the parties in the proper proportion decided by the arbitrators, based on the merits of the case and each party's good faith efforts to handle the dispute.
    c) The arbitrators will be governed and enforced under the provisions of the California Arbitration Law, Code of Civil Procedure sections 1280 and following (or any other similar successor statute).

15. **Estimates.** All expense estimates are subject to normal trade variance of 10%.

16. **Copyright Jurisdiction.** Client hereby expressly consents to the jurisdiction of the Federal courts with respect to claims by Michael Grecco Photography under the Copyright Act of 1976, as amended.

17. **Overtime.** In the event shoot extends beyond eight (8) consecutive hours, Michael Grecco Photography may charge for such excess time of assistants and freelance staff at the rate of one-and-one-half their hourly rates.

18. **Reshoots.** Client will be charged 100% fee and expenses for any reshoot required by Client. For any reshoot required because of an act of God or the fault of a third party, Michael Grecco Photography will charge no additional fee and Client will pay all expenses. If Michael Grecco Photography charges for special contingency insurance and is paid in full for the shoot, Client will not be charged for any expenses covered by insurance. A list of exclusions from such insurance will be provided on request.

19. **Cancellations and postponements.**
    a) Client is responsible for payment of all expenses incurred up to the time of cancellation, plus 50% of Michael Grecco Photography's fee. If notice of cancellation is given less than two (2) business days before the shoot date, Client will be charged 100% fee.
    b) Weather postponements. Unless otherwise agreed, Client will be charged 100% fee if postponement is due to weather conditions while on location and 50% fee if postponement occurs before departure to location.

20. **Severability.** If any provision is found unenforceable, the remaining terms will be unaffected and will remain in force.

21. **Time is of the essence.** Time is of the essence with respect to payment and return of materials.

22. **Buy-outs.** Notwithstanding any of the foregoing, "buy-outs" entitle client to multiple uses of the photos with copyright notices whenever published. Commercial exploitation of any part of any photo in any form is strictly prohibited.

23. **Entire agreement.** This agreement contains the entire agreement between client and Michael Grecco Photography. It supersedes all other agreements oral and written, between them with respect to the photographs, and no other agreement between them for the subject matter of this agreement is valid or binding. This agreement may be modified only by a writing signed by both parties.

Case 2:20-cv-90154-DSF-JC Document 64-3 Filed 03/24/21 Page 88 of 90 Page ID
Case 1:07-cv-08127-CM-JCF Document 20-9 Filed 07/01/08 Page 19 of 30 P. 1
#:1175

MICHAEL GRECCO PHOTOGRAPHY, INC.

1701 PIER AVENUE
SANTA MONICA CA 90405
TELEPHONE 310.452.4461
FACSIMILE 310.452.4462
EMAIL michael@greccophoto.com

# FAX

**DATE :**

**TO :**

**FACSIMILE # :**

**FROM :**

**REGARDING :**

**PAGE 1 OF :**

November 14, 2007

Edward Greenberg

212-697-2528

Michael Grecco

8

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

Dear Edward Greenberg,

Please find to follow a copy of the original package that was send to the copy right office for the X-Files photographs. Along with a copy of the client invoice and usage terms from the job.

Please let me know if you need anything else.

All the best,

Rebecca D. Shulman

Case 2:20-cv-09054-DSF-JC Document 64-3 Filed 03/24/21 Page 20 of 20 Page ID
Case 1:20-cv-08181-CM-JCF Document 25-9 Filed 07/01/09 Page 20 of 30
#:1176

P.2

MICHAEL GRECCO PHOTOGRAPH 3104524462

## ASSIGNMENT INVOICE

TO: ERIN O'DONNELL
ACCOUNT EXECUTIVE
KESWICK HAMILTON SYGMA
3519 WEST SIXTH STREET
LOS ANGELES CA 90020
213-380-3933

INVOICE# 1211
DATE: 6/25/1993
P.O.#

JOB FOR:

JOB TITLE: X FILES

DESCRIPTION:
FOR PHOTOGRAPHING THE X FILES FOR FOX BROADCASTING.

USE:
F.B.C. ALL RIGHTS FOR PUBLICITY AND ADVERTISING ONLY. MICHAEL GRECCO PHOTOGRAPHY,
INC. RETAINS THE COPYRIGHT TO ALL PHOTOGRAPHS AND THE RIGHT TO USE ANY
PHOTOGRAPHS FOR PERSONAL PORTFOLIO AND PROMOTIONAL USE.

