Joshua Koltun (Bar No. 173040)
Attorney
1 Sansome Street
Suite 3500, No. 500
San Francisco, California 94104
Telephone: 415.680.3410
Facsimile: 866.462.5959
joshua@koltunattorney.com

Attorney for Defendant and Counterclaimant
Livingly Media, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MICHAEL GRECCO PRODUCTIONS, INC. d/b/a "Michael Grecco Photography," a California corporation,

        Plaintiff,

        v.

LIVINGLY MEDIA, INC., a Delaware Corporation; and DOES 1-10,

        Defendants.

Case No.: 2:20-c-00151 DSF-JC

SEPARATE STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MICHAEL GRECCO PRODUCTIONS' MOTION FOR SUMMARY ADJUDICATION

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

Pursuant to Federal Rules of Civil Procedure Rule 56, Local Rule 56-1, and the [Standing] Order Re: Motions for Summary Judgment of this Court, Defendant and Counterclaimant Livingly Media, Inc. submits this Statement of Genuine Disputes in support of its Opposition to Grecco's Motion for Summary Adjudication, filed herewith.

Insofar as Grecco has proposed "Conclusions of Law 1 through 31" that simply reiterate the arguments and citations in its memorandum of points and authorities, Livingly has responded with its own Memorandum of Points and Authorities in Opposition to this motion ("Opp.")

Insofar as some of Grecco's proposed "Uncontroverted Facts" are not exclusively factual, but contain legal conclusions or premises, Livingly will respond by briefly referencing the legal arguments presented in its Opposition memorandum and referencing evidence marshalled in support of its additional material facts set forth below.

Livingly notes that the additional material facts correspond directly to the facts Livingly relied upon on its motion for summary judgment, and that the evidence referenced in the additional material facts are to the evidence submitted in connection with that motion, to wit: Declarations of Joshua Koltun (Application to File Under Seal pending [DE 42]), Erica Carter (DE 35); Richard Licata (DE 36), , Deanna Shin (DE 37), Areeba Abid (D.E. 38), Lani Conway (DE 39), Kimia Madani (DE 40); Cecily Trowbridge (DE 41).

- 1 -

Joshua Koltun ATTORNEY

### Disputes with Grecco's Statement of Uncontroverted Facts

| *Grecco's Proposed Facts* | *Disputes* |
|---|---|
| 1.      Between July of 2016 and April of 2019, Livingly used four of Grecco's photographs without authorization in five different listicle articles and quizzes, pieces with titles such as "Are You Mulder or Scully from the X-Files" and "Costumes Inspired by Badass Females." | Undisputed that Livingly published the first Article in July 2016 and took all of the Articles down by April 2019.<br><br>The names of each Article are set forth in Fact 72 below, and the texts of the portions of each Article illustrated by one of the Photographs are in the screenshots incorporated into the Complaint.<br><br>Undisputed that Grecco did not directly provide a written license to Livingly.<br><br>Livingly otherwise disputes the conclusory characterization "unauthorized," on the grounds that: by virtue of the derivative nature of the Photographs, their promotional purpose, the custom and practice in the industry, and the Grecco's dealings and contractual arrangements with the studios, Grecco licensed the promotional use of the Photographs, which impliedly sublicensed the Photographs for editorial use by the media, and that Livingly's use was within the scope of that promotional license.  See Facts 20-64, 72, 73 below, and Opp., section I |
| 2.      In this action, those photographs are styled Subject Photograph 1, Subject Photograph 2, Subject Photograph 3, and Subject Photograph 4. | Undisputed.  Livingly has been using the term "Photograph 1, 2, etc." for the same Photographs. |

- 2 -

Joshua Koltun ATTORNEY

| | |
|---|---|
| 3. Subject Photograph 1 is an original photograph by Michael Grecco which depicts the X-Files characters, Mulder and Scully, as portrayed by David Duchovny and Gillian Anderson. | Undisputed. |
| 4. In March of 1995, Plaintiff's client, USA Weekend, engaged Michael Grecco for an editorial photoshoot of the X-Files characters. | Undisputed. |
| 5. Mr. Grecco retained all rights in Subject Photograph 1 other than a one-time North America only publication, without the right to transfer to a third-party, reprint, or sell the image. | The phrase "retained all rights" is a legal conclusion and is also ambiguous. Livingy disputes it, as follows: First, because the Photographs are derivative works, as a matter of law, of the copyrighted show owned by Fox, Grecco's rights are subject to Fox's promotional purpose in allowing him to create the Photographs. Opp., section I.A, Facts 3, 7, 9, 11, 20-25 herein. Second, insofar as Grecco appears to be using the term "retained all rights, other than" to refer to his licensing arrangements with respect to the Photograph, he is relying on what he refers to as his "contract" in his declaration. (Grecco Decl., ¶¶ 2, 3, Exh. 2. But that "contract" is not the relevant operative agreement. This is an post-photoshoot invoice that Grecco sent to his own agent, Maggie Hamilton, who used different language in her own communications with the studios and other entities that engaged Grecco's services. See Opp., section I.D, and Facts 41-54, 59. Third, the operative agreement with Fox concerning this photograph is the 2019 Agreement, which defined "Gallery Photographs" as including all X-files Photographs Grecco took and which granted Fox promotional/publicity rights, in perpetuity and retrospectively, to the "Gallery Photographs." Fact 62. |

- 3 -

Joshua Koltun ATTORNEY

| | |
|---|---|
| 6.      Plaintiff obtained a written transfer of ownership from Michael Grecco for Subject Photograph 1 and registered that work with the United States Copyright Office on September 8, 2003 under Registration No. VA 1-232-596. | Undisputed. |
| 7.      Subject Photograph 2 is also an original photograph by Michael Grecco of the X-Files characters Mulder and Scully, as portrayed by David Duchovny and Gillian Anderson. | Undisputed. |
| 8.      Plaintiff obtained a written transfer of ownership from Michael Grecco for Subject Photograph 2 and registered that work with the United Copyright Office on January 22, 2017 under Registration No.  VA2-030-741 | Undisputed. |
| 9.      Subject Photograph 3 is another original photograph by Michael Grecco of the X-Files characters, Mulder and Scully, as portrayed by David Duchovny and Gillian Anderson. | Undisputed. |
| 10.     Plaintiff obtained a written transfer  of Ownership from Michael Grecco for Subject Photograph 3 and registered that work with the United Copyright Office on July 27, 2017 under Registration No.VA 2-063-319. | Undisputed. |
| 11.     Subject Photograph 4 is an original photograph by Michael Grecco which depicts the Xena the Warrior Princess character, as portrayed by Lucy  Lawless. | Undisputed. |
| 12.     Plaintiff obtained a written transfer  of ownership from Michael Grecco for Subject Photograph 4 and registered that work with the United Copyright Office on July 7, 2010 under Registration No. VA  1-431-698. | Undisputed. |

- 4 -

| | |
|---|---|
| 13. In December of 2019, Plaintiff learned of Defendant's unauthorized use of the Subject Photographs on its websites (the "Infringing Content"). | Disputed, insofar as the implication is that this is when Plaintiff *first* learned of Livingly's use of the Photographs. Grecco's counsel sent cease and desist letters to Livingly in February and April 2019, whereupon Livingly removed the Photographs.. See Facts 80-84.

*See also* Uncontroverted Fact 1 above: "Between July of 2016 ***and April of 2019***, Livingly used four of Grecco's photographs …" (emphasis added). |
| 14. Despite its written policies instructing its employees not to use images if the original source is not available, and not to publish photographs without source information, Defendant did just that with each of Grecco's Subject Photographs. | Disputed. Insofar as this refers to Livingly's "written policies," Grecco's cited evidence in no way supports the proposition.

(Evidentiary Objection: lacks foundation.)

Dispute that Livingly failed to give source information. Livingly notes that the text of three of the Articles listed the source as "Fox," (See Complaint, D.E. 1, at p. 4 and 6), which reflected the good faith belief of the authors that the original source for a promotional photograph of the X-files characters would have been Fox. See Declarations of Abid, Conway, Madani, Trowbridge, ¶¶ 2, 3. |

Joshua Koltun ATTORNEY

- 5 -

Joshua Koltun ATTORNEY

| | |
|---|---|
| 15.    Indeed, Defendant's employees admitted that they would regularly search for images on Google, and if the image "appeared" to them to be promotional (based on upon uncertain and indefinite criteria) they felt entitled to use the images on Defendant's websites. | Undisputed, except as follows.<br><br>Disputed, insofar as "indeed," in conjunction with paragraph 14, carries the suggestion that in so doing Livingly's staff violated its policies.  On the contrary, Livingly's employees all testified (at their depositions, and in their declarations) that the foregoing conduct was consistent with Livingly's policies. Declarations of Abid, Conway, Madani, Trowbridge, ¶ 3.<br><br>(As to that suggestion: Evidentiary Objection: lacks foundation, best evidence).<br><br>Dispute the characterization of "uncertain and indefinite criteria."  The authors testified that they recognized the photographs as promotional on the basis that they depicted the actors who played the lead characters on the television shows, in their respective roles.  This is an accurate description of the Photograph, as shown by Grecco's own Uncontroverted Facts 3, 7, 9, 11<br><br>Disputed, insofar as there is any implication that the photographs "appeared," *but were not,* promotional. The photographs *were* promotional. See Fact 1, __, __. |

Joshua Koltun ATTORNEY

| 16.    There is no dispute that Defendant accessed and used the Subject Photographs. | Undisputed, except as follows: Insofar as there is any implication, here, or in the Doniger declaration, that Livingly "admitted" that it had accessed Grecco's Photographs *on Grecco's own "licensing" website*, this was not admitted and was, in fact, denied.  See Doniger Decl., ¶ 5 & Exh. 13 (See Responses 7, 13, 14, 16.)  See also Declarations of Abid, Conway, Madani, Trowbridge, ¶ 1, 3 (would not have used Photograph if it had notice of copyright claim by Photographer). |
|---|---|
| | (Evidentiary objection to Doniger characterizing the Response: the document speaks for itself). |
| | Livingly does not dispute that the photographs it published were taken by Grecco.  Livingly disputes "accessed" in the following limited sense.  Livingly's admission of "access" (Request for Admission 15) was based on the same legal premise as Grecco's motion, to wit: that the photographs Livingly published and Grecco's copyrighted Photographs are "strikingly similar."  *See* MSJ at 5:18-19 and 6-10.  However, subsequently, Grecco testified that he took many photographs that were very similar, even visually indistinguishable from the each other. Koltun Decl., Exh. A (Grecco Deposition) at 153:1-155:7.  Grecco may contend that this (somehow) shows that Livingly must have accessed photographs that the Studios never had access to, and therefore were not subject to the promotional license. But the fact that he took many similar (if not visually indistinguishable) pictures creates an issue of fact as to whether the photograph Livingly copied is the same photograph Grecco copyrighted.  Livingly's Response to Grecco's Request for Admission 15 indicates no more than that the image it published is visually similar to the copyrighted Photograph. |

- 7 -

| | |
|---|---|
| 17.     After Grecco notified Livingly of the infringement, Livingly's employees began a review of Livingly's sites to identify any unauthorized postings. | Undisputed, except as to the conclusory characterizations ("infringement," "unauthorized."). Livingly employees tried to find any still photographs of Xena or X-Files, without respect to whether they had information the photograph was by Grecco. Shinn Declaration, ¶ 3. See Fact 81.

(Evidentiary objection to Doniger Declaration, ¶ 7, insofar as it purports to characterize or interpret the communications, which speak for themselves.) |
| 18.     In discovery, they admitted to knowing that old posts were "messed up" and that certain images would need to be "swapped" for new images. | Undisputed that the attached communications are authentic, and contained the quoted words.

Disputed insofar as there is any implication that the employees "admitted" that they *had known at the time of publication* that the images were "messed up." (Whatever that means).

(Evidentiary objection to Doniger Declaration, ¶ 7, insofar as it purports to characterize or interpret the communications, which speak for themselves.) |

Joshua Koltun ATTORNEY

- 8 -

Joshua Koltun ATTORNEY

| | |
|---|---|
| 19. Further, Defendant's former editor, who used Subject Photograph 1, informed her colleagues that she was searching her records to determine if Subject Photograph 1 may have been in a press kit from Fox Corporation ("Fox"), while simultaneously conceding that Subject Photograph 1 would not be in a Fox press kit because "that is not how it works." | Undisputed that the attached communication is authentic.<br><br>Disputed insofar as there is any implication that the communication indicates that the Photograph would *never* have been in a Fox press kit, or was not a promotional photograph. Areeba Abid testified (as did all of Livingly's authors), that Fox's *website* only contained press kits as to shows that were currently broadcast *on Fox*, not to older shows. Doniger Decl., Exh. 11, 18:14-22, 22:13-23:8.<br><br>(Evidentiary objection to Doniger Declaration, ¶ 7, insofar as it purports to characterize or interpret the communications, which speak for themselves.) |

### *Livingly's Additional Material Facts*

| Livingly's Proposed Facts | Evidence |
|---|---|
| 20. This case involves four promotional still photographs ("Photographs") for television shows. | Deposition of Plaintiff ("Depo.") (Koltun Decl., Exh A) 58:4-61:21<br><br>Koltun Decl., Exh. 18, ¶19, Exh. 19, ¶¶ 21, 24.<br><br>Counterclaim (D.E. 11); Answer to Counterclaim (D.E. 15), ¶ 8. |
| 21. Photographs 1, 2 and 3 depict the actors David Duchovny and Gillian Anderson in their respective roles as Agents Mulder and Scully in the *X-files*, and Photograph 4 depicts the actress Lucy Lawless in the title role of *Xena, Warrior Princess.* | Depo. (Koltun Decl., Exh A) 58:4--61:21<br><br>Koltun Decl., Exh. 18, ¶ 19, Exh. 19, ¶¶ 21, 24.<br><br>Counterclaim (D.E. 11); Answer to Counterclaim (D.E. 15), ¶ 5 |
| 22. The terms "promotional [still] photograph" and "publicity [still | Depo. (Koltun Decl., Exh A) 80:7-82:14 |

- 9 -

Joshua Koltun ATTORNEY

| | |
|---|---|
| photograph" are interchangeable. | |
| 23.    A license for "editorial" use means a direct license to a media outlet to use the photograph, whereas "promotional" or "publicity" use means that the studio is licensed to send the photograph to the media so that the media might use the photograph in editorial use. | Depo. (Koltun Decl., Exh A) 80:7-82:14 |
| 24.    The Photographs were taken by Michael Grecco, who operates through the corporate entity Michael Grecco Productions, Inc., previously known as Michael Grecco Photography, Inc., plaintiff herein ("Grecco"). | Complaint, ¶ 4.<br><br>Depo. (Koltun Decl., Exh. A) 15:21-16:7 |
| 25.    Grecco does not own any copyright interest in the underlying television shows. | Counterclaim (D.E. 11); Answer to Counterclaim (D.E. 15), ¶ 6<br><br>Depo. (Koltun Decl., Exh A) 215:13-216:14 |
| 26.    At the time this lawsuit was filed, Grecco had at least four other pending cases in this District Court concerning one or more of the photographs at issue in this case. | *Michael Grecco Productions Inc. v. Ziff Davis, LLC et al.*, Case No. 2:19-cv-04776-DSF-PJW<br><br>*Michael Grecco Productions Inc. v. New York Media LLC* [later: *Vox Media]*, *Case No.* 2:19-cv-07826-DSF-PJW<br><br>*Michael Grecco Productions, Inc. v. Evolve Media et al., Case No.* 2:19-cv-00535 JFK (AFMx)<br><br>*Michael Grecco Productions, Inc.* v. *BDG Media, Inc.* Case No. CV 19-04716-AB (KSx) |

- 10 -

| | |
|---|---|
| 27.    The custom and practice in the entertainment industry at all relevant times was that promotional photographs were distributed to the media precisely so that they would be published in editorial content concerning the television show. | Licata Decl., ¶¶ 8, 9, 11, 12, 15, 19, 24-33. |
| 28.    The custom and practice in the entertainment industry at all relevant times was that promotional photographs would usually, but not always, be accompanied by language affirmatively indicating that permission was granted to the media (not to a specific licensee) to use the photographs in editorial content relating to the television shows. | Licata Decl., ¶¶ 8, 9, 28, Exhs. B, C, D, and E.  Koltun Decl., Exh 29, 11.28.2017, Exhibit 3 thereto (TCF157-161) [see Fact 63 below] |
| 29.    The purpose of the permissions language was to encourage such use by the media; in the absence of such language the promotional purpose of the images was nevertheless understood in the industry. | Licata Decl., ¶¶ 8, 9, 28 |
| 30.    The custom and practice in the entertainment industry at all relevant times was that promotional photographs were circulated, for example via press kits and direct communications between publicists and journalists, as widely as possible; the aim was to maximize publicity for the show. | Licata Decl., ¶¶ 8, 9, 24, 25, 29-32 |
| 31.    The custom and practice in the entertainment industry at all relevant times was that access to photographs was not conditioned on the media giving favorable coverage to the show. | Licata Decl., ¶¶ 8, 9 26, 29, 32 |

Joshua Koltun ATTORNEY

- 11 -

| | |
|---|---|
| 32.     The custom and practice in the entertainment industry at all relevant times was that promotional photographs did not have expiration dates. | Licata Decl. ¶¶ 8, 9, 26 |
| 33.     Fox has not retained copies of its old press kits, but *X-Files* press kits purchased on the memorabilia market include (i) Grecco's black and white promotional photographs with Fox's copyright notice and permissions language on the bottom, and (ii) color transparencies (slides) of Grecco photographs that sometimes have Fox's copyright notice and permissions language, sometimes only the Fox copyright notice, and sometimes bear no markings at all. | |
| 34.     Among the Fox press kits that were located was one that contained Photograph 2. | Licata Decl., ¶ 28 & Exhs. B. <br><br> Koltun Decl., ¶ 6 & Exh. F. |
| 35.     A copy of a Xena promotional photo purchased on the memorabilia market (not Photo 4), also carried permissions language that was addressed to the media generally, not to any specific licensee. | Licata Decl., ¶ 28, Exh. E <br><br> Koltun Decl., ¶ 6. |
| 36.     MCA used Photograph 4, among other things, as a cover for a boxed set of DVDs for the Xena series. | Koltun Decl., Exh. 24 |

- 12 -

Livingly Statement Genuine Disputes                                              2:20-cv-00151 DSF-JC

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

| | |
|---|---|
| 37.    Lawsuits such as the instant action directly undermine the entertainment industry's ability to successfully promote and publicize their copyrighted works, by creating uncertainty in the media as to whether they may use promotional photographs to illustrate commentary on the shows depicted. | Licata Decl., ¶ 34. |
| 38.    Fox, which owned the copyright in the *X-Files,* commissioned Grecco to take Photographs 2 and 3, and they were taken in the same photoshoot in 1993. | Counterclaim (D.E. 11); Answer to Counterclaim, (D.E. 15) ¶ 8.<br><br>Depo. (Koltun Decl., Exh A) 85:25-89:21 |
| 39.    USA Weekend Magazine arranged with Fox for permission to have photographs taken of the lead actors on the set of the *X-Files* in Vancouver, and commissioned Grecco to take those photographs, including Photograph 1, in March 1995. | Counterclaim (D.E. 11); Answer to Counterclaim, (D.E. 15) ¶ 8.<br><br>Depo. (Koltun Decl., Exh A) 85:25-86:9; 90:1-91:18. |
| 40.    Photograph 4 was commissioned by MCA, which owned the copyright to *Xena, Warrior Princess,* and the photograph was taken on the set in 1997. | Counterclaim (D.E. 11), Answer to Counterclaim, (D.E. 15) ¶ 8.<br><br>Depo. (Koltun Decl., Exh A) 85:25-86:9; 92:15-20; 94:6-95:3 |
| 41.    When Grecco took the Photographs, and for a number of years thereafter, he worked through an agent, Maggie Hamilton, who was compensated with a percentage of Grecco's fees. | Depo. (Koltun Decl., Exh A) 75:18- 76:6. |

- 13 -

Joshua Koltun ATTORNEY

| | |
|---|---|
| 42.    During the 1990s, Hamilton's agency was associated with the Sygma stock photographic agency and during that time she also acted as the stock photography agency for Grecco. | Depo. (Koltun Decl., Exh A) 47:22-49:2; 84:19-85:9; 128:1-14 |
| 43.    When a studio or other organization wished to hire Grecco to take a photograph, Hamilton would negotiate the details, create a document that would contain an estimate of what the job would cost, describe the "usage" that was being licensed and fax this estimate/license to the Studio in advance of the job. | Depo. (Koltun Decl., Exh A) 77:2-82:15; 85:18-24 |
| 44.    Hamilton has now retired and did not retain any records. | Depo. (Koltun Decl., Exh A) 76:9-13 |
| 45.    Grecco has not retained the records of these advance estimate/licenses for the Photographs. | Depo. (Koltun Decl., Exh A)79:12-80:6 |
| 46.    Although Grecco relies – and has historically relied -- upon his "assignment invoices" as the operative licenses, the documents that he produced in this action – and which were the basis of an earlier judicial decision[1] -- are not, for the most part, documents that were actually sent to the *Studios*; rather these are invoices that Grecco sent to *Hamilton,* after the job was completed. | Depo. (Koltun Decl., Exh A) 79:2-7; 85:18-24; 127:7-130:3: 159:13 -164:18<br><br>Assignment Invoices, Koltun Decl., Exh. 23 [GR003-007]<br><br>Grecco Interrogatory Response (Koltun Decl., Exh. B), Responses 1, 2, 3<br><br>Declaration of Grecco in *Everett* case (Koltun Decl., Exh 26), ¶¶ 1, 6, 7.<br><br>Assignment Invoices produced in *Everett* case, (Koltun Decl., Exh. 27) |

[1]*Michael Grecco Photography, Inc. v. Everett Collection, Inc.  Id.,* 589 F. Supp. 2d 375, 379-80 (S.D.N.Y. 2008)

- 14 -

| | |
|---|---|
| 47. Hamilton, in turn, would send a *different* assignment invoice to the Studio (or magazine). The "usage" language on the face of those invoice would *not* necessarily match the language on the invoice from Grecco to Hamilton. | Depo. (Koltun Decl, Exh. A) 127:7-129:5; 137:25-139:12; 151:18 - 153:1; 159:13 -164:18;<br><br>Koltun Decl, Exh 23<br><br>Assignment Invoices produced in *Everett* case, (Koltun Decl., Exh. 27) |
| 48. Indeed, in the one instance in which Grecco has a copy of the invoice that Hamilton sent to the Studio, the language on that invoice differs from the language on Grecco's invoice to Hamilton. | Depo. (Koltun Decl., Exh A); 127:7-130-3; 159:13-164:18;<br><br>*Compare* Koltun Decl, Exh. 23 (Grecco00001)<br><br>*with* Assignment Invoice produced in *Everett* case, (Koltun Decl., Exh. 27)[Doc 20-9 Page 20) |
| 49. By the same token, the "terms and conditions" that Grecco has produced are the fine print that he *contends* that Hamilton was *supposed to* have included along with the assignment invoices that she sent to the Studios or magazines. | Depo. (Koltun Decl., Exh A) 83:20-84:18; 140:18-145:1<br><br>Koltun Decl., Exhibit 23 |
| 50. Hamilton had stationary with these terms printed on the back, but the fine-print terms would have been faxed, if indeed they were included at all with the invoices. | Depo. (Koltun Decl., Exh A) 79:11-21; 140:18-141:1 |

Joshua Koltun ATTORNEY

- 15 -

| | |
|---|---|
| 51.    The terms and conditions that Grecco contends were sent by Hamilton in 1993 to 1997 were the same, whether the use was for a single editorial use, such as the USA Weekend photoshoot, or a single advertising use, such as the  the Delphi Internet advertisement, or a promotional/publicity use, such as for photographs 2, 3, or 4. | Depo. (Koltun Decl, Exh. A) 140:18-145:1<br><br>Koltun Decl., Exh. 23 (Grecco00002, 0004, 0009)[note that Grecco conceded at *Id.,* Exh A (Depo.) at 144 that Grecco000006 was produced in error; it does not represent the terms and conditions that he contends would have been sent in 1997, rather he contends that the terms at Grecco000004 would have been attached to Grecco00005] |
| 52.    The "assignment invoice" Grecco sent to Hamilton with respect to the 1997 Photoshoot contained the following language "UNLIMITED USAGE RIGHTS ARE GRANTED TO THE CLIENT.  MICHAEL GRECCO RETAINS THE COPYRIGHT TO ALL PHOTOGRAPHS. MICHAEL GRECCO ALSO RETAINS THE RIGHT TO USE ANY PHOTOGRAPH FOR PERSONAL PORTFOLIO AND PROMOTIONAL USE." | Depo. (Koltun Decl., Exh. A) 143:3-145:1<br><br>Koltun Decl., Exh 23 at Grecco000005<br><br>Grecco Decl., ¶ 11, Exh. 9 |

Joshua Koltun ATTORNEY

Livingly Statement Genuine Disputes                                    2:20-cv-00151 DSF-JC

| | |
|---|---|
| 53.    Among the specific "terms and conditions" on the forms that Grecco produced are the following (emphasis in the original): | Koltun Decl, Exh. 23 (Grecco00002, 000004,00009). |
| 3. **Scope of license:** Rights are granted for **one use only (excluding buy outs).** … Materials may not be reproduced, copied, projected, cannibalized or otherwise used without express written consent. [original emphasis] | [note that Grecco conceded at *Id.,* Exh. A (Depo.) at 144 that Grecco000006 was produced in error; it does not represent the terms and conditions that he contends would have been sent in 1997, rather he contends that the terms at Grecco000004 would have been attached to Grecco00005] |
| 6. **Return of Photographs.**  All photographs shall be returned undamaged within 30 days of client's receipt unless specifically agreed otherwise in writing by Michael Grecco Photography.  Return of photographs must be by registered mail, air freight or bonded messenger, in all cases fully insured with return receipt requested.  Client retains responsibility for safe return of photographs and liability for damage thereto until received by Michael Grecco Photography or his authorized agent.  All photographs not returned within 30 days of receipt by the client will be subject to a holding charge of $5.00 per week per image unless otherwise agreed in writing. | |
| 7. **Lost or damaged photographs.**  The parties acknowledge that it is difficult and impractical to determine the exact value of each photograph subject to this agreement.  Therefore the parties agree that the reasonable value of each original photograph lost, damaged, or altered is $1500 per photograph unless another value is agreed on in writing.  The parties also agree that $100 is a reasonable fee for each lost or damaged duplicate photograph, of which Michael Grecco Photography holds the undamaged original." | |

- 17 -

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

| | |
|---|---|
| 54.     In December 1994, Hamilton signed an agreement on Grecco's behalf with Fox ("1994 Agreement"). That agreement provided, among other things, that Grecco assigned "all right, title, and interest" in all the photographs he had taken of the *X-Files*, and agreed that Fox was "free in its sole discretion, without further compensation to you, (other than any compensation heretofore agreed to be paid to you by or on behalf of Delphi Internet Services) to utilize and exploit the [*X-Files*] Photographs worldwide, in perpetuity, in any manner it may deem appropriate, including without limitation, uses on or in connection with merchandising, commercial tie-in, advertising, promotion, and literary publishing activities arising out of or related to 'THE X-FILES' television series." | Koltun Decl, Exhibit 28 (Exhibit C thereto, Grecco000498-409).<br><br>Depo. (Koltun Decl., Exh A) 170:6-172:11 |
| 55.     Sometime after signing the 1994 agreement and before June 29, 1995, Grecco delivered to Fox the photographs of all three *X-Files* shoots he had taken, including the 1993 and 1995 shoots at which Photographs 1 2 and 3 were taken, and including a 1994 shoot that is not at issue in this litigation. | Depo. (Koltun Decl., Exh A) 90:1-92:10; 147:8-14; 199:2-10<br><br>Koltun Decl., Exh. 30 (Exhibit E thereto TCF180) |

- 18 -

| | |
|---|---|
| 56.    The Photographs delivered to Fox included Photographs 1, 2, and 3. | Depo. (Koltun Decl., Exh A) 90:1-92:10; 147:8-149:9; 199:2-10; 207:16-209:12.<br><br>Koltun Exhibit 33 (Grecco000083-84)<br><br>Licata Decl., ¶ 28 & Exh. B<br><br>Koltun Decl., ¶ 6 & Exh. F.<br><br>Copyright Registration VA-1-232-596 (Carter Decl., Exh. C, Liv242-244)(stating first publication date of Photograph 1 as May 8, 1995)[2]<br><br>Copyright Registration VA2-030-741 (Carter Decl., Exh. C, Liv237-239)(stating first publication date of Photograph 2 as October 25, 1993<br><br>Copyright Registration VA2-063-319 (Carter Decl., Exh. C, Liv231-234)(stating first publication date of Photograph 3 as October 25, 1993) |
| 57.    In late 1994 or 1995, Delphi Internet Services, a corporate affiliate of Fox, advertised a promotional offer in which subscribers to Delphi would receive, among other promotional benefits, a "database of official downloadable *X-Files* photos, video, soundtrack and program synopsis." Grecco licensed one of his photographs to Delphi for use in that advertisement. | Depo. (Koltun Decl., Exh. A) 155:14-158:4<br><br>Koltun Decl., Exhs. 23 (Grecco00008), 25 & 28 (Exhibit C thereto, Grecco000498). |

[2] Livingly refers the Court to the Copyright Registrations that Grecco attached to his cease and desist correspondence, instead of those he attached to his declaration, because the former attached copies of the Photographs at issue, including in at least one instance, copies of the original transparencies (slides) of several photographs that were copyrighted at the same time.

- 19 -

| | |
|---|---|
| 58.   In June 1995, Hamilton signed another agreement on Grecco's behalf ("1995 Agreement"), in which Fox chose fourteen photographs from among the *X-Files* photographs Grecco had taken, and Grecco "assigned all right title and interest" in those photographs, and also agreed that Fox was "free, in its sole discretion, … to utilize and exploit the Photographs worldwide, in perpetuity, in any manner it may deem appropriate, including without limitation, uses on or in connection with the merchandising, commercial tie-in, advertising, promotion, and literary publishing activities arising out of or related to 'THE *X-FILES* television series." | Koltun Decl., Exh 29 Depo. (Koltun Decl, Exh. A) 173:1-178:18; 190:24-194:22 |
| 59.   Although Grecco contends that Hamilton would make deals without his knowledge and approval concerning his photographs, in order to increase her commissions, he nevertheless continued to use Hamilton as his agent at all relevant times, and did not stop working through her agency until she retired in 2005 or thereabouts. | Depo. (Koltun Decl., Exh A) 76:3-6; 172:2-18;176:1–177:19; 190:24-194:22 |

Joshua Koltun ATTORNEY

- 20 -

| | |
|---|---|
| 60.    Grecco licensed the Photographs to the Studios. | Complaint in *Michael Grecco Productions, Inc. v. Upproxx Media, Inc.* (Koltun Decl, Exh. G.), ¶¶16 & Exhs thereto 2, 3, & 4 [Grecco1246, 1248 & 1249]<br><br>2019 Agreement (Koltun Decl., Exh. 32)<br><br>1994 Agreement (Koltun Decl, Exhibit 28 (Exhibit C thereto, Grecco000498-409)<br><br>Koltun Decl., Exh 23 (invoices)<br><br>Declaration of Grecco in *Everett* case (Koltun Decl., Exh. 26)<br><br>Assignment Invoices introduced into evidence in *Everett* case (Koltun Decl., Exh. 27)<br><br>Grecco Interrogatory Response (Koltun Decl., Exh. B), Responses 1, 2, 3<br><br>Copyright Registration VA2-063-319 (Carter Decl., Exh. C, Liv231-234)(stating first publication date of Photograph 3 as October 25, 1993)<br><br>Copyright Registration VA2-030-741 (Carter Decl., Exh. C, Liv237-239)(stating first publication date of Photograph 2 as October 25, 1993<br><br>Copyright Registration VA-1-232-596 (Carter Decl., Exh. C, Liv242-244)(stating first publication date of Photograph 1 as May 8, 1995) |

Joshua Koltun ATTORNEY

| | |
|---|---|
| 61.　　In 2017, Fox and Grecco had a legal dispute in which Fox (relying in part on language in the 1994 Agreement) contended that it was the copyright owner of all *X-Files* promotional photographs that Grecco had taken, whereas Grecco contended that he was the copyright owner.  Grecco also claimed that Fox had exceeded the scope of the licenses that he had granted to the *X-Files* photographs, for example by making "merchandising" uses of his photographs – and not merely the fourteen in the 1995 Agreement. | Koltun Decl., Exhs 28, 29, 30, 31, 33<br><br>Depo. (Koltun Decl., Exh A) 170:7-172:11; 173:1-183:3; 189:14-191-21; 195:3-25; 207:16-208:14 |

Joshua Koltun ATTORNEY

- 22 -

| | |
|---|---|
| 62.    In 2019, Fox and Grecco entered into a settlement agreement ("2019 Agreement").  Among the terms of the 2019 Agreement, the parties agreed that<br><br>•    The *X-Files* Photographs that Grecco took are referred to as the "Gallery Photographs," the 14 Photographs subject to the 1995 Agreement are referred to as the "All Media Photographs," and all others as the "Remaining Gallery Photographs" ; the possibility that Fox had made use of photographs in a manner that exceeded the scope of the 1994 and 1995 Agreements was referred to as the "Questioned Uses"  [p.1]<br><br>•    Neither party "disputes or repudiates" the 1994 Agreement, but the parties state that the 1994 Agreement "provides for, and only for, Fox's nonexclusive advertising and publicity use, in perpetuity, in all media now on or hereafter devised, throughout the world, of the Gallery Photographs, including the right to sublicense the Gallery Photographs for advertising and publicity purposes" [¶1] and further provided that Fox's license "permits all advertising and publicity uses, including but not limited to retrospective advertising and publicity uses and archival advertising and publicity uses."  [¶12].<br><br>•    Neither party "disputes or repudiates" the 1995 Agreement, but the parties state that the 1995 Agreement "provides for an assignment by Grecco to Fox of all right, title and interest including, without limitation the copyright in and to the 14 All Media Photographs," [¶2].<br><br>•    Notwithstanding Fox's ownership of the 14 All Media Photographs, "nothing herein prevents Grecco from licensing for advertising, publicity, | Koltun Decl., Exh. 32<br><br>Depo. (Koltun Decl., Exh A), 196:3-207:14. |

- 23 -

Joshua Koltun ATTORNEY

| | |
|---|---|
| merchandising, or other purposes, any other photographs that may bracket or be substantially similar to or even visually indistinguishable from the 14 All Media Photographs." [¶4]<br><br>• Grecco and Fox mutually released all claims against each other, including any "Questioned Uses" that commenced before the 2019 Agreement. [¶6] | |
| 63.     In 1997, Grecco through counsel corresponded with Fox concerning the manner in which it distributed the *X-Files* photographs he had taken, and was informed by Fox that in the event someone "came into possession" of those photographs, the photographs "clearly state[] that the permission granted only to newspapers and periodicals to reproduce the image in question for publicity or editorial purposes in connection with [Fox Broadcasting Company] programming [and] 'must not be sold, leased, or given away."] Fox also supplied him with samples of promotional photographs that Grecco had taken, which were marked with Fox's copyright. The black and white glossy photograph also contained the following language: "Exclusively for use in advertising and promotion relating to television exhibition through Fox Broadcasting Company. All other rights reserved." The color transparencies (i.e. slides) provided to Grecco did not have the permissions language, although they were marked "© Fox Broadcasting Company. All Rights Reserved." | Koltun Decl., Exh. 29 at TCF0000148 & Exh. 3 thereto (TCF157-161)<br><br>Depo. (Koltun Decl., Exh A) 170:1-186:17 |

- 24 -

| | |
|---|---|
| 64.   Grecco did not object, either to Fox's copyright notice or to the permissions language quoted in the 1997 Correspondence. | Depo. (Koltun Decl., Exh A) 170:1-186:17 |
| 65.   Some 8 to 24 years after taking the *X-Files* and Xena photographs, Grecco registered the copyrights in the photographs.  The registration date for Photograph 3 was July 27, 2017.   In none of his copyright registrations did he indicate that the photographs were derivative works. | Copyright Registration VA-1-232-596 (Carter Decl., Exh. C, Liv242-244)(Photograph 1)<br><br>Copyright Registration VA2-030-741 (Carter Decl., Exh. C, Liv237-239)(Photograph 2)<br><br>Copyright Registration VA2-063-319 (Carter Decl., Exh. C, Liv231-234)(Photograph 3)<br><br>Copyright Registration VA1-431-698 (Carter Decl., Exh. B, Liv209-218)(Photograph 4)<br><br>Complaint, D.E. 1, ¶¶ 8, 11, 14, 17.<br><br>Depo. (Koltun Decl., Exh A) 215:13-216:14 |
| 66.   Grecco has used a number of stock photographic agencies to license his work to the public, including the Sygma agency and Getty Images. | Depo. (Koltun Decl., Exh A) 44:7-46:5; 47:22-49:3. |
| 67.   As of about 10 years ago, Grecco was licensing his work to the public through his own stock photography licensing website, mgpstockphotos.photoshelter.com ("MGPStockPhotos"). | Depo. (Koltun Decl., Exh A) 20:23-21:7; 46:6-47:21; 100:6-109:6 |
| 68.   On MGPStockPhotos, Grecco purports to license the Photographs for editorial use, and has cited his stated license fee for such use in his court filings. | Koltun Decl., Exh. G, Upproxx, ¶ 22 & (Exh. 11 thereto) Gr1236 |

Joshua Koltun ATTORNEY

- 25 -

| | |
|---|---|
| 69. In fact, Grecco has never issued a prospective license for editorial use– as distinguished from a retroactive license for a putative act of infringement – to any of the Photographs, through his own or any other agency, with the exception of a tiny amount of licensing revenue he received for two of the Photographs during the years he licensed all his photographs through Getty Images. | Depo. (Koltun Decl., Exh. A) at 9:18-11:11; 44:7-45:17; 96:7-9; 99:11-121:24<br><br>Koltun Decl., ¶¶ 4, 5, Exhs. 20, C & D [spreadsheets, discussed as "Exhibit 21 in deposition], E. |
| 70. Getty Images offered Grecco's Photographs as part of a "wholesale" license in which users licensed Getty's entire database of images, the overwhelming majority of which would not be promotional photographs. During the several years that Grecco offered the Photographs for licensing via Getty Images, no one ever licensed Photographs 2 or 3. the sum total Getty revenue for Photograph 1 was $750.53, of which Grecco received $268.23; for Subject Photo 4, total Getty revenue for Photograph 4 was $460.25, of which Grecco received $221.45. | Depo. (Koltun Decl., Exh. A) at 9:18-11:11; 44:7-45:17; 96:7-9; 99:11-121:24.<br><br>Koltun Decl., ¶¶ 4, 5, Exhs. 20, C & D [spreadsheets, discussed as "Exhibit 21 in deposition], E.<br><br>Carter Decl., ¶ 3 |
| 71. In this litigation, Grecco has taken the position that the foregoing communications and dealings with the studios, including the 1994, 1995, and 2019 Agreements and Grecco's other correspondence and dealings with Fox, including in 1997 and 2017-2019, his retroactive "licenses," as well as his [lack of any] revenue from prospective licensing of the Photographs, are "trade secrets," and consequently has produced them subject to the "Attorneys Eyes Only" confidentiality provisions of this Court's Protective Order. | Grecco Interrogatory Response/Objection No. 3 (Koltun Decl., Exh. B)<br><br>Exh. 20, 21 [Koltun Exh. C & D], 23, 28-33 (designations)<br><br>Stipulation/Protective Order (D.E. 29 at p3:11-19)<br><br>Application for Leave to File Under Seal and Declaration [D.E. 42] |

Joshua Koltun ATTORNEY

- 26 -

| | |
|---|---|
| 72.    Livingly is an online media company that operates the websites www.zimbio.com and www.livingly.com.   The Photographs were openly posted on those URLs in Articles, as follows:<br><br>On July 19, 2016, Livingly posted the article "*Movies and TV Shows to Watch If You're Obsessed with Netflix's 'Stranger Things*," written by Lani Conway, which included *The X-Files* among the recommended shows, illustrated with a portion of Photograph 1.<br><br>On October 9, 2017, Livingly posted the article "*TV Shows All Stranger Things Fanatics Will Love*," written by Areeba Abid, which included *The X-Files* among the recommended shows, illustrated by Photograph 2;<br><br>On August 5, 2017, Livingly posted the article *"15 Amazing Shows You Didn't Know You Can Watch on Hulu Now,"* written by Cecily Trowbridge, which included *The X-Files* among the recommended shows, illustrated by Photograph 2,<br><br>On January 8, 2016, Livingly posted the article "*Are You Mulder or Scully for the X-Files,"* written by Lani Conway, which was illustrated with a thumbnail version of a portion of Photograph 3.<br><br>On October 18, 2018, Livingly posted the article *"Clever Halloween Costumes Inspired By Badass Females,"* written by Kimia Madani, which recommended *Xena, Warrior Princess* as one of the characters one could dress up as, illustrated by Photograph 4. | Carter Decl., ¶ 2.<br><br>Complaint, ¶ 9, 10, 12, 13, 15, 16, 18, 19 (including screen captures). |

Joshua Koltun ATTORNEY

- 27 -

Joshua Koltun ATTORNEY

| | |
|---|---|
| 73.   In the custom and practice of the industry, Livingly's use of the Photographs were entirely consistent with the customary and intended use of promotional photographs in editorial content referencing the underlying shows. | Licata Decl., ¶ 32. |
| 74.   None of the authors of the articles just mentioned specifically recalls where they found the Photographs on the internet, but all of the authors testified that, based on their training and Livingly's guidelines, they assume now and would have assumed at the time, that the photograph in question was a promotional photograph.  They would have assumed that the copyright in the Photograph was held by the studio, and in any event that Livingly was licensed to use the photograph in the manner in which it did.  Nevertheless, if the Photograph had carried a copyright notice from Grecco or any other professional photographer, they would not have used the photograph. | Declarations of Abid, Trowbridge, Conway and Madani. |
| 75.   The total gross revenue Livingly received from the Articles was as follows:  Photograph 1: $1.40  Photograph 2: $435.83  Photograph 3: $520.84  Photograph 4: $74.99. | Carter Decl., ¶ 5. |
| 76.   The four Photographs are among the "classic" images that Grecco frequently sues over. | Depo. (Koltun Decl., Exh A) 35:9-14 |
| 77.   Until August 2018, Grecco used a reverse image search vendor called ImageRights to search for infringement of his photographs. | Depo. (Koltun Decl., Exh A) 36:18-37:3; 59:17; 62:1, 65:5-66:8  Koltun Decl, Exhibit 18, ¶¶ 54-59 |

Livingly Statement Genuine Disputes                                      2:20-cv-00151 DSF-JC

| | |
|---|---|
| 78.    Grecco does not know whether ImageRights discovered the use by Livingly of any of the Photographs. | Depo. (Koltun Decl., Exh. A) 65:1-66:8 |
| 79.    At some point Grecco began to use other vendors, including an image-searching service provided by his law firm, Higbee & Associates.  Higbee & Associates itself relies in vendors to perform the actual searches.  Higbee & Associates performs evaluations of the viability of legal claims and then sends cease and desist correspondence to putative infringers, including Livingly. | Depo. (Koltun Decl., Exh A) 31:6-36:25; 62:20-65:4<br><br>Koltun Decl., Exh. 18 ¶¶ 48-53. |
| 80.    On November 18, 2018, Grecco (acting directly, not through counsel), sent Livingly a cease and desist letter based on a use by Livingly of Photograph 1 that is not the use at issue in this case. | Carter Decl., ¶ 7 & Exh. A |
| | |
| 81.    Livingly promptly removed that use of the photograph, and also performed a search to locate any other uses of *X-Files* photographs (whether or not Livingly had information that they were by Grecco). | Shinn Decl., ¶ 2 |
| 82.    Livingly replaced every still photograph of *X-Files* that it found on its websites with a screenshot taken from actual footage of the television show. | Shinn Decl., ¶ 2. |
| 83.    However, because of technical limitations on its ability to search content on its websites, Livingly inadvertently overlooked uses of still photographs at issue in  this case. | Shinn Decl., ¶ 3. |

Joshua Koltun ATTORNEY

- 29 -

| 84. On February 12, 2019, and April 8, 2019, Higbee and Associates sent two cease and desist letters concerning the four Photographs, as well as, mistakenly, a different photograph that Livingly was not using. Livingly promptly removed the four Photographs. | Carter Decl, ¶ 8, 9 & Exhs. B & C<br><br>Shinn Decl., ¶¶ 4, 5.<br><br>Counterclaim (D.E. 11); Answer to Counterclaim (D.E. 15), ¶ 16.<br><br>(See also Grecco's Fact 1, above). |
|---|---|
| 85. On January 6, 2020, Grecco filed the instant lawsuit. | D.E. 1. |

Dated: March 15, 2021

\_\_\_\_\_\s\_____
Joshua Koltun
Attorney for Defendant
and Counterclaimant
Livingly Media, Inc.