# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., Plaintiff, | CV 20-0151 DSF (JCx) |
| v. | Order GRANTING in Part Plaintiff's Motion for Summary Judgment (Dkt. 44) and DENYING Defendant's Motion for Summary Judgment (Dkt. 34, 62) |
| LIVINGLY MEDIA, INC., Defendant. | |

Before the court are cross motions for summary judgment. Plaintiff Michael Grecco Productions, Inc. (MGP) moves for summary judgment on its sole claim for copyright infringement, as well as Defendant Livingly Media, Inc.'s affirmative defenses.  Dkt. 44 (MGP Mot.).  Livingly moves for summary judgment on MGP's claim and its license and Livingly's fair use and statute of limitations defenses.  Dkt. 62 (Livingly Mot.).  The Court deems these matters appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  MGP's motion is GRANTED in part.  Livingly's motion is DENIED.

## I. UNDISPUTED FACTS

This action involves four still photographs, which the Court will refer to as Photographs 1 through 4 (collectively, the Photographs).  PSUF ¶ 2; DSUF ¶ 1.[1]  MGP alleges Livingly infringed its copyright to these photographs by publishing them online.

---

[1] Citations to PSUF refer to "Separate Statement of Genuine Disputes in Opposition to Michael Grecco Productions' Motion for Summary Adjudication," dkt. 66, which incorporates MGP's proposed uncontroverted

- Photograph 1 is a photograph taken by Michael Grecco that depicts *The X-Files* characters Mulder and Scully, as portrayed by David Duchovny and Gillian Anderson.  PSUF ¶ 3.  Grecco took the photo in March 1995 for an editorial photoshoot USA Weekend engaged him for.  Id. ¶ 4.  Grecco transferred ownership in Photograph 1 to MGP and registered it with the U.S. Copyright Office in September 2003.  Id. ¶ 6.

- Photograph 2 is also a photograph taken by Grecco of Mulder and Scully.  Id. ¶ 7.  Grecco was commissioned to take the photograph by Fox[2] in 1993.  DSUF ¶ 19.  Grecco transferred ownership to MGP and registered the work with the U.S. Copyright Office in January 2017.  PSUF ¶ 8.

- Photograph 3 is a photograph taken by Grecco of Mulder and Scully commissioned by Fox and taken in the same photoshoot as Photograph 2.  Id. ¶ 9; DSUF ¶ 19. Grecco transferred ownership to MGP and registered the work with the U.S. Copyright Office in July 2017.  PSUF ¶ 10.

- Photograph 4 is a photograph taken by Grecco that depicts the Xena the Warrior Princess character, as portrayed by Lucy Lawless.  Id. ¶ 11.  The photograph was taken on the set of *Xena, Warrior Princess* in 1997.  DSUF ¶ 21.  Grecco transferred

---

facts and Livingly's responses to those facts.  Citations to DSUF refer to both "Plaintiff's Separate Statement of Disputed Fact," dkt. 53, and "Statement of Rebuttal Evidence of Livingly Media, Inc. for Summary Judgment," dkt. 57, which include Livingly's proposed uncontroverted facts, MGP's responses to those facts, and Livingly's rebuttal to MGP's responses.  To the extent certain facts are not mentioned in this Order, the Court has not relied on those facts in reaching its decision.  To the extent the Court cites to a disputed fact, the Court has found the dispute was not valid or was irrelevant, unless otherwise indicated.  The Court has independently considered the admissibility of the evidence and has not considered facts that are irrelevant or based on evidence that would not be admissible at trial.

[2] The PSUF and DSUF refer simply to "Fox," which the Court believes is Fox Broadcasting Company.

ownership to MGP and registered the work with the U.S. Copyright Office in July 2010.  PSUF ¶ 12.

Grecco worked through his agent, Maggie Hamilton, when he took all four Photographs.  DSUF ¶ 22.  She also acted as Grecco's stock photography agency.  Id. ¶ 23.  When someone wished to hire Grecco as a photographer, Hamilton would negotiate the details and create a document with a cost estimate and a description of the "usage" being licensed.  Id. ¶ 24.  She would then fax that document to the client in advance of the job.  Id.  Hamilton has since retired and did not retain any records.  Id. ¶ 25.  Grecco has also not retained records of the estimates/licenses for the Photographs.  Id. ¶ 26.  For this lawsuit, Grecco relies on invoices Grecco sent to Hamilton, rather than the documents sent to the client.  Id. ¶ 27.  The parties dispute whether these documents differ from the terms Hamilton set.  Id. ¶¶ 27-29.

The terms and conditions language Grecco contends was used by Hamilton was the same for all four Photographs.  Id. ¶ 32.  It included the following: "UNLIMITED USAGE RIGHTS ARE GRANTED TO THE CLIENT.  MICHAEL GRECCO RETAINS THE COPYRIGHT TO ALL PHOTOGRAPHS.  MICHAEL GRECCO ALSO RETAINS THE RIGHT TO USE ANY PHOTOGRAPH FOR PERSONAL PORTFOLIO AND PROMOTIONAL USE."  Id. ¶ 33.

In December 1994, Hamilton signed an agreement with Fox in which Grecco assigned "all right, title, and interest" in all photographs he had taken of the *The X-Files*, and agreed Fox was "free in its sole discretion . . . to utilize and exploit the [*X-Files*] Photographs worldwide, in perpetuity, in any manner it may deem appropriate, including without limitation, uses on or in connection with merchandising, commercial tie-in, advertising, promotion, and literary publishing activities arising out of or related to 'THE X-FILES' television series."  Id. ¶ 35.  MGP disputes that Hamilton had authority to sign such an agreement.  Id.

In June 1995, Hamilton signed another agreement on Grecco's behalf in which Fox chose fourteen photographs from among the *The X-*

*Files* photographs Grecco had taken, and Grecco "assigned all right[,] title and interest" in those photographs to Fox.  Id. ¶ 39.  The parties agree that the fourteen photographs did not include any of the Photographs.  Id.

In 1997, Grecco corresponded with Fox about the *The X-Files* photographs Grecco had taken.  Id. ¶ 44.  Fox told Grecco that the photographs were only able to be reproduced by newspapers and periodicals using them for publicity or editorial purposes in connection with Fox programming.  Id.  Grecco states this correspondence pertained to only the fourteen photographs Fox had chosen – not the Photographs at issue here.  Id.

In 2017, Fox and Grecco had a legal dispute in which Fox and Grecco both contended they owned the copyright in *The X-Files* promotional photographs Grecco had taken in 1993.  Id. ¶ 42.  In 2019, Fox and Grecco entered into a settlement agreement (Fox Settlement Agreement) that pertained to the August 1993 photographs Grecco had taken for *The X-Files*, including Photographs 2 and 3.  Id. ¶ 43.  In the Fox Settlement Agreement, the parties agreed Grecco and Fox had "entered into a non-exclusive license agreement in or about December, 1994, pursuant to which Fox was granted worldwide, non-exclusive, fully paid, perpetual advertising and publicity use of the Gallery Photographs."[3]  Dkt. 64-5 (Fox Settlement Agreement) at 15.

Livingly is an online media company that operates www.livingly.com and www.zimbio.com.  Id. ¶ 53.  The Photographs were posted on those URLS in the following articles:

---

[3] MGP contends the "Gallery Photographs" do not include the Photographs.  DSUF ¶ 43.  However, the Fox Settlement Agreement indicates the Gallery Photographs are the photographs Fox engaged Grecco to take of *The X-Files* in August 1993 – which includes Photographs 2 and 3.  Fox Settlement Agreement at 15.  Additionally, the Fox Settlement Agreement clearly distinguishes the general "Gallery Photographs" from the fourteen specific photographs for which Fox and Grecco "entered into a fully paid irrevocable assignment agreement."  Id.

- Photograph 1 was in "Movies and TV Shows to Watch If You're Obsessed with Netflix's 'Stranger Things,'" posted July 19, 2016;

- Photograph 2 was in "TV Shows All Stranger Things Fanatics Will Love," posted on October 9, 2017, and "15 Amazing Shows You Didn't Know You Can Watch on Hulu Now," posted on August 5, 2017;

- Photograph 3 was in "Are You Mulder or Scully for the X-Files," posted on January 8, 2016;

- Photograph 4 was in "Clever Halloween Costumes Inspired By Badass Females," posted on October 18, 2018.

Id.  Livingly received $1,033.06 in total gross revenue from the five articles.  Id. ¶ 56.

Until August 2018, Grecco used ImageRights, a reverse image search vendor, to search for infringement of his photographs.  Id. ¶ 58. Grecco does not know whether ImageRights discovered the use by Livingly of any of the Photographs.  Id. ¶ 59.  At some point, Grecco began to use other vendors, including Higbee & Associates, to provide image-searching services and analysis of potential legal claims.  Id. ¶ 60.

In November 2018, Grecco sent Livingly a cease and desist letter based on its use of Photograph 1.  Id. ¶ 61.  Livingly removed the Photograph, replaced it with a screenshot from actual footage of the show, and performed a search to locate any other uses of *The X-Files* photographs.  Id. ¶¶ 62-63.  Livingly states it replaced every still *The X-Files* photograph it found but missed some photographs because of "technical limitations on its ability to search content on its website." Id. ¶ 64.  On February 12, 2019 and April 8, 2019, Higbee & Associates sent two cease and desist letters to Livingly concerning the four Photographs.  Id. ¶ 65.  Livingly promptly removed the Photographs from its websites.  Id.  On January 6, 2020, MGP filed this lawsuit. Compl.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "This burden is not a light one."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  But the moving party need not disprove the opposing party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Regardless of whether the non-moving party opposes, the Court must "assess whether 'the motion and supporting materials' entitle the movant to summary judgment."  Heinemann v. Satterberg, 731 F.3d 914, 917 (9th Cir. 2013) (quoting Fed. R. Civ. P. 56(e)(3)); see also Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment, subd. (e) ("[S]ummary judgment cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements.").  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order."  Fed. R. Civ. P. 56(e).

If the moving party satisfies its burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing there exists a genuine issue for trial.  Celotex Corp., 477 U.S. at 323-24; Fed. R. Civ. P. 56(c)(1).  A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a

6

genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment.  See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  Id. at 248.  "[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues."  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992).  Summary judgment is improper "where divergent ultimate inferences may reasonably be drawn from the undisputed facts."  Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006)).  Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (punctuation omitted).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits."  Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation marks and brackets omitted).  In doing so, the Court must consider the evidence submitted in support of both motions before ruling on each of them.  Id.

### III. DISCUSSION

MGP brings a single claim for copyright infringement.  Compl. ¶¶ 20-25.  Livingly asserts a number of affirmative defenses.  Dkt. 16 at 4-5.  MGP moves for summary judgment on its copyright infringement claim and Livingly's affirmative defenses.  MGP Mot. at ii.  Livingly moves for summary judgment on MGP's claim or, in the alternative, partial summary judgment to establish MGP is "entitled

only to the statutory damages for innocent infringement, and in that case only as to Photographs 2 and 4."  Livingly Mot. at i.

## A.   Evidentiary Objections

"A district court's ruling on a motion for summary judgment may only be based on admissible evidence."  Oracle, 627 F.3d at 385.  A party seeking to admit evidence bears the burden of proof to show its admissibility.  Id.  "At the summary judgment stage, [the Court does] not focus on the admissibility of the evidence's form.  [The Court] instead focus[es] on the admissibility of its contents."  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).  The parties make a handful of evidentiary objections.  See dkts. 51, 54, 58, 60.

Livingly first objects to numerous parts of the Doniger Declaration, dkt. 44-12.  Dkt. 51.  These are not so much objections to the actual evidence in the declaration as they are objections to the facts MGP asserts the declaration establishes.  Id.  The Court agrees that the documents attached to the Doniger Declaration speak for themselves and does not rely on the Declaration's or MGP's characterization of the documents.

Next, MGP objects to numerous statements in the Licata Declaration, dkt. 36, and certain exhibits attached to the Koltun Declaration, dkt. 64.  Dkt. 54.  The Court does not rely on the Licata Declaration beyond the press kits addressed below and, therefore, does not rule on those objections.  MGP also argues the press kits attached to both the Licata Declaration and Koltun Declaration are not authenticated and are hearsay.  The press kits were authenticated by Licata who was Senior Vice President, Publicity & Public Relations for Fox Broadcasting from March 1994 to 1999.  Licata Decl. ¶¶ 13-16, 28.  Licata was himself the sender of one of the press kits.  Id. ¶ 28.  This is sufficient to authenticate the documents.  See Orr, 285 F.3d at 773 (Authentication "is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" (quoting Fed. R. Evid. 901(a)).  MGP also argues the press kits are hearsay.  Dkt. 54 at 2.  Hearsay evidence may be considered on summary

judgment if the declarant could later present that evidence in an admissible form at trial.  Fraser, 342 F.3d at 1037.  The documents are admissible at least for the limited purpose of showing the photos contained were distributed by Fox – not for the truth of any matters stated.

Livingly makes additional evidentiary objections to Grecco's, Doniger's, and Whiteleather's declarations.  Dkt. 58.  The Court has not relied definitively on (1) Grecco's opinion on whether two images were the same photographs, (2) Grecco's opinion on what the Hamilton invoices contained, (3) Grecco's testimony that Fox did not retain copies of the photographs, or (4) Grecco's understanding that the Photographs had not been chosen and would not be distributed to the media, so these objections are moot.  Id. at 3-4, 6.  As stated above, the Court does not rely on Doniger's characterization of certain documents that speak for themselves.  Id. at 4-5, 7.  The Court also does not rely on Whiteleather's declaration and agrees with Livingly that the conclusion that the Photographs were never distributed arises from an inference that Fox never had access to the Photographs, but that inference is not supported.  Id. at 5-6.

## B.    Copyright Infringement

"A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)), overruled on other grounds by Skidmore as Tr. For Randy Craig Wolfe Tr. v. Led Zeppelin, 952 F.3d 1051 (9th Cir. 2020).  "[T]he second element has two distinct components: copying and unlawful appropriation."  Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018) (internal quotation marks omitted), overruled on other grounds by Skidmore, 952 F.3d 1051.

Grecco holds a valid copyright registration for each of the Photographs.  PSUF ¶¶ 6, 8, 10, 12.  Livingly admits it accessed and

used the Photographs.  Id. ¶ 16.  Livingly does not dispute that either of the two elements are met but claims its affirmative defenses defeat liability.

## C.   Affirmative Defenses

### 1.   License Defense

Livingly asserts its use of the Photographs was within the scope of the license to do so because the Photographs were created to promote the two television shows.  Livingly Opp'n at 11.  It makes three arguments related to that issue.  First, Livingly argues the Photographs are derivative works and, therefore, MGP does not have unrestricted ownership rights.  Id. at 11-13.  As a result, MGP's "rights [do] not extend to interfering with the promotional purpose for which the photographs were created."  Id. at 13.

The Court agrees the Photographs are derivative because they were based on copyrighted work – the underlying television shows.  See Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1078 (9th Cir. 2000).  However, derivative works are themselves copyrightable.  Id.  Livingly cites two types of cases in support of its argument that the derivative nature of the Photographs limit MGP's ownership rights.  First, it relies on cases addressing unauthorized derivative works.  Livingly Opp'n at 12.  These are not applicable because Grecco's photos were authorized derivative works.  Second, Livingly cites cases where the dispute is between the copyright owner of a derivative work and the copyright owner of a preexisting work.  Id. at 12-13.  These cases are also inapposite because Livingly does not own the preexisting work.  Additionally, Livingly is not arguing that the derivative works infringed on the original copyright, which is typically the issue in these cases.  See, e.g., Gilliam v. Am. Broad. Cos., Inc., 538 F.2d 14, 20-21 (2d Cir. 1976) (determining whether underlying work had been infringed).

The issue here isn't the scope of the license Fox or others have granted to the *underlying* works.  In the Fox Settlement Agreement, Grecco retained all right, title, and interest to the photographs except fourteen photographs not at issue here, and Fox was granted a non-

exclusive, perpetual right to use the photographs for advertising and publicity.  Fox Settlement Agreement at 15.  Instead, Livingly's argument appears to be that MGP is infringing on the license it granted to Fox, for which the fact that the work is derivative is irrelevant.  This argument does not support Livingly's license affirmative defense.

Second, Livingly argues Grecco has failed to show Livingly exceeded the scope of the promotional license to these photographs. Livingly Opp'n at 13.  In support of its argument, Livingly submits expert testimony by Richard Licata, dkt. 36, that studios widely distribute promotional photographs to maximize publicity.  Livingly Opp'n at 13.  It is unclear, however, if Fox ever actually distributed the four Photographs for promotional purposes.  Livingly states only that one of the photographs – Photograph 2 – was found in a Fox press kit. DSUF ¶ 15.  While the pictures look very similar, compare Compl. ¶ 13 with dkt. 64-6, Ex. F., it is not clear to the Court that they are the same picture.  The coloring is different, and the press kit photo is extremely small, making it hard to discern if there are any differences.  And Livingly itself points out elsewhere that "Grecco testified that he took many photographs that were very similar, even visually indistinguishable from . . . each other."  PSUF ¶ 16.  There is therefore a question of material fact as to whether any Photographs were distributed promotionally.

Third, Livingly argues Grecco "expressly and impliedly licensed the promotional use" of the Photographs.  Livingly Opp'n at 14.  As to Photographs 2 and 3, MGP argues the Fox Settlement Agreement did not include any of the Photographs.  Dkt. 55 (MGP Reply) at 5.  The Court disagrees.  The Fox Settlement Agreement states that Fox has a "worldwide, non-exclusive, fully paid, perpetual, advertising and publicity use of the Gallery Photographs, including the right to sublicense the Gallery Photographs for advertising and publicity purposes" and defines the Gallery Photographs as the *The X-Files* photographs Fox engaged Grecco to take around August 1993.  Fox Settlement Agreement at 15.  However, Grecco only *fully assigned* fourteen photos to Fox.  Id.

The question remains then whether Fox, pursuant to its right to sublicense, gave Livingly a non-exclusive sublicense to use Photographs 2 and 3.  "[A] nonexclusive license may be granted orally, or may even be implied from conduct."  Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990) (quoting 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 10.03[A], at 10-36 (1989)).  Neither party has submitted enough evidence to establish whether Fox distributed the Photographs in a manner that granted an oral or implied license – except for the press kit discussed above.[4]  There is therefore an issue of material fact as to whether Fox granted Livingly an oral or implied license as to Photographs 2 and 3.

MGP also argues there can be no implied or express license as to Photographs 1 and 4, which were commissioned for one-time use.  MGP Reply at 5.  However, MGP does not dispute that Hamilton used the same terms and conditions no matter whether the photograph was used for a single editorial or for a promotion/publicity.  DSUF ¶ 32.  The Court therefore finds there is also an issue of material fact as to whether Livingly had an oral or implied license to use Photographs 1 and 4.

The Court DENIES both motions for summary judgment on Livingly's license defense.

## 2.   Equitable Defenses

MGP argues the Court should grant summary judgment in its favor on Livingly's equitable defenses of estoppel, waiver, laches, unclean hands, fraud on the Copyright office, and standing.  MGP Mot. at 10-11.  Livingly does not oppose, nor has it submitted any evidence supporting these defenses.

**Laches.**  Laches is unavailable as an affirmative defense for copyright cases.  See Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S.

---

[4] The Licata Declaration comments on industry practice but does not establish how the four specific Photographs were distributed.  Dkt. 36.

663, 677-79 (2014).  The Court GRANTS summary judgment to MGP
on the laches defense.

**Estoppel and Waiver.**  Estoppel requires that a defendant show
"(1) plaintiff's unreasonable and inexcusable delay, (2) inducing the
belief that it has abandoned its claim against the alleged
infringer[,] . . . (3) affirmative conduct inducing the belief that it has
abandoned its claim against the alleged infringer, and (4) detrimental
reliance by infringer."  E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.,
905 F. Supp. 1403, 1414 (E.D. Cal. 1994).  Similarly, waiver is "the
intentional relinquishment of a known right with knowledge of its
existence and the intent to relinquish it."  United States v. King
Features Entm't, Inc., 843 F.2d 394, 399 (9th Cir. 1988).

Neither party has submitted evidence showing MGP's delay or
relinquishment of a right, or Livingly's detrimental reliance.  As the
moving party, MGP has the burden of production, even though it would
not bear the burden at trial.  Nissan Fire & Marine Ins. Co., Ltd. v.
Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).  It may either
"produce evidence negating an essential element of the nonmoving
party's case, or, after suitable discovery, . . . may show that the
nonmoving party does not have enough evidence of an essential
element of its claim or defense to carry its ultimate burden of
persuasion at trial."  Id.  However, "[a] moving party may not require
the nonmoving party to produce evidence supporting its claim or
defense simply by saying that the nonmoving party has no such
evidence."  Id. at 1105.  Instead, the moving party must specifically
point to declarations, exhibits, discovery responses, or other materials
demonstrating that the nonmoving party will not be able to prevail.  Id.
at 1106.  For instance, in Celotex, "Celotex moved for summary
judgment on the ground that Catrett had no evidence that her husband
had been exposed to any Celotex product" and, in its motion, "pointed
out that Catrett had 'failed to identify, in answering interrogatories
specifically requesting such information, any witnesses who could
testify about the decedent's exposure to [Celotex's] asbestos products.'"
Id. at 1105 (alteration in original) (quoting Celotex, 477 U.S. at 320).

MGP states "Defendant has no evidence of knowledge by Grecco of Defendant's infringing acts, and no basis to claim Livingly had a right to rely on his conduct or that they did in fact rely in any way on his conduct."  MGP Mot. at 11.  But MGP does not point to any evidence – or specific lack of evidence – indicating either of these things.  The Court DENIES summary judgment on the waiver and estoppel defenses.

**Unclean Hands.**  The doctrine of unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 173 (9th Cir. 1989).  To prevail on a defense of unclean hands, a defendant must demonstrate by clear and convincing evidence (1) "that the plaintiff's conduct is inequitable" and (2) "that the conduct relates to the subject matter of [the plaintiff's] claims." Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 847 (9th Cir. 1987).  With respect to the first requirement, "[o]nly a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands." Pfizer, Inc. v. Int'l Rectifier Corp., 685 F.2d 357, 359 (9th Cir. 1982).

MGP asserts that "Defendant's argument appears to be that Grecco has falsely claimed ownership of the copyright," which is a defense not an affirmative defense.  MGP Mot. at 11.  MGP does not indicate why it assumes that is Livingly's argument, and the Court has not found any indication that it is.   The Court DENIES summary judgment to MGP on the unclean hands defense.

**Fraud on the Copyright Office.**  "A certificate of registration satisfies the requirements of this section . . . , regardless of whether the certificate contains any accurate information, unless – (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1).

Livingly alleges "Grecco engaged in fraud on the Copyright Office in that he intentionally and fraudulently concealed the fact that the Subject Photographs were derivative works and that he was not the sole author of the Subject Photographs." Dkt. 16 (Answer) at 5. Grecco did not note the works were derivative works on at least some of the copyright applications. See dkt. 44-4. There is therefore a material question of fact as to whether he committed fraud, and the Court DENIES the motion for summary judgment on the fraud defense.

**Standing.** The Ninth Circuit has explained that "[a] defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002). A number of district courts have held standing is not an affirmative defense. See, e.g. Estakhrian v. Obenstine, No. CV 11-3480 FMO (CWx), 2015 WL 12698425, at *3 (C.D. Cal. Sept. 18, 2015) (noting lack of standing should be removed as an affirmative defense); Hernandez v. Dutch Goose, Inc., No. C 13-03537 LB, 2013 WL 5781476, at *7 (N.D. Cal. Oct. 25, 2013) (striking standing affirmative defense). The Court agrees and GRANTS MGP's motion as to the standing defense. Livingly may still raise the issue of standing, but it is not an affirmative defense.

### 3.    Fair Use

Livingly argues its use of the Photographs was fair use. Livingly Mot. at 17. The fair use doctrine "permits unauthorized use of copyrighted works 'for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research.'" Micro Star v. Formgen Inc., 154 F.3d 1107, 1112 (9th Cir. 1998) (quoting 17 U.S.C. § 107). "This listing was not intended to be exhaustive, or to single out any particular use as presumptively a 'fair' use." Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 561 (1985) (citation omitted). The Court must consider and weigh the determinative factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used

in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107.  But the "statutory factors are not exclusive."  Sega Enters. Ltd. v. Accolade, Inc., 977 F.2d 1510, 1522 (9th Cir. 1992).  "Rather, the doctrine of fair use is in essence 'an equitable rule of reason.'"  Id. (quoting Harper & Row, 471 U.S. at 560).

Additionally, "[a]lthough defendants bear the burden of proving that their use was fair, they need not establish that each of the factors set forth in § 107 weighs in their favor.  Instead, all factors must be explored, and the results weighed together in light of the purposes of copyright and the fair use defense."  NXIVM Corp. v. Ross Inst., 364 F.3d 471, 476-77 (2d Cir. 2004) (citations omitted); see also Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 578 (1994) ("All [four statutory factors] are to be explored, and the results weighted together, in light of the purposes of copyright.").  "Fair use is a mixed question of law and fact.  If there is no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work."  Worldwide Church of God v. Phila. Church of God, Inc., 227 F.3d 1110, 1115 (9th Cir. 2000).  Because the fair use inquiry requires a case-by-case analysis, the Court addresses each of the four statutory factors.[5]

---

[5] In addition to the four statutory fair use factors, Livingly also argues that MGP has a "deceptive business model" and is a "copyright troll."  Dkt. 56 at 7-8 & n.8.  Livingly provides no legal support for its argument that the Court should consider MGP's business model and that such a business model weighs against a finding of fair use.  The Court, therefore, does not consider the issue.  See Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929-30 (9th Cir. 2003) ("However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so. . . . We require contentions to be accompanied by reasons.").

a.   <u>Purpose and Character</u>

The first factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1).  Several principles may bear on this factor, including, as relevant here, transformation and commerciality.  <u>See</u> <u>Monge v. Maya Mags., Inc.</u>, 688 F.3d 1164, 1173 (9th Cir. 2012).

Transformation, "a judicially-created consideration that does not appear in the text of the statute," <u>id.</u>, has been described as "the most important component of the inquiry into the 'purpose and character of the use,'" <u>L.A. News. Serv. v. CBS Broad., Inc.</u>, 305 F.3d 924, 938 (9th Cir. 2002), <u>as amended</u>, 313 F.3d 1093 (9th Cir. 2002).  "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." <u>Campbell</u>, 510 U.S. at 579.

A work is transformative when it does not "merely supersede the objects of the original creation" but "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." <u>Id.</u> at 579 (internal quotation marks, alteration, and citation omitted).  The question is whether the appropriation of the original leads to a "new creation," either through changes to the work itself or through placement of the work in "a different context." <u>Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't</u>, 447 F.3d 769, 778 (9th Cir. 2006).

A work's separate purpose "by itself, does not necessarily create new aesthetics or a new work that 'alters the first work with new expression, meaning or message.'" <u>Monge</u>, 688 F.3d at 1176 (brackets omitted) (quoting <u>Infinity Broad. Corp. v. Kirkwood</u>, 150 F.3d 104, 108 (2d Cir. 1998)).  A "difference in purpose is not quite the same thing as transformation, and <u>Campbell</u> instructs that transformativeness is the critical inquiry under this factor." <u>Id.</u> (quoting <u>Infinity</u>, 150 F.3d at 108).  However, making an exact copy of a protected work may be transformative provided "the copy serves a different function than the

17

original work." Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1165 (9th Cir. 2007); see also Kelly v. Arriba Soft Corp., 336 F.3d 811, 818-19 (9th Cir. 2002) (finding transformative use where the original purpose of the copied images was aesthetic, while the new purpose was to improve access to information).

In Monge, a magazine published six of the plaintiffs' wedding photographs by reproducing them on the cover and in a two-page spread with various bylines printed on and around them. 688 F.3d at 1169-70. The Ninth Circuit found that such use "did not transform the photos into a new work, as in Campbell, or incorporate the photos as part of a broader work." Id. at 1176. Instead, the circuit court held the magazine "left the inherent character of the images unchanged" and that such "wholesale copying sprinkled with written commentary . . . was at best minimally transformative." Id.

The Court finds Livingly's use of the Photographs is more transformative than the publication in Monge. Livingly's articles were not based solely around Grecco's photographs. Instead they tended to incorporate many subjects. See, e.g., Compl. ¶ 10 (showing the slide with Grecco's photograph was one of eighteen slides included in the article). The Court finds Livingly's use is closer to the use in Los Angeles News Service, in which the court held that "the inclusion of the [allegedly infringed] clip in the video montage . . . following editing for dramatic effect, has a better claim to be within the scope of 'transformation'" because the montage "at least plausibly incorporates the element of creativity beyond mere republication." 305 F.3d at 939.[6]

The purpose and character analysis includes considering the commerciality of the use. The Supreme Court has stated that "every

---

[6] Livingly does not touch on whether its use is transformative. See Livingly Opp'n at 19-20. It argues instead that this factor weighs in its favor because it is used for "purposes such as criticism, comment, [and] news reporting." Id. at 19 (quoting 17 U.S.C. § 107). Livingly cites to two cases in which the use was a criticism of the copyrighted work. Id. at 19-20. Here, Livingly's use of the photograph neither commented on nor criticized the Photographs.

commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 451 (1984). Commercial use is a "factor that tends to weigh against a finding of fair use" because "the user stands to profit from exploitation of the copyrighted material without paying the customary price." Harper & Row, 471 U.S. at 562. While Livingly is undoubtedly motivated by profit, it is unclear that it profited from its use of the pictures in any substantial way. Livingly made a total of $1,033.06 from all the articles that incorporated the Photographs. DSUF ¶ 56. Additionally, on being notified of the infringement, Livingly replaced the Photographs with screenshots taken from actual footage of *The X-Files*, id. ¶ 63, but was able to leave the articles in place. See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P., 756 F.3d 73, 83 (2d Cir. 2014) (discounting commerciality of use "where the link between the defendant's commercial gain and its copying is attenuated" (brackets, ellipsis, and quotation marks omitted)).

Considering commerciality and transformativeness together, the Court finds the first factor weighs slightly in favor of fair use.

### b.   Nature of the Copyrighted Work

Under the second factor, the Court addresses two aspects of the work: the extent to which it is creative and whether it is unpublished. Harper & Row, 471 U.S. at 563-64.

Photos are generally viewed as creative, aesthetic expressions of a scene or image and have long been protected by copyright. See 17 U.S.C. § 102(a)(5) (extending copyright protection to "pictorial, graphic, and sculptural works"). The Ninth Circuit has recognized that individual photographs merit copyright protection. See, e.g., Ets-Hokin, 225 F.3d at 1074 ("Indeed, the idea that photography is art deserving [copyright] protection reflects a longstanding view of Anglo-American law.").

"[T]he unpublished nature of a work is a key, though not necessarily determinative, factor tending to negate a defense of fair

use." Harper & Row, 471 U.S. at 554 (internal quotation marks and brackets omitted). Accordingly, "[u]nder ordinary circumstances, the author's right to control the first public appearance of his undisseminated expression will outweigh a claim of fair use." Id. at 555. Here, the works were published. MGP licenses them for use, and it is clear Livingly obtained them through some type of previous publication. See PSUF ¶ 15.

Considering the previous publication of the Photographs and the creativity of the image, the Court determines the second factor weighs neither for nor against fair use.

c.    Amount and Substantiality of the Portion Used

In assessing the amount and substantiality of the portion used, courts consider not only "the quantity of the materials used" but also "their quality and importance." Campbell, 510 U.S. at 587. "While 'wholesale copying does not preclude fair use per se,' copying an entire work 'militates against a finding of fair use.'" Worldwide Church of God, 227 F.3d at 1118 (quoting Hustler Mag. Inc. v. Moral Majority Inc., 796 F.2d 1148, 1155 (9th Cir. 1986)).

If the subsequent user of the work "only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." Kelly, 336 F.3d at 820-21. Thus, the use of an entire image may be reasonable if a more limited use would not serve the defendant's intended purpose. See Perfect 10, 508 F.3d at 1167-68 (finding the use of an entire image necessary when the defendant used the image in its search engine).

Livingly admits it used the entirety of Photographs 2 and 4 but states it used only a portion of Photographs 1 and 3. DSUF ¶ 53; Livingly Opp'n at 21 n.15. Livingly does not specify what amount of Photographs 1 and 3 it used. Regardless, it appears to have used nearly the entirety of each work. Compl. ¶¶ 13, 16. Livingly argues "it may be permissible to take the 'heart' of a copyrighted work if to do so is necessary for the purpose of parodying the work." Livingly Opp'n at 21. But Livingly was not parodying the Photographs. See Campbell,

510 U.S. at 580 ("For the purposes of copyright law, the nub of the definitions, and the heart of any parodist's claim to quote from existing material, is the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works.").   The Court finds the third factor weighs in favor of MGP.

> d.   Effect on the Potential Market

The fourth factor is "undoubtedly the single most important element of fair use." Harper & Row, 471 U.S. at 566.  "[A] use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create." Sony, 464 U.S. at 450.

MGP licenses Grecco's work through a stock photography licensing website, but it has never issued a prospective license for use through its site.  DSUF ¶¶ 48-50.  Getty Images also offered the Photographs as part of a "wholesale" license in which users licensed the entire database of images.  Id. ¶ 51.  MGP earned a total of $489.68 for licensing fees for Photographs 1 and 4 via Getty Images.  Id. Photographs 2 and 3 were never licensed.  Id.

"[O]ne need only show that if the challenged use 'should become widespread, it would adversely affect the *potential* market for the copyrighted work.'" Harper & Row, 471 U.S. at 568 (quoting Sony, 464 U.S. at 451).  Livingly used the Photographs commercially by copying them essentially in their entirety.  Grecco has licensed at least two of the Photographs on occasion.  "[A]llowing websites to post copyrighted material without a license merely because the market for the material has gone cold would pose a substantial threat to the licensing market in general." See Golden v. Michael Grecco Prods., Inc., No. 19-CV-3156 (NGG) (RER), 2021 WL 878587, at *5 (E.D.N.Y. Mar. 9, 2021).

The Court finds the fourth factor weighs against a finding of fair use.  Because the relevant facts are undisputed and the majority of the factors weigh against a finding of fair use, the Court GRANTS summary judgment to MGP on Livingly's fair use defense.

### 4.      Statute of Limitations Defense

Livingly argues the statute of limitations bars this suit as to Photographs 1 and 3.  Copyright infringement claims must be "commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  "[T]he general federal rule is that a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action."  Norman-Bloodsaw v. Lawrence Berkeley Lab'y, 135 F.3d 1260, 1266 (9th Cir. 1998) (internal quotation marks omitted).  However, under the "discovery rule," a copyright infringement claim accrues – and the statute of limitations begins to run – when a party discovers or, with the exercise of diligence, reasonably should have discovered, the alleged infringement.  Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004).[7]  To defeat a statute of limitations defense, the *plaintiff* has the burden of proving the applicability of the delayed discovery rule or equitable tolling.  V.C. v. L.A. Unified Sch. Dist., 139 Cal. App. 4th 499, 516 (2006).  To satisfy this burden, the plaintiff must establish facts that

---

[7] Livingly argues that Polar Bear may no longer be good law due to two Supreme Court decisions on the application of the discovery rule to federal statutes.  See Livingly Opp'n at 23 n.17 (citing Rotkiske v. Klemm, 140 S. Ct. 355 (2019) and Gabelli v. SEC, 568 U.S. 442 (2013)).  These cases indicate the Supreme Court and Ninth Circuit may in the future decide the discovery rule is not applicable to the Copyright Act.  However, neither case is directly on point.  For instance, in Rotkiske, the Supreme Court was considering the Fair Debt Collection Practices Act (FDCPA), which uses different language in describing the statute of limitations than the Copyright Act uses.  140 S. Ct. at 358; compare 15 U.S.C. § 1692k(d) (under the FDCPA, an action "may be brought . . . within one year from the *date on which the violation occurs*" (emphasis added)) with 17 U.S.C. § 507(b) (under the Copyright Act, "[n]o civil action shall be maintained . . . unless it is commenced within three years *after the claim accrued*" (emphasis added)).  And while the Ninth Circuit has not yet directly addressed this issue, it has relied on Polar Bear since Rotkiske was decided.  See Michael Grecco Prods., Inc. v. BDG Media, Inc., 834 F. App'x 353, 354 (2021).  The Court finds Polar Bear has not been overruled.

show the plaintiff lacked knowledge and that in the exercise of reasonable diligence the facts could not have been discovered earlier. Id.

Livingly published the articles containing Photographs 1 and 3 on its website more than three years before Grecco filed suit. See DSUF ¶ 53. Grecco states he did not learn of the infringements until December 24, 2019. PSUF ¶ 13. However, he also does not dispute Livingly's claim that Higbee and Associates – acting on his behalf – sent two cease and desist letters concerning all four Photographs to Livingly on February 12, 2019 and April 8, 2019. DSUF ¶¶ 60, 65.

Livingly argues MGP reasonably should have discovered the alleged infringement earlier because Grecco hired multiple outside agencies to find infringement on his behalf. Livingly Opp'n at 24. Until August 2018, MGP used a reverse image search vendor called ImageRights to search for infringement, but MGP does not know whether ImageRights discovered the use of any of the Photographs. DSUF ¶¶ 58-59. At some point Grecco also began using other vendors, including Higbee & Associates. Id. ¶ 60.

In Michael Grecco Productions, Inc. v. BDG Media, Inc., 834 F. App'x at 354, the Ninth Circuit held the district court erred in holding Grecco's claim was time-barred. The circuit court noted that "[a]t what time . . . search processes would or should have captured alleged infringements is a question of fact that cannot be determined on a motion to dismiss" due to "the difficulty of detecting online infringements, even when plaintiffs like Grecco invest in both in-house infringement detection using Google image search as well as third-party reverse image search software." Id.

MGP's use of third-party vendors, therefore, does not in and of itself establish it reasonably should have discovered the publications earlier. However, MGP also does not establish any facts showing it would have been difficult to discover the images earlier. MGP even admits that it does not even know whether ImageRights discovered any of the photographs. If ImageRights – acting on MGP's behalf – had

discovered any infringement, a reasonable jury could surely find that MGP should have known about the publication earlier.  MGP argues only that Livingly states – in a different context – that due to technical limitations, it inadvertently overlooked some uses of the photographs.  MGP Reply at 10.  Livingly's technical limitations are irrelevant to whether MGP should have discovered the images earlier.

MGP cites two district court cases in which the courts noted plaintiffs didn't have a general duty to comb through the internet for infringement of their copyrighted material.  MGP Reply at 10-11 (citing Delano v. Rowland Network Commc'ns LLC, No. CV-19-02811-PHX-MTL, 2020 WL 2308476, at *3 (D. Ariz. May 8, 2020) and Mackie v. Hipple, No. C09-0164RSL, 2010 WL 3211952, at *2 (W.D. Wash. Aug. 9, 2010)).  In Mackie, the court held only that "on a motion for summary judgment, viewing the evidence in the light most favorable to the plaintiff, the Court c[ould] not conclude as a matter of law that he is chargeable with knowledge of Hipple's alleged infringement on a date certain before his actual discovery of the alleged infringement in 2007." 2010 WL 3211952, at *2.[8]

The Court agrees there remains a genuine issue of material fact as to whether MGP should have reasonably discovered the infringement earlier.  MGP hired multiple companies to find infringement but does not know if they discovered any.  According to MGP, it was not until more than six months after one of the vendors it hired not only discovered Livingly's use of the Photographs but actually sent two cease and desist letters that MGP itself learned of the alleged

---

[8] MGP also argues its copyright was being continually infringed when the pictures were posted on the website.  MGP Reply at 11.  District courts in this circuit have "concluded that the mere fact that a document remained online does not trigger the separate-accrual rule."  Bell v. Oakland Cmty. Pools Project, Inc., No. 19-cv-01308-JST, 2020 WL 4458890, at *5 (N.D. Cal. May 4, 2020) (citing Wolf v. Travolta, 167 F. Supp. 3d 1077, 1099 n.13 (C.D. Cal. 2016)).  This Court need not address the issue.

infringement.  The Court therefore DENIES summary judgment to both parties on the statute of limitations defense.

### 5.   Remaining Defenses

MGP further argues that Livingly's remaining affirmative defenses of failure to state a claim, justification, mitigation, and copyright misuse fail "because Defendant has not – because it cannot – proffer evidence substantiating [these] baseless defenses."  MGP Mot. at 14.  Livingly does not oppose the motion as to these affirmative defenses nor does it put forth evidence supporting these defenses.  See generally Livingly Opp'n.

**Failure to State a Claim.**  As the Court stated above, "a defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense."  See Zivkovic, 302 F.3d at 1088; see also Barnes v. AT & T Pension Benefit Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010) ("Failure to state a claim is a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiff's valid prima facie case." (quoting Boldstar Tech., LLC v. Home Depot, Inc., 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007)).  The Court therefore GRANTS summary judgment to MGP on the failure to state a claim defense.

**Copyright Misuse.**  Livingly alleges that MGP's actions "including but not limited to its actions in filing the Complaint herein, constitute a misuse of copyright."  Answer at 5.  "Copyright misuse is a judicially crafted affirmative defense to copyright infringement" that is applied "sparingly."  Apple Inc. v. Psystar Corp., 658 F.3d 1150, 1157 (9th Cir. 2011).  The "purpose of the defense [i]s preventing holders of copyrights 'from leveraging their limited monopoly to allow them control of areas outside the monopoly.'"  Id. (quoting A&M Records v. Napster, Inc., 239 F.3d 1004, 1026 (9th Cir. 2001)).  MGP argues the copyright misuse defense fails because Defendant "has not – because it cannot – proffer evidence substantiating" it.  MGP Mot. at 14.  This is not sufficient to meet MGP's burden of production.  The Court DENIES summary judgment to MGP on the copyright misuse defense.

**Justification.**  "The defense of justification can excuse a defendant's alleged [mis]conduct if specific factors or circumstances surrounding the conduct demonstrably justify it."  Smith v. Cobb, No. 15-CV-176-GPC (WVG), 2017 WL 2350443, at *7 (S.D. Cal. May 30, 2017), report and recommendation adopted 2017 WL 3887420 (Sept. 5, 2017).  Justification is typically asserted as an affirmative defense in tortious interference claims.  See Blizzard Ent. Inc. v. Ceiling Fan Software LLC, No. SA CV 12-00144-JVS (JPRx), 2012 WL 12888546, at *5 (C.D. Cal. Aug. 13, 2012).  The Court is unsure if it ever would apply to a copyright infringement action.  However, MGP again fails to meet its burden of production by simply stating Livingly does not proffer evidence supporting this defense.  MGP Mot. at 14.  The Court DENIES summary judgment to MGP on the justification defense.

**Mitigation.**  Livingly asserts in its Answer that MGP has failed to act reasonably to mitigate the damages alleged in the Complaint. Answer at 5.  As the district court in Interscope Records v. Time Warner, Inc. noted, it is unclear "[w]hether the mitigation defense has any plausible validity" in a copyright infringement case.  No. CV 10-1662 SVW (PJWx), 2010 WL 11505708, at *15 (C.D. Cal. June 28, 2010) ("Defendants have not cited, and the Court has not found, any analogous cases in which the plaintiff's acquiescence to the defendant's infringement or its failure to object to such infringement served as a basis to limit or reduce damages (other than cases in which a valid statute of limitations . . . defense existed).").  "Furthermore, . . . the Copyright Act does not contain a requirement that the copyright owner provide notice to an alleged infringer as a prerequisite to filing suit or seeking damages."  Id.  Because there is no requirement under the Copyright Act that a plaintiff mitigate damages, the Court GRANTS summary judgment to MGP on Livingly's mitigation defense.

## D.     Damages

Livingly argues that, if it is liable for infringement, Grecco is entitled only to minimal damages because its infringement was not willful.  Livingly Mot. at 22-24.  Section 504(c)(2) of the Copyright Act provides in pertinent part:  "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2).  But, "[i]n a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200."  Id.  A finding of willfulness must be supported by "substantial evidence (1) that the infringing party was actually aware of the infringing activity, or (2) that the infringing party's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights."  VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, 748 (9th Cir. 2019) (internal quotation marks and brackets omitted).

MGP has submitted evidence that Livingly employees would look up photos to use on Google and simply check the photographs for the hallmarks of a promotional photo.  Dkts. 44-13 at 12, 44-14 at 7-8.  This is sufficient to create a question of material fact as to whether Livingly acted with reckless disregard to MGP's rights by not ensuring that images it obtained on Google were not unlicensed, copyrighted photos.  The Court DENIES Livingly's motion for summary judgment on its damages argument.

## IV. CONCLUSION

The Court GRANTS MGP's motion for summary judgment on the following affirmative defenses asserted by Livingly: laches, standing, failure to state a claim, mitigation, and fair use.  The Court otherwise DENIES both motions for summary judgment.


IT IS SO ORDERED.


Date: April 16, 2021

Dale S. Fischer
United States District Judge