FEE:

| | | |
|---|---|---|
| 1 DAY(S) CREATIVE FEE @ | $2,625.00 | $2,625.00 |
| 1 DAY(S) PREPARATION @ | $1,312.50 | $1,312.50 |
| | FEE TOTAL: | **$3,937.50** |

LABOR:

| | | |
|---|---|---|
| 2.5 DAY(S) ASSISTANT #1 @ | $150.00 | $375.00 |
| 2 DAY(S) ASSISTANT #2 @ | $150.00 | $300.00 |
| 2 DAY(S) ASSISTANT #3 @ | $150.00 | $300.00 |
| 24 HOURS OVER TIME @ | $22.50 | $540.00 |
| | LABOR TOTAL: | **$1,515.00** |

MATERIALS:

| | | |
|---|---|---|
| 46 ROLLS OF 2 1/4 COLOR @ | $10.00 | $460.00 |
| 45 ROLLS OF 2 1/4 B & W @ | $10.00 | $450.00 |
| 12 POLAROID 669 @ | $20.00 | $240.00 |
| 91 ROLLS PROCESSED WITH EXTRA SNIPS @ | $20.00 | $1,820.00 |
| 400 IMAGES SLEEVED @ | $0.10 | $40.00 |
| | MATERIALS TOTAL: | **$3,010.00** |

PRODUCTION:

| | | |
|---|---|---|
| EQUIPMENT RENTALS: CAMERAS AND LIGHTS | | $1,195.00 |
| EXPENDABLES: TAPE, GELS, FILTERS, BATTS., CINEFOIL. | | $100.00 |
| INSURANCE | | $100.00 |
| SET CONSTRUCTION: BALANCE BILLED DIRECT TO FOX | | $2,925.00 |
| MEALS | | $37.33 |
| 100 MILES @ | $0.34 | $34.00 |
| PHONE CALLS L.D. AND CEL. W/ ACCESS | | $50.00 |
| MESSENGERS TO AND FROM LAB | | $72.00 |
| | PRODUCTION TOTAL: | **$4,513.33** |

| | |
|---|---|
| SUBTOTAL | $12,975.83 |
| SALES TAX @ 0.00% | $0.00 |
| FINAL TOTAL | $12,975.83 |
| ADVANCE/PAYMENT | $12,975.83 |
| BALANCE U.S. | **$0.00** |

**NET 30 · DUE BY 7/25/93**

PLEASE MAKE CHECKS PAYABLE TO "MICHAEL GRECCO", SS# 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

## TERMS AND CONDITIONS

1. **Acceptance of terms.** The photographs which are subject of this agreement are sent on the condition that the terms stated below are agreed to in full. Holding photographs beyond five days constitutes acceptance of these terms, including agreement to the liquidated damages provision.
   If you do not agree to all the terms of this agreement, please return all photographs at once.

2. **Copyright protection/credit line.** Client acknowledges that Michael Grecco Photography owns the copyright to the photographs and agrees
   to take all necessary precautions to insure protection of such copyright:
   a) For non-editorial use, client will provide copyright protection.
   b) For editorial use, a credit line in the form © (year) Michael Grecco will appear adjacent to or within the photograph itself in type no smaller than that of related text. Failure to include the foregoing shall result in a triple fee. Client acknowledges that such failure is fair and reasonable for the loss of recognition and lack of copyright protection resulting from the failure to give proper copyright notice, or credit line.

3. **Scope of license.** Rights granted are for one use only (including buy outs). Rights granted under this license may not be assigned or transferred without written permission. Materials may not be reproduced, copied, projected, transmitted or otherwise used without express written consent. No rights are granted until payment is received by Michael Grecco Photography.

4. **Model releases.** No model releases exist unless specified by Michael Grecco Photography. Client acknowledges that Michael Grecco Photography makes no warranty of model release for photographs supplied under this agreement.

5. **Notice and copies.** Client will provide Michael Grecco Photography with details of all photograph use and provide Michael Grecco Photography with two free copies of all photographs appearing in print within seven days of printing.

6. **Return of photographs.** All photographs shall be returned undamaged within 30 days of client's receipt unless specifically agreed otherwise in writing by Michael Grecco Photography. Return of photographs must be by professional, air or registered mail or freight or bonded messenger. In all cases fully insured with return receipt requested. Client retains responsibility for safe return of photographs and liability for damage thereto until received by Michael Grecco Photography or his authorized agent. All photographs not returned within 30 days of receipt by the client will be subject to a holding charge of $5.00 per week per image unless otherwise agreed in writing.

7. **Lost or damaged photographs.** The parties acknowledge that it is difficult and impractical to determine the actual value of each photograph subject to this agreement. Therefore the parties agree that the reasonable value of each original photograph lost, damaged or altered is $1,500.00 per photograph unless another value is agreed to in writing. The parties also agree that $100.00 is a reasonable fee for each lost or damaged duplicate photograph of which Michael Grecco Photography holds the undamaged original. Acceptance of this liquidated damages provision by client is a material consideration for delivery by Michael Grecco Photography to the client of photographs governed by this agreement.

8. **Vicarious responsibility.** Client accepts responsibility and liability for all acts of its employees, agents, assigns, messengers, printers, shippers, researchers and all others acting at the request or on its behalf.

9. **Indemnity.** Client agrees to hold Michael Grecco Photography and any other photographer harmless and to indemnify them from all claims, liabilities, damages and expenses, including reasonable attorney's fees, arising out of any use of photographs supplied by Michael Grecco Photography including, but not limited to those arising from misuse of photographs, privacy claims and lack of model releases.

10. **Default.**
   a) All bills are due immediately upon receipt of the described photographs and must be paid before any use is made of photographs supplied. Use prior to full payment of any invoice, damage or loss of photographs, will be a default under this agreement.
   b) Interest on any defaulted amount will occur from the date of loss, use, misuse, damage or loss of any other event until paid in full, at a rate of 1.65% monthly, or the maximum rate permitted by law.
   c) A late charge of 1.65% monthly, if the defaulted amount due but not paid will be assessed on the default. This late charge is intended by both parties as fair compensation to Michael Grecco Photography for the inconvenience occasioned by the default and the cost of carrying a defaulted account.
   d) All cost of collection of defaulted accounts, including interest and late charges, will be charged to client as an addition to the amount payable. These costs of collection include but are not limited to, reasonable attorney's fees and court costs.

11. **Governing law.** This agreement is governed by the laws of the state of California.

12. **Attorney's fees.** In the event of litigation between parties to this agreement concerning the subject of this agreement, the prevailing party will be entitled to recover reasonable attorney's fees and the cost of suit from the other party.

13. **Waiver.** No action of Michael Grecco Photography other than a written waiver may be construed as waiving any part of the agreement beyond what it specifically covers; may be construed as waiving any part of the agreement beyond what it specifically covers.

14. **Arbitration.**
   a) Any controversy between the parties regarding the construction or applications of this agreement, and any claim arising out of this agreement or its default or breach, will be submitted to binding arbitration on written request by one party to the other.
   b) The parties will each appoint one person to hear and determine the dispute. These two arbitrators will choose a third arbitrator whose decision will be binding on both parties. The cost of any arbitration will be allocated among the parties in the proper proportions decided by the arbitrators, based on the merits of the case and each party's good faith efforts to handle the dispute.
   c) The arbitrators will be governed and enforced under the provisions of the California Arbitration Law, Code of Civil Procedure section 1280 and following, or any other similar supplemental law.

15. **Estimates.** All expense estimates are subject to normal trade variance of 10%.

16. **Copyright jurisdiction.** Client hereby expressly consents to the jurisdiction of the Federal courts with respect to claims by Michael Grecco Photography under the Copyright Act of 1976, as amended.

17. **Overtime.** In the event of a shoot extends beyond eight (8) consecutive hours, Michael Grecco Photography may charge for such excess time of assistants and freelancers left at the rate of one-and-one-half their hourly rates.

18. **Reshoots.** Client will be charged 100% fee and expenses for any reshoots required by client. For any reshoot required because of an act of God or the fault of a third party, Michael Grecco Photography will charge no additional fee and Client will pay all expenses. If Michael Grecco Photography charges for special contingency insurance and is paid in full for the shoot. Client will not be charged for any expenses covered by insurance. A list of exclusions from such insurance will be provided on request.

19. **Cancellations and postponements.**
   a) Client is responsible for payment of all expenses incurred up to the time of cancellation, plus 50% of Michael Grecco Photography's fee. If notice of cancellation is given less than two (2) business days before the shoot date, Client will be charged 100% fee.
   b) Weather postponements. Unless otherwise agreed, Client will be charged 100% fee if postponement is due to weather conditions while on location and 50% fee if postponement occurs before departure to location.

20. **Separability.** If any provision is found unenforceable, the remaining terms will be unaffected and will remain in force.

21. **Time is of the essence.** Time is of the essence with respect to payment and return of materials.

22. **Buy-outs.** Notwithstanding any of the foregoing, "buy-outs" entitle Client to multiple uses of the photos with copyright notices, whenever published. Commercial exploitation of any part of any photo in any form is strictly prohibited.

23. **Entire agreement.** This agreement contains the entire agreement between client and Michael Grecco Photography. It supersedes all other agreements, oral and written, between them with respect to the photographs, and no other agreement between them for the subject matter of this agreement is valid or binding. This agreement may be modified only in a writing signed by both parties